**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X

YI MEI KE, a/k/a Yimei Ke
*on behalf of herself and others similarly situated*,

                         Plaintiff,                Case No.: 1:19-cv-07332

       -against-

J R SUSHI 2 INC
          d/b/a JR Sushi 2,
FAMOUS SICHUAN NEW YORK INC
          d/b/a Famous Sichuan,
YUKWAH KWOK CHENG,
KAI TUAN WANG,
XIN WANG
RUI YANG
          a/k/a Ruifeng Yang
          a/k/a Rui Feng Yang
          a/k/a Jane Doe,
ZINN WANG
          a/k/a Zi Wang
          a/k/a John Doe, and
HENRY ZHANG,

                         Defendants.
------------------------------------------------------------X

---

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION

---

Yi Lin
86 Bowery, 2nd Floor
New York, New York 10013
Tel: (212) 964-5339
Email: yilinlaw@yahoo.com
*Attorney for Defendants*
*JR Sushi 2 Inc, Kai Tung Wang*
*And Xin Wang*

## Contents

TABLE OF AUTHORITIES ................................................................ **Error! Bookmark not defined.**

PROCEDURAL HISTORY ............................................................................................ 2

ARGUMENT ................................................................................................................. 2

I. ................................................................................................................................ 2

PLAINTIFF FAILED TO SHOW THAT CONDITIONAL CERTIFICATION OF A COLLECTIVE
ACTION BY THE COURT IS WARRANTED ......................................................... 2

    A.   Standard of Review and Requirements for Conditional Certification of a ..................................... 2

    Collective Action Under the Federal Labor Standards Act ................................................................ 2

    B.   Plaintiff Failed to Show Sufficient Evidence of a Factual Nexus ................................. 6

    Which Binds Them to Potential Members of the Collective .............................................................. 6

    C.   Plaintiff Cannot Show that Potential Collective Members Were Victims of a Common Policy or
    Plan that Violated the Law ........................................................................................................... 10

II. .............................................................................................................................. 11

THE COURT SHOULD DENY PLAINTIFF'S REQUEST FOR INFORMATION FOR
INDIVIDUALS WITH A CAUSE OF ACTION DATING BACK TO AUGUST 6, 2016 BECAUSE
PLAINTIFF HAS NO STANDING TO BE A REPRESENTATIVE AND THEIR CLAIMS ARE
OUTSIDE THE STATUTE OF LIMITATIONS AND THEY CANNOT JOIN THE COLLECTIVE.11

III. ............................................................................................................................. 12

EQUITABLE TOLLING OF THE STATUTE OF LIMITATIONS IS NOT APPROPRIATE IN THIS
CASE ....................................................................................................................... 12

IV. ............................................................................................................................. 13

PLAINTIFF'S PROPOSED NOTICE OF PENDENCY IS IMPROPER ............................................. 13

V. .............................................................................................................................. 16

AN ORDER TO PUBLISH THE NOTICE OF PENDENCY IN AN ABBREVIATED FORM AT
DEFENDANTS' EXPENSE WOULD BE IMPROPER ................................................................... 16

V. .............................................................................................................................. 17

PUBLICATION AND DISTRIBUTION OF AN OPT-IN NOTICE VIA ELECTRONIC MEDIA IS
OVERBROAD AND IMPROPER ....................................................................................... 17

CONCLUSION ............................................................................................................. 19

## TABLE OF AUTHORITIES

**Cases**

*Alli v. Boston Market Co.*, Civil No. 3:10-cv04 (JCH),
    2011 WL 4006691 (D. Conn. March 31, 2012) ...................................................................4

*Armstrong v. Weichert Realtors*, Civil No. 05-3120, 2006 WL 1455781, (D.N.J. May 19, 2006).............1

*Barfield v. N.Y.C. Health and Hospitals Corp.*, 05-CV-6319 (JRS),
    2005 WL 309870 (S.D.N.Y. Nov. 18, 2005) ...................................................................4

*Bowens v. Atl. Maint. Corp.*, 546 F.Supp.2d 55, 84-85 (E.D.N.Y. 2008) ...............................................15

*Cerbone v. International Ladies' Garment Workers' Union*, 768 F.2d 45 (2d Cir. 1985) .......................12

*Diaz v. S & H Bondi's Department Store, Inc.*, No. 10 Civ. 7676 (PGG),
    2012 WL 137460 (S.D.N.Y. Jan. 18, 2012) ...................................................................15

*Dreyer v. Altchem Environmental Services, Inc.*, Civil No. 06-2393,
    2007 WL 7186177 (D.N.J. Sept. 25, 2007) ...................................................................1

*Fang v. Zhuang*, No. 10–CV–1290 (RRM)(JMA), 2010 WL 5261197 (E.D.N.Y. Dec. 1, 2010).............16

*Fasanelli v. Heartland Brewery, Inc.*, 516 F.Supp.2d 317 (S.D.N.Y. 2007) .........................................14

*Guzman v. VLM, Inc.*, No. 07-CV-1126 (JG)(RER),
    2007 WL 2994278 (E.D.N.Y. Oct. 11, 2007) ...................................................................15

*Hoffman v. Sbarro*, 982 F.Supp. 249 (S.D.N.Y. 1997) ...........................................................................11

*Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165, 169, 170 (1989) .................................................3, 5

*Holland v. Florida*, 560 U.S. 631 (2010) ...............................................................................................13

*Horne v. United Services Auto Ass'n*, 279 F.Supp.2d 1231 (M.D. Ala. 2003) .........................................5

*In re Milos Litig.*, No. 08 Civ. 6666(LBS), 2010 WL 199688 (S.D.N.Y. Jan.11, 2010) ........................15

*Iriarte v. Redwood Deli & Catering, Inc.*, No. 07-CV-5062(FB)(SMG),
    2008 WL 2622929 (E.D.N.Y. June 30, 2008) ...................................................................15

Johnson v. Nyack Hosp., 86 F.3d 8 (2d Cir. 1996) ..................................................................................12

*Lassen v. Hoyt Livery Inc.*, No. 3:13-cv-01529 (JAM),
    2014 WL 4638860 (D. Conn. Sept. 17, 2014) ...................................................................15

*Levinson v. Primedia Inc.*, No. 02-CV-222 (CBM), 2003 WL 22533428 (S.D.N.Y. Nov. 6, 2003).............4

*Lujan v. Cabana Management, Inc.*, 2011 WL 317984 (E.D.N.Y. Feb. 1, 2011) ....................................14

*MacGregor v. Farmers Ins. Exch.*, 10-CV-02088,
    2011 U.S. Dist. LEXIS 80361 (D.S.C. July 22, 2011)..................................................................6

*Mark v Gawker Media LLC*,
    24 Wage & Hour Cas 2d (BNA) 991 (SDNY Mar. 5, 2015)..............................................18, 19

*Marsh v. Tauck Inc.*, No. 3:04CV220 (WWE), 2005 WL 1221626 (D. Conn. June 9, 2005) ....................15

*Martin v. Sprint/United Management* Company, No. 15 Civ. 5237 (PAE),
    2016 WL 30334 (S.D.N.Y. Jan. 01, 2016) ...................................................................15

*McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 422 (S.D.N.Y. 2012) ........................................3

*Meta v. Foodbridge LLC*, No. 14 Civ. 8754, 2015 WL 3457293, at *2 (S.D.N.Y. June 1, 2015).............3

*Mike v. Safeco Ins. Co. of Am.*, 274 F.Supp.2d 216 (D. Conn. 2003)........................................................5

*Morales v. Plantworks, Inc.*, 05-CV-2349 (DC), 2006 WL 278154 (S.D.N.Y. Feb. 2, 2006)....................4

*Myers v. Hertz Corp.*, 624 F.3d 537, 554, 555, 556 (2d. Cir. 2010) ...............................................2, 3, 5, 6

*Neary v. Metro. Prop. & Cas. Ins. Co.*, 517 F.Supp.2d 606 (D. Conn. 2007) ...........................................2

*Pace v. DiGuglielmo*, 544 U.S. 408 (2005) ...........................................................................................13

*Pippins v. KPMG LLP*, No. 11 Civ. 0377 (CM) (JLC), 2012 WL 19379 (S.D.N.Y. January 3, 2012)........3

*Prizmic v. Armour*, No. 05-CV-2503 (DLI) (MDG), 2006 WL 1662614 (E.D.N.Y. June 12, 2006)..........4

*Qing Gu v. T.C. Chikurin, Inc.*, No. 13 Civ. 2322 (SJ)(MDG)
    2014 WL 1515877, at *3 (E.D.N.Y. April 17, 2014)....................................................................4

*Reyes v. Nidaja, LLC*, No. 14, Civ. 9812, 2015 WL4622587, at *2-3 (S.D.N.Y. August 3, 2015)..............9

*Rick Bus Co.*, 743 F. Supp. 2d at 387..................................................................................................1

*Rubery v. Buth-Na-Bodhaige, Inc.*, 569 F.Supp.2d 334 (W.D.N.Y. 2008).................................16

*Sanchez v. JMP Ventures, L.L.C.*, No. 13 Civ. 7264 (KBF),
    2014 WL 465542 (S.D.N.Y. Jan. 27, 2014).........................................................................3, 9

*Sherril v. Sutherland Global Services, Inc.*, 487 F.Supp.2d 344, (W.D.N.Y. 2007)..................17

*Trinidad v. Pret A Manger (USA) Ltd.*, 962 F.Supp.2d 545 (S.D.N.Y. 2013)............................16

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)..................................................................6

*White v. Rick Bus Co.*, 743 F. Supp. 2d 380 (D.N.J. 2010).........................................................1

## Statutes

29 U.S.C. § 216(b) ........................................................................................................2, 3, 5, 6

29 U.S.C. § 255(a)............................................................................................................11, 12

# PRELIMINARY STATEMENT

JR Sushi 2 Inc, Kai Tung Wang and Xin Wang (collectively "**Defendants**"), submit this memorandum of law in opposition to Plaintiff Yi Mei Ke ("**Plaintiff**") motion for conditional certification under the Fair Labor Standards Act ("FLSA").

Based upon nothing but Plaintiff's own anecdotal allegations, Plaintiff seeks conditional certification of a collective that comprises all current and former "non-managerial employees", who worked for Defendants. This broad category, by Plaintiff's own admission, comprises of both tipped and non-tipped employees. While Plaintiff's burden on conditional certification is low for preliminary conditional collective certification, this burden is not non-existent, and certification is not automatic. *White v. Rick Bus Co.*, 743 F. Supp. 2d 380, 387 (D.N.J. 2010); *Dreyer v. Altchem Environmental Services, Inc.*, Civil No. 06-2393, 2007 WL 7186177, at *2 (D.N.J. Sept. 25, 2007); *Armstrong v. Weichert Realtors*, Civil No. 05-3120, 2006 WL 1455781, at *1-2 (D.N.J. May 19, 2006). Rather, the low burden of requiring Plaintiff to make at least a modest actual evidentiary showing that there are other employees "similarly situated" serves as an important guard against wasteful, inefficient, and unjust litigation. *Rick Bus Co.*, 743 F. Supp. 2d at 387. Plaintiff's offering here, supported only by limited, contradictory, anecdotal hearsay, is inadequate to meet even the modest evidentiary showing at this step.

Additionally, the all-encompassing collective, including all "non-managerial employees" proposed by Plaintiff is overbroad, as Plaintiff, a sushi chef and a waiter, have failed to establish any factual nexus whatsoever between themselves and all of the other "non-managerial employees" of the Defendants. Accordingly, Plaintiff's motion for conditional certification at this step should be denied in its entirety.

## PROCEDURAL HISTORY

Plaintiff Yi Mei Ke filed the original complaint on August 6, 2019 (the "Complaint"). The Complaint alleged violations of the Fair Labor Standards Act, and New York Labor Laws. On February 12, 2020, submitted her Frist Amended Complaint, Defendants answered the First Amended Complaint on March 13, 2020.  A Conference was held on May 13, 2020 and the Court issued Initial Case Management Order. In compliance with the Order, the parties are undertaking discovery.

## ARGUMENT

## I.

## PLAINTIFF FAILED TO SHOW THAT CONDITIONAL CERTIFICATION OF A COLLECTIVE ACTION BY THE COURT IS WARRANTED

### A. Standard of Review and Requirements for Conditional Certification of a Collective Action Under the Federal Labor Standards Act

The Fair Labor Standards Act ("FLSA") provides a private cause of action against an employer "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b).  Collective actions under the FLSA require potential class members to opt into the case. *See id.*; *Weng v. Kung Fu Little Seamed Buns Ramen Inc.* 17 Civ. 273 (LAP), 2018 WL 1737726, at *2 (S.D.N.Y. Mar. 26, 2018); *Neary v. Metro. Prop. & Cas. Ins. Co.*, 517 F.Supp.2d 606, 618 (D. Conn. 2007).  The District Court has discretion, in appropriate cases, to implement § 216(b). *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d. Cir. 2010).  For a collective action under 29 U.S.C. § 216(b) to be certified and proceed to trial, employees bringing the action must demonstrate that they are similarly situated to potential

collective members.   29 U.S.C. § 216(b).   The FLSA, however, does not define "similarly situated," nor does it prescribe a method for certifying a collective action.   *See id.*   The Second Circuit utilizes a two-step method for determining whether a case should be certified as a collective action under FLSA  and to allow "potential Plaintiff of the pendency of the action of their opportunity to opt-in as represented plaintiff."   *Myers*, 624 F.3d at 554-555; *Neary*, 517 F.Supp.2d at 618.   "This process entails analysis of whether prospective Plaintiff are 'similarly situated' at two different steps: an early 'notice step' and again after discovery is fundamentally complete." *Meta v. Foodbridge LLC*, No. 14 Civ. 8754, 2015 WL 3457293, at *2 (S.D.N.Y. June 1, 2015)(citing *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 438, 422 (S.D.N.Y. 2012).

At the first step, commonly referred to as conditional certification, the court determines whether notice of the action should be issued to potential opt-in Plaintiff and whether the action should proceed initially as a collective action.   *Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165, 169 (1989); *Neary*, 517 F.Supp.2d at 618. Before facilitation of notice, Plaintiff must make a modest factual showing demonstrating that they and potential opt-in Plaintiff together were victims of a common policy or plan that violated the law.   *Myers*, 624 F.3d at 555; *Neary*, 517 F.Supp.2d at 618.   "To meet this standard, Plaintiff must proffer 'substantial allegations' of a factual nexus between the named Plaintiff and potential opt-in Plaintiff with regard to their employer's alleged FLSA violation."   *Pippins v. KPMG LLP*, No. 11 Civ. 0377 (CM) (JLC), 2012 WL 19379, at *6 (S.D.N.Y. January 3, 2012).   Plaintiff can satisfy this burden by showing that there are other employees who are similarly situated with respect to their job requirements and pay provisions. *Myers*, 624 F.3d at 555.

However, Plaintiff cannot rely on unsupported assertions, *id.*, or conclusory allegations. *Sanchez v. JMP Ventures, L.L.C.*, No. 13 Civ. 7264 (KBF), 2014 WL 465542, at *3 (S.D.N.Y.

3

Jan. 27, 2014). Plaintiff must provide "actual evidence of a factual nexus" between their situation and those of the putatively "similarly situated" employees. *Qing Gu v. T.C. Chikurin, Inc.*, No. 13 Civ. 2322 (SJ)(MDG), 2014 WL 1515877, at *3 (E.D.N.Y. April 17, 2014). There must be some identifiable factual nexus which binds the named Plaintiff and the potential class members together as victims of a common policy or scheme. *Alli v. Boston Market Co.*, Civil No. 3:10-cv04 (JCH), 2011 WL 4006691, at *1-2 (D. Conn. March 31, 2012); *Weng*, 2018 WL 1737726, at *3. Courts have denied collective certification where the Plaintiff were unable to prove, beyond their own conclusive assertions, that they are similarly situated with potential class members. *See, e.g., Levinson v. Primedia Inc.*, No. 02-CV-222 (CBM), 2003 WL 22533428, at *1-2 (S.D.N.Y. Nov. 6, 2003) (denying plaintiff's request for notice to potential class members where plaintiff failed to support their allegations of a company-wide policy with a factual showing that extended beyond his own circumstances); *Prizmic v. Armour*, No. 05-CV-2503 (DLI) (MDG), 2006 WL 1662614, at *2 (E.D.N.Y. June 12, 2006) (stating that "actual evidence of a factual nexus between [plaintiff's] situation and those they claim are similarly situated, rather than mere conclusory allegations" are required); *Morales v. Plantworks, Inc.*, 05-CV-2349 (DC), 2006 WL 278154, at *3 (S.D.N.Y. Feb. 2, 2006) (denying motion for conditional class certification where motion was based on conclusory allegations and Plaintiff offered nothing of evidentiary value); *Barfield v. N.Y.C. Health and Hospitals Corp.*, 05-CV-6319 (JRS), 2005 WL 309870 (S.D.N.Y. Nov. 18, 2005) (denying plaintiff's motion for conditional collection action certification where plaintiff did not present sufficient evidence that she and potential Plaintiff together were victims of a common policy or plan that violated the law).

The second step of the collective certification process typically occurs at the close of discovery upon the filing of a defendant's motion for decertification. Here the court undergoes

an inquiry into whether the action should be certified as a collective action and proceed to trial as such. The court will investigate whether Plaintiff who have opted in are in fact similarly situated to the name Plaintiff. If they are not, the action may be decertified, and the opt-in Plaintiff's claims may be dismissed without prejudice. *Myers*, 624 F.3d at 555.

A Motion for Conditional Certification asks the Court to exercise its judicial discretion, in the interest of efficient case management, to open an action to other parties. The impact of this request on the employer cannot be understated. The court must be sure that judicial intervention is appropriate. In authorizing notice in *Hoffman-LaRoche*, the Supreme Court pointed to the systemic benefits derived from a process that permits the "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged ... activity." *Hoffman-LaRoche*, 493 U.S. at 170. "In other words, the court must be satisfied that there is a basis to conclude that questions common to a potential group of Plaintiff would predominate a determination of the merits of the case." *Mike v. Safeco Ins. Co. of Am.*, 274 F.Supp.2d 216, 220 (D. Conn. 2003). Not only must diverse members of the proposed collective action present common questions, those common questions must have common answers that will be resolved through the representative. Collective action is not proper if every opt-in plaintiff must testify regarding his or her job duties. Absent the requisite commonality, "it is doubtful that § 216(b) would further the interests of judicial economy, and it would undoubtedly present a ready opportunity for abuse." *Horne v. United Services Auto Ass'n*, 279 F.Supp.2d 1231, 1234 (M.D. Ala. 2003).

This core principle of aggregate or representative litigation was underscored in the Supreme Court's landmark decision, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). Although Dukes was decided under Rule 23 and the substantive claim arose under the Civil

5

Rights Act, two principles underlying that decision apply to all aggregate litigation. The first is commonality, "which requires the identification of a common question that will generate a common answer "apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 349. Second, the Supreme Court expressly disapproves of "trial by formula," a phrase that encompasses trial plans based upon sampling methodologies that prevent a defendant from litigating its statutory defense to individual claims. *Id.* at 367. A plaintiff's request for judicial intervention, therefore, must be analyzed to determine whether the specific violation of law upon which they base their claim and the claims of all other potential opt-in Plaintiff can be resolved collectively and consistently with these principles. *See MacGregor v. Farmers Ins. Exch.*, 10-CV-02088, 2011 U.S. Dist. LEXIS 80361, at *13-15 (D.S.C. July 22, 2011) (relying on the decision in *Dukes* to deny a motion for class notice under the FLSA because individualized inquiries would be required). Some may argue that *Dukes* is irrelevant because it addresses Rule 23, not the FLSA. However, the Second Circuit has expressly recognized that class certification under Rule 23 and conditional certification under § 216(b) "are admittedly similar, even if the district courts may apply a different burden of proof in assessing whether certification is appropriate at different steps of the litigation. *Myers v. Hertz Corp.*, 624 F.3d 537, 556 (2d Cir. 2010).

### B. <u>Plaintiff Failed to Show Sufficient Evidence of a Factual Nexus Which Binds Them to Potential Members of the Collective</u>

The Plaintiff failed to provide sufficient evidence of a factual nexus which binds them to the potential members of the collective. Plaintiff submits no evidence other than her own self-serving affidavit in an attempt to establish a factual nexus which binds them to the potential members of the collective. At first glance, Plaintiff's affidavits appear to contain substantial examples of other employees who were allegedly not paid properly. However, Plaintiff Yi Mei

6

Ke's statements in her affidavit are notably contradicted by her allegations in the First Amended Complaint. These contradictions indicate that Plaintiff Yi Mei Ke is not credible and made materially false statements, and her affidavit should be disregarded.

In her affidavit Plaintiff goes into great detail as to what her wages were from January 2017 through June 2019. (Affidavit of Yi Mei Ke ¶¶ 13 - 16). These amounts or periods internally contradictory within her Affidavit, and they were different than what she stated in the First Amended Complaint. For example, in her Affidavit, Yi Mei Ke states that "From February 2017 to about May 2017, I was paid a flat compensation at a rate of one thousand nine hundred dollars ($1,900.00)". She then states in her Affidavit ¶ 15 that "From about April 2017 through abouit June 2017, I was paid a monthly compensation at a rate of one thousand nine five hundred [sic] dollars ($1950.00)." So, according to her own sworn statements, there exists a discrepancy as to what compensation she really received for the months of April and May of 2017. Further, in the First Amended Complaint Plaintiff alleged she started employment with Defendant JR Sushi 2 Inc in December 2016 (¶ 73), but Plaintiff states her compensation started from January 2017.

Plaintiff's contradictions and inconsistencies are not just limited to her wages. In her First Amended Complaint, Plaintiff claimed "11 full-time and 1 part-time non-managerial works" were employed at JR Sushi 2 Inc (¶ 73). In her affidavit, Plaintiff claims in the chart 14 employees (¶ 22).   In the First Amended Complaint, Plaintiff alleged that she started her employment with Defendant JR Sushi 2 Inc on "December 28, 2016" (¶¶65, 67) but Plaintiff states under oath in her Affidavit a different date on which she began working at the restaurant: "A JIN was not there on January 06, 2017, the date on which I began working at the restaurant…" (¶44). Plaintiff repeated the date **January 6, 2017** on which she began her employment at the restaurant in many other different paragraphs of her Affidavit (¶¶26, 36, 52,

82, 90, 99,109, 114,118,127, 136, 14).  Plaintiff is also grossly inconsistent as to time she ended her employment with JR Sushi 2 Inc. She alleged in her First Amended Complaint, dated January 27, 2020 that she "continues to be, employed by Defendants to work at the restaurant 'JR Sushi 2'" (¶65). In her Affidavit, however, Plaintiff repeatedly states that she ended her employment on "August 10, 2019" (¶ 22, 37, 44, 53, 110, 128, 137, 146). These inconsistencies should be weighed in determination of whether Plaintiff presented "sufficient evidence" in support of her motion.

Further, the biggest contradiction is found within Plaintiff's Affidavit. Plaintiff claimed that "I did not receive a paystub with my pay" (¶17) and "I learned that all of them suffered the same common employment practices of the Defendants." (¶22). In the same Affidavit, she states that "I learned of LAO ER's wage when I saw the boss writing LAO ER's **paystubs** on the sable in the basement." (¶¶40, 141, *emphasis provided*). Obviously, according to Plaintiff, there were "paystubs" for employees, contradicting Plaintiff's statement on "same" common employment policies of Defendant JR Sushi 2 Inc.

Furthermore, Plaintiff's affidavit is filled with conclusory, self-serving, hearsay allegations. Plaintiff claimed that she befriended other employees who were also not paid at least the minimum wage and were not compensated for overtime.  In Affidavit of Yi Mei Ke (Document No. 70-5, ¶22), Plaintiff "learned" wages of virtually all co-workers at employment in a "**conversation**" (¶¶30, 48, 56, 66, 78, 95, 104, 114, 122). The claimed conversations are self-serving and should be viewed with serious reservation and skepticism. They do not provide an adequate factual base for any of the claims she made about these co-workers' work schedule, pay rate, overtime wage, period of employment. The balance of the statements in her Affidavit indicate that she either "cannot recall" how she learned about someone's wage (¶¶, 132, 149), or

she "cannot estimate the total hours a co-worker had worded (¶ 130), or simply failed to state any wage for an employee (¶¶ 124 – 132). Plaintiff's statements are conclusory or lacked a sufficient factual foundation to support her claims. For example, Plaintiff states in her Affidavit that she "befriended with some co-workers" (¶22) and based on that, she concluded that "**all of them** suffered from **the same common employment practices**." (¶22, *emphasis added*). However, according to her, she observed at least on two different occasions (¶40 & ¶141) that her boss was writing up "paystubs", which she claimed she did not receive (¶18), not "the same" employment practice. There is "a consensus in this district that where a plaintiff bases an assertion of common policy on observations of coworkers or conversations with them, he must provide a minimum level of detail regard the contents of those conversations or observations." *Reyes v. Nidaja, LLC*, No. 14, Civ. 9812, 2015 WL4622587, at *2-3 (S.D.N.Y. August 3, 2015); Sanchez v. JMP Ventures, L.L.C., 13 Civ. 7264 (KBF), 2014, WL 465542, at *2 (S.D.N.Y. Jan. 27, 2014)(denying conditional certification when affidavits was based on plaintiff's observations and conversations with other employees but failed to "provide any detail as to a <u>single</u> such observation or conversation" (*emphasis original*))

Because Plaintiff failed to proffer any baseline facts regarding her knowledge of the hours and pay for all other employees, she falls short of meeting her burden for collective certification as to those workers. Plaintiff did not submit sufficient evidence of a factual nexus which binds them to the potential members of the collective. Plaintiff's allegations in her Complaint are contradicted by her statements in the Affidavit in support of her motion (Document No. 70-5), which is merely supported by conclusory, self-serving statements that should not be credited. The conclusory allegations lacking factual foundation reveal the discreditable nature of Plaintiff's testimony.  Plaintiff's affidavit should not be relied upon and

allegations made therein should be disregarded. Furthermore, it is notable that Plaintiff never addressed the specifics of the wages or employment conditions of chefs, waiting staff, delivery staff, and packer and thus there is no clear factual nexus between Plaintiff Yi Mei Ke and individuals in those positions.

### C. **Plaintiff Cannot Show that Potential Collective Members Were Victims of a Common Policy or Plan that Violated the Law**

Plaintiff did not show that potential collective members were "victims of a common policy or plan that violated the law." Plaintiff appears to base her knowledge on having "befriended" (¶22, Affidavit) with some co-workers or even "close with" to some others. (¶ 105). The named Plaintiff in this case, Yi Mei Ke allegedly held the position of "kitchen helper and cook" (¶3, Affidavit). Yet the Plaintiff seeks to include in their proposed collective all employees who are not kitchen helpers and cooks and have worked for Defendants even before Plaintiff even started her employment. This would include sushi chefs, waiting staff, delivery staff, and other personnel. Plaintiff has not shown that employees who held these positions were victims of a common policy or plan that violated the law. Plaintiff claimed that she receives no paystub with my pay" (¶17) and concluded that everyone else "suffered the same common employment practices of the Defendants." (¶22). But in her Affidavit, she states that she observed her boss writing up "**paystubs**" for other employees (¶¶40, 141), a contradictory even within the same Affidavit.

Plaintiff seeks to include in the collective tipped and non-tipped employees. Methods of compensation for these groups of employees differed and how they were compensated is a material issue in this case. Answering this issue will require individualized inquiry into different

types of employees.  This individualized inquiry is not suitable for a collective action, which seeks to use a representative to answer common questions of law and fact.

Plaintiff only alleged that the employer violated the FLSA regarding herself as a "kitchen helper and cook".  Plaintiff never made any specific allegation regarding waiting staff, sushi chefs, packers, or other employees.  Therefore, even if the Court were to accept the allegations made in Plaintiff's affidavits, the collective should not include any one but the kitchen helper and cook.

## II.
### THE COURT SHOULD DENY PLAINTIFF'S REQUEST FOR INFORMATION FOR INDIVIDUALS WITH A CAUSE OF ACTION DATING BACK TO AUGUST 6, 2016 BECAUSE PLAINTIFF HAS NO STANDING TO BE A REPRESENTATIVE AND THEIR CLAIMS ARE OUTSIDE THE STATUTE OF LIMITATIONS AND THEY CANNOT JOIN THE COLLECTIVE

The statute of limitations for assertion of wage claims under the FLSA is two years from when the cause of action accrued, unless the employer acted willfully, in which case the limitations period is three years from when the cause of action accrued.  29 U.S.C. § 255(a).  The statute of limitations continues to run through the notice and opt-in period; potential Plaintiff must opt-in to the collective action to toll the statute of limitations.  *Hoffman v. Sbarro*, 982 F.Supp. 249, 260 (S.D.N.Y. 1997).

As Plaintiff's alleged period of employment in this action started in December 2016 (¶65, First Amended Complaint), Plaintiff has no standing to be representative for potential plaintiffs who might opt-in and whose employment period dated back to August 6, 2016, prior to the Plaintiff's commencement of her own employment with JR Sushi 2 Inc. If the court were to approve Plaintiff's request, it would in effect permit Plaintiff to a representative of those

potential plaintiffs who were employed by Defendant JR Sushi 2 Inc before Plaintiff herself started her employment with the same employer.

The Plaintiff's Motion made requests that are affected by the statute of limitations. The Plaintiff requested a Microsoft Excel file containing contact information of current and former employers dating back to August 6, 2016. Notice of Pl.'s Mot. ¶(2). Plaintiff also asked the court to issue a Notice of Pendency addressed to current and former employees dating back to August 6, 2016. *Id.*; Pl's Mot. ¶(8) and Exhibit 3 Proposed Notice of Pendency and Consent to Sue Form. An individual whose cause of action accrued on August 6, 2016 would have had to bring his or her claim by August 6, 2019, at the latest. If the court approves Plaintiff's request for the Microsoft Excel file and Notice of Pendency, it will result in solicitation of expired claims. Therefore, the court should deny Plaintiff's request for the Microsoft Excel file and Notice of Pendency from August 6, 2016. If the Court were to grant Plaintiff's motion, Plaintiff shall not be entitled to employees' information more than two years from the date of the granting of such motion.

## III.
## EQUITABLE TOLLING OF THE STATUTE OF LIMITATIONS IS NOT APPROPRIATE IN THIS CASE

The statute of limitations for assertion of wage claims under the FLSA is two years unless the employer acted willfully, in which case the limitations period is three years. 29 U.S.C. § 255(a). Equitable tolling allows courts to extend the statute of limitations to avoid inequitable circumstances. *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996). The doctrine was developed to address situations in which fraudulent or other conduct concealed the existence of a claim. *See, e.g., Cerbone v. International Ladies' Garment Workers' Union*, 768 F.2d 45,

48 (2d Cir. 1985).  A litigant is entitled to equitable tolling of a statute of limitations only if the litigant establishes two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010).  The plaintiff has the burden of showing that equitable tolling is warranted. *See Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).

Plaintiff has not satisfied either of the elements set forth by the Supreme Court to justify equitable tolling.  Plaintiff has not pointed to any extraordinary circumstances standing in the way of timely filing.  There is no showing that Defendants will interfere with the exercise of any potential plaintiff's rights under the FLSA during the opt-in period.  Plaintiff's motion is supported exclusively by her own self-serving Affidavit. Not even one purported class member submitted an affidavit to show that he has pursued his claim diligently, particularly some of the class members are claimed to have "befriended" (¶3) or "close" (¶105).  Since the filing of her initial complaint in August, 2019, no one else opted-in over nine ensuing months. As a result, some class members' claim may have been time-barred. Plaintiff has not articulated why a potential class member who acts diligently might nevertheless fall outside the statute of limitations period.  In fact, the notice period aids potential opt-in Plaintiff by notifying them of potential claims against a defendant and providing an opportunity to preserve their claim by joining the collective.  Therefore, the Court should not grant equitable tolling for the opt-in period.

## IV.
## PLAINTIFF'S PROPOSED NOTICE OF PENDENCY IS IMPROPER

Defendants object to Plaintiff's proposed Notice of Pendency as attached to Plaintiff's motion on multiple grounds.  As set forth above, Defendants object to the class that Plaintiff seek

to represent and the time period Plaintiff seek to cover.  However, if certification is granted, Plaintiff's Notice is improper in several ways.

First, Plaintiff's counsel should be required to provide precise information regarding their fees and costs.  Specifically, Plaintiff's counsel should be required to disclose the fee arrangement with Plaintiff, as well as the percentage of any recovery that would be paid as attorney fees from any recovery by opt-in Plaintiff.  *See Fasanelli v. Heartland Brewery, Inc.*, 516 F.Supp.2d 317, 324 (S.D.N.Y. 2007) (holding that final notice must include statement regarding the fee arrangement agreed to by the named plaintiff and his attorneys, because such arrangement could have an impact on any recovery by opt-in Plaintiff).  Plaintiff's counsel should specify how costs will be paid.  In its current form, the Notice states that Plaintiff's counsel will "will not receive any fee" "if there is no settlement or money judgment". Notice of Pendency 9. However, there is no mention of how costs will be handled in the event of a judgment against Plaintiff.  In addition, Plaintiff's counsel does not explain in any detail the costs and expense that may be incurred in the lawsuit, including paper discovery, depositions of named Plaintiff, the Defendants, and/or opt-in Plaintiff, motion practice, and trial.  The language in the Notice must provide potential opt-in Plaintiff with sufficient information regarding the attorney-client relationship they may be engaging in, and the Notice falls short in that regard.

Further, the proposed Notice directs potential Plaintiff to mail an opt-in form to Plaintiff's counsel.  The opt-in should instead be mailed to the Clerk of Court.  Notice of Pendency 7.  Requiring potential opt-ins to mail the form to Plaintiff's counsel discourages potential Plaintiff from retaining their own counsel, which potential Plaintiff should be free to do without undue influence from Plaintiff's counsel. *See Lujan v. Cabana Management, Inc.*, 2011 WL 317984, at *13 (E.D.N.Y. Feb. 1, 2011) (reasoning that mailing opt-in forms to Plaintiff's

counsel "implicitly discourages opt-in Plaintiff from selecting other counsel," altering notice to direct opt-in Plaintiff to mail forms to the Court) (citing *Bowens v. Atl. Maint. Corp.*, 546 F.Supp.2d 55, 84-85 (E.D.N.Y. 2008); *Iriarte v. Redwood Deli & Catering, Inc.*, No. 07-CV-5062 (FB)(SMG), 2008 WL 2622929, at *4 (E.D.N.Y. June 30, 2008); *Guzman v. VLM, Inc.*, No. 07-CV-1126 (JG)(RER), 2007 WL 2994278, at *5-6 (E.D.N.Y. Oct. 11, 2007).

Furthermore, the Notice is addressed to individuals who worked for Defendants dating back to August 6, 2016. Notice of Pendency Page 2. Claims arising from a cause of action dating that far back are outside the statute of limitations. The notice should only be addressed to individuals with timely claims in the past two years.

Fourth, a 90-day opt-in period is excessive. Plaintiff's proposed Notice gives potential collective members 90 days from the date the notice is sent out to respond. Notice of Pendency Page 3. Courts handling FLSA collective actions generally provide opt-in periods of 60 days. *Martin v. Sprint/United Management* Company, No. 15 Civ. 5237 (PAE), 2016 WL 30334, at *17 (S.D.N.Y. Jan. 01, 2016); See, *e.g.*, *Lassen v. Hoyt Livery Inc.*, No. 3:13-cv-01529 (JAM), 2014 WL 4638860, at *7 (D. Conn. Sept. 17, 2014) (ordering a 60 day opt-in period absent a showing that there will be unusual difficulties locating or contacting potential opt-in Plaintiff); *Marsh v. Tauck Inc.*, No. 3:04CV220 (WWE), 2005 WL 1221626, at *1 (D. Conn. June 9, 2005) (Ordering a 60 day opt-in period); *Diaz v. S & H Bondi's Department Store, Inc.*, No. 10 Civ. 7676 (PGG), 2012 WL 137460 , at *8 (S.D.N.Y. Jan. 18, 2012) (Ordering sixty-day opt-in period and remarking that many courts in the district have set a sixty-day period). While some courts have issued ninety-day opt-in periods, such rulings have generally been on consent or where special circumstances indicate that an extend opt-in period is appropriate. *See In re Milos Litig.*, No. 08 Civ. 6666(LBS), 2010 WL 199688, at *2–3, (S.D.N.Y. Jan.11, 2010) (90 days);

15

*Fang v. Zhuang*, No. 10–CV–1290 (RRM)(JMA), 2010 WL 5261197, at *4 (E.D.N.Y. Dec. 1, 2010) (providing for ninety day period "in light of the frequent, long-term international travel of many of the prospective Plaintiff").

Plaintiff has not claimed there will be difficulty locating or contacting prospective Plaintiff during the opt-in period. Defendants have not consented to a ninety-day opt-in period. Nothing in the record indicates that there should be any difficulty during the opt-in period to warrant a 90-day opt-in period. Considering this, a ninety-day opt-in period is excessive. Defendants maintain that conditional certification is unwarranted, but in the event the Court grants Plaintiff's Motion for Conditional Certification, the opt-in period should be reduced to sixty days, in conformity with standard court practice.

## V.
## AN ORDER TO PUBLISH THE NOTICE OF PENDENCY IN AN ABBREVIATED FORM AT DEFENDANTS' EXPENSE WOULD BE IMPROPER

Plaintiff's motion asks the court for permission to publish the Notice of Pendency in an abbreviated form to be approved by the Court, at Defendants' expense by social media and by publication in newspaper should Defendants fail to furnish a complete Excel list or more than 20% of the notice be returned as undeliverable with no forwarding address to be published in English and Chinese. Notice of Pl's Mot. ¶8. First-class mail and in-store posting are sufficient to provide notice to potential opt-in class members. *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F.Supp.2d 545, 565 (S.D.N.Y. 2013); *Rubery v. Buth-Na-Bodhaige, Inc.*, 569 F.Supp.2d 334, 338 (W.D.N.Y. 2008) (ordering only mailed and posted notice where "plaintiff made no showing that would justify going beyond the belt-and-suspenders approach of utilizing both mailed and

posted notices, and requiring defendants to further notify its employees via company e-mail and newsletter publications); *Sherril v. Sutherland Global Services, Inc.*, 487 F.Supp.2d 344, 351 (W.D.N.Y. 2007) (finding a proposal to e-mail, physically post, mail, and publish notice in an employee newsletter to be "broader than necessary"). In *Sutherland*, the court is concerned with striking a balance between "ensuring adequate notification, while also minimizing any disturbance to Sutherland's workplace." *Sutherland*, 487 F.Supp.2d at 351.

Plaintiff has not made a showing that would justify "going beyond the belt and suspenders approach of utilizing both mailed and posted notices." There is no indication in Plaintiff's memorandum of law in support or the record that posted and mailed notices would not suffice. Alternatively, requiring extra steps such as publication in a newspaper or periodical would be incredibly disruptive to Defendant's workplace and would have very little effect on providing notice to potential Plaintiff. Defendants own a small restaurant that employs approximately 11 at a time. It is doubtful published notice would reach such a small subset of the population. In addition, Plaintiff has not provided a justification for publication of notice at Defendants' expense. Plaintiff's request to publish notice is unnecessary and should not be granted.

## V.
## PUBLICATION AND DISTRIBUTION OF AN OPT-IN NOTICE VIA ELECTRONIC MEDIA IS OVERBROAD AND IMPROPER

Plaintiff's motion seeks authorization to distribute an opt-in notice via electronic media. First, Plaintiff request authorization to disseminate notice of this matter via mail, email, text message, website or social media messages, chats, or posts, to all members of the putative class. Notice of Pl's Mot. ¶3. Second, Plaintiff's motion seeks authorization to publish a full opt-in

notice on Plaintiff's counsel's website. Notice of Pl's Mot. ¶5. Third, Plaintiff's motion seeks

authorization to publish a short form of the notice to social media groups. Notice of Pls' Mot. ¶6.

Plaintiff's requests are overbroad and improper.

This exact issue was discussed in *Mark v Gawker Media LLC*, 24 Wage & Hour Cas 2d

(BNA) 991 (SDNY Mar. 5, 2015).  In that case, the Court approved Plaintiff use of social media

to disseminate notice to potential class members but required Plaintiff to submit proposals as to

the methodology prior to final approval by the Court. Plaintiff submitted proposals wherein they

would post notices on websites such as Reddit and Tumblr. The Court denied this proposal

stating that posting on these websites "lacks any realistic notion of specifically targeting its

notice to individuals with opt-in rights, and instead would call attention to the lawsuit mostly of

individuals with no material connection to the lawsuit whatsoever. The purpose of the FLSA

notice is to notify and inform those eligible to opt in to the collective action. It is not to advertise

the alleged violations by Defendants." *Id.*  The Court went on to discuss Plaintiff's proposed use

of Twitter, LinkedIn and Facebook stating:

> "Plaintiff's proposed use of Twitter, LinkedIn, and Facebook is also overbroad. The
> Court approved use of social media notice on the understanding that such notice would
> effectively mirror the more traditional forms of notice being used in this case. This
> generally means that it expected the notice to contain private, personalized notifications
> sent to potential Plaintiff whose identities were known and would may not be reachable
> by other means. To the extent that Plaintiff's proposals are shot through with attempts to
> send public-facing notices—such as general tweets rather than direct messages, or
> publicly accessible groups—they cease to parallel the other forms of notice that the Court
> has already approved."
>
> *Id.*

Plaintiff's requests here are similar to those which were rejected by the court in *Mark v.*

*Gawker Media LLC*. Plaintiff's requests do not mirror those of more traditional forms of notice.

18

Plaintiff's proposed disseminations are not tailored to target specified known individuals. As a result, Plaintiff's proposed publications would not specifically target potential opt-in individuals, but instead would only serve to advertise alleged violations of Defendants in a manner extremely prejudicial to Defendants, contrary to the purpose of FLSA notice requirements set forth by the court in *Mark v. Gawker Media LLC.* All of Plaintiff's requests to disseminate notice through electronic media should be denied in their entirety.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that this Court deny Plaintiff's Motion in its entirety.

Dated: June 23, 2020
       New York, New York

By:   */s/ Yi Lin*_____
      Yi Lin
      86 Bowery, 2nd Floor
      New York, New York 10013
      (212) 964-5339
      Email: yilinlaw@yahoo.com
      *Attorney for Defendants*
      *JR Sushi 2 Inc, Kai Tung Wang*
      *And Xin Wang*

19