XUE & ASSOCIATES, P.C.
Benjamin B. Xue, Esq.
1 School Street, Suite 303A
Glen Cove, NY 11542
Phone: (516) 595-8887
Email: BenjaminXue@XueLaw.Com
*Attorneys for Defendants Famous Sichuan*
*New York Inc, Ruifeng Yang and Zi Wang*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
YI MEI KE, a/k/a Yimei Ke
*on behalf of herself and others similarly situated*,
                                         Plaintiff,

                                                                  Case No.: 1:19-cv-07332

             -against-

J R SUSHI 2 INC
          d/b/a JR Sushi 2,
FAMOUS SICHUAN NEW YORK INC
          d/b/a Famous Sichuan,
YUKWAH KWOK CHENG,
KAI TUAN WANG,
XIN WANG
RUI YANG
          a/k/a Ruifeng Yang
          a/k/a Rui Feng Yang
          a/k/a Jane Doe,
ZINN WANG
          a/k/a Zi Wang
          a/k/a John Doe, and
HENRY ZHANG,

                                         Defendants.

------------------------------------------------------------X

**DEFENDANTS FAMOUS SICHUAN NEW YORK INC., RUIFENG YANG AND ZI**
**WANG'S MEMORANDUM OF LAW IN SUPPORT OF THEIR CROSS-MOTION FOR**
**SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR**
**CONDITIONAL CERTIFICATION**

# **Contents**

TABLE OF AUTHORITIES ................................................................................................................. ii

PROCEDURAL HISTORY ................................................................................................................. 2

ARGUMENT ................................................................................................................................... 3

II.   PLAINTIFFS FAILED TO SHOW THAT CONDITIONAL CERTIFICATION OF A COLLECTIVE ACTION BY THE COURT IS WARRANTED ................................................................................................... 7

   A.   Requirements for Conditional Certification of a Collective Action Under the Federal Labor Standards Act ................................................................................................................... 7

   B.   Plaintiff Did Not Submit Sufficient Evidence of a Factual Nexus Which Binds Her to Potential Members of the Collective; Plaintiff Cannot Show that Potential Collective Members Were Victims of a Common Policy or Plan that Violated the Law ........................................................... 11

III.   THE COURT SHOULD DENY PLAINTIFFS' REQUEST FOR INFORMATION FOR INDIVIDUALS WITH A CAUSE OF ACTION DATING BACK TO AUGUST 6, 2016 BECAUSE THEIR CLAIMS ARE OUTSIDE THE STATUTE OF LIMITATIONS AND THEY CANNOT JOIN THE COLLECTIVE ................................. 19

IV.   EQUITABLE TOLLING OF THE STATUTE OF LIMITATIONS IS NOT APPROPRIATE IN THIS CASE ... 20

V.   PLAINTIFF'S PROPOSED NOTICE OF PENDENCY IS IMPROPER ....................................... 21

VI.   PUBLICATION AND DISTRIBUTION OF AN OPT-IN NOTICE VIA ELECTRONIC MEDIA IS OVERBROAD AND IMPROPER ................................................................................................ 23

VII.   AN ORDER TO PUBLISH THE NOTICE OF PENDENCY IN AN ABBREVIATED FORM AT DEFENDANTS' EXPENSE WOULD BE IMPROPER ................................................................... 25

VIII.   CONCLUSION ............................................................................................................... 26

## TABLE OF AUTHORITIES

## Cases

*Alli v.  Boston Market Co.*, Civil No. 3:10-cv04 (JCH), 2011 WL 4006691 (D. Conn. March 31, 2012) ..8, 13

*Armstrong v. Weichert Realtors*, Civil No. 05-3120, 2006 WL 1455781, (D.N.J. May 19, 2006) ............. 1

*Barfield v. N.Y.C. Health and Hospitals Corp.*, 05-CV-6319 (JRS), 2005 WL 309870 (S.D.N.Y. Nov. 18, 2005) ................................................................................................................................................... 9

*Cerbone v. International Ladies' Garment Workers' Union*, 768 F.2d 45 (2d Cir. 1985) ........................ 20

*Diaz v. S & H Bondi's Department Store, Inc.*, No. 10 Civ. 7676 (PGG), 2012 WL 137460 (S.D.N.Y. Jan. 18, 2012) ............................................................................................................................................. 23

*Dreyer v. Altchem Environmental Services, Inc.*, Civil No. 06-2393, 2007 WL 7186177 (D.N.J. Sept. 25, 2007) ........................................................................................................................................................ 1

*Fang v. Zhuang*, No. 10–CV–1290 (RRM)(JMA), 2010 WL 5261197 (E.D.N.Y. Dec. 1, 2010) ............ 23

*Fasanelli v. Heartland Brewery, Inc.*, 516 F.Supp.2d 317 (S.D.N.Y. 2007) ............................................ 21

*Guzman v. VLM, Inc.*, No. 07-CV-1126 (JG)(RER), 2007 WL 2994278 (E.D.N.Y. Oct. 11, 2007) ......................................................... 22

*Harlen Assoc. v. Incorp. Vill. of Mineola* 273 F.3d 494 (2d Cir.2001) ........................................................................................................................ 3

*Hoffman v. Sbarro*, 982 F.Supp. 249 (S.D.N.Y. 1997) ............................................................................ 19

*Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165, 169 (1989) ........................................................... 8, 10

*Holland v. Florida*, 560 U.S. 631 (2010) .................................................................................................... 20

*Horne v. United Services Auto Ass'n*, 279 F.Supp.2d 1231 (M.D. Ala. 2003) ....................................... 10

*In re Milos Litig.*, No. 08 Civ. 6666(LBS), 2010 WL 199688 (S.D.N.Y. Jan.11, 2010) ........................... 23

*Iriarte v. Redwood Deli & Catering, Inc.*, No. 07-CV-5062 (FB)(SMG), 2008 WL 2622929 (E.D.N.Y. June 30, 2008) ............................................................. 22

Johnson v. Nyack Hosp., 86 F.3d 8 (2d Cir. 1996) ................................................................................... 20

*Lassen v. Hoyt Livery Inc.*, No. 3:13-cv-01529 (JAM), 2014 WL 4638860 (D. Conn. Sept. 17, 2014) .... 23

*Levinson v. Primedia Inc.*, No. 02-CV-222 (CBM), 2003 WL 22533428 (S.D.N.Y. Nov. 6, 2003) .......... 9

*Lujan v. Cabana Management, Inc.*, 2011 WL 317984 (E.D.N.Y. Feb. 1, 2011) ...................................... 22

*MacGregor v. Farmers Ins. Exch.*, 10-CV-02088, 2011 U.S. Dist. LEXIS 80361 (D.S.C. July 22, 2011) 11

*Major League Baseball Props., Inc. v. Salvino, Inc.* 542 F.3d 290 (2d Cir. 2008) ......................................................................................................................... 3

*Marsh v. Tauck Inc.*, No. 3:04CV220 (WWE), 2005 WL 1221626 (D. Conn. June 9, 2005) ................... 23

*Martin v. Sprint/United Management* Company, No. 15 Civ. 5237 (PAE), 2016 WL 30334 (S.D.N.Y. Jan. 01, 2016) .................................................................................................................................................. 22

*Mike v. Safeco Ins. Co. of Am.*, 274 F.Supp.2d 216 (D. Conn. 2003) ..................................................... 10

*Morales v. Plantworks, Inc.*, 05-CV-2349 (DC), 2006 WL 278154 (S.D.N.Y. Feb. 2, 2006) ................... 9

*Myers v. Hertz Corp.*, 624 F.3d 537 (2d. Cir. 2010) ........................................................................... passim

*Neary v. Metro. Prop. & Cas. Ins. Co.*, 517 F.Supp.2d 606 (D. Conn. 2007) ........................................ 7, 8

*Pace v. DiGuglielmo*, 544 U.S. 408 (2005) .............................................................................................. 20

*Pippins v. KPMG LLP*, No. 11 Civ. 0377 (CM) (JLC), 2012 WL 19379 (S.D.N.Y. January 3, 2012) ........ 8

*Prizmic v. Armour*, No. 05-CV-2503 (DLI) (MDG), 2006 WL 1662614 (E.D.N.Y. June 12, 2006)...........9

*Reyes v. Nidaja, LLC*, No. 14, Civ. 9812, 2015 WL4622587, at *2-3 (S.D.N.Y. August 3, 2015)............18

*Rubery v. Buth-Na-Bodhaige, Inc.*, 569 F.Supp.2d 334 (W.D.N.Y. 2008)...................................................26

Sanchez v. JMP Ventures, L.L.C., 13 Civ 7264 (KBF), 2014 WL 465542, at *2 (S.D.N.Y. Jan. 27 2014)
........................................................................................................................................................................18

*Sanchez v. JMP Ventures, L.L.C.*, No. 13 Civ. 7264 (KBF), 2014 WL 465542 (S.D.N.Y. Jan. 27, 2014)..8

*Sherril v. Sutherland Global Services, Inc.*, 487 F.Supp.2d 344, (W.D.N.Y. 2007) ..................................26

*Trinidad v. Pret A Manger (USA) Ltd.*, 962 F.Supp.2d 545 (S.D.N.Y. 2013)............................................25

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ...............................................................................10

*White v. Rick Bus Co.*, 743 F. Supp. 2d 380 (D.N.J. 2010) .........................................................................1

## Statutes

29 U.S.C. § 216(b) ..................................................................................................................................7, 8

29 U.S.C. § 255(a) ...............................................................................................................................19, 20

Fed. R. Civ. P. 56....................................................................................................................................3

## PRELIMINARY STATEMENT

Defendants FAMOUS SICHUAN NEW YORK INC. ("Famous Sichuan"), RUIFENG YANG ("Yang"), and ZI WANG ("Wang")(Collectively "Moving Defendants), submit this memorandum of law in opposition to Plaintiff Yi Mei Ke's ("Plaintiff") motion for conditional certification under the Fair Labor Standards Act ("FLSA") and in support of their cross-motion for summary judgment pursuant to Fed. R. Civ. P. 56.

Based upon nothing but Plaintiff's own anecdotal and hearsay allegations, Plaintiff seeks conditional certification of a collective that comprises all current and former "non-managerial employees", who worked for Defendants. This broad category, by Plaintiff's own admission, comprises of both tipped and non-tipped employees. While Plaintiff's burden on conditional certification is low for preliminary conditional collective certification, this burden is not non-existent, and certification is not automatic. *White v. Rick Bus Co.*, 743 F. Supp. 2d 380, 387 (D.N.J. 2010); *Dreyer v. Altchem Environmental Services, Inc.*, Civil No. 06-2393, 2007 WL 7186177, at *2 (D.N.J. Sept. 25, 2007); *Armstrong v. Weichert Realtors*, Civil No. 05-3120, 2006 WL 1455781, at *1-2 (D.N.J. May 19, 2006). Rather, the low burden of requiring Plaintiff to make at least a modest actual evidentiary showing that there are other employees "similarly situated" serves as an important guard against wasteful, inefficient, and unjust litigation. *Rick Bus Co.*, 743 F. Supp. 2d at 387.  Plaintiff's offering here, supported only by limited, anecdotal hearsay, is inadequate to meet even the modest evidentiary showing at this stage.

Additionally, the all-encompassing collective, including all "non-managerial employees" proposed by Plaintiff is overbroad, as Plaintiff, a miscellaneous worker, has failed to establish any factual nexus whatsoever between herself and all of the other "non-managerial employees" of Moving Defendants. Furthermore Plaintiff does not even work for Moving Defendants.

Moving Defendants did not have the power to hire and fire Plaintiff, supervise or control her employee work schedules or conditions of employment, determine the rate and method of payment, or maintain employment records Accordingly, Moving Defendant's cross motion for summary judgment should be granted in its entirety, and Plaintiff's motion for conditional certification should be denied in its entirety.

## **PROCEDURAL HISTORY**

Plaintiff filed the original complaint on August 26, 2019 (the "Original Complaint").  The Original Complaint alleged violations of the Fair Labor Standards Act, and New York Labor Laws against Defendants J R Sushi 2 Inc. ("JR Sushi"), Yukwah Kwok Cheng, Kai Tuan Wang, Xin Wang, Jane Doe, and John Doe. No allegations were made against Moving Defendants in the Original Complaint.  On February 12, 2020, Plaintiff filed an amended complaint ("Amended Complaint"), adding Moving Defendants as parties.

Defendant Famous Sichuan operates a restaurant located at 10 Pell Street, New York, NY 10013 (the "Famous Sichuan Restaurant"). While Plaintiff alleged that she worked at the restaurant operated by Defendant JR Sushi (the "JR Restaurant"), Plaintiff makes no allegations that she ever worked at the Famous Sichuan Restaurant in the Complaint or Amended Complaint.

**ARGUMENT**

**I.**     **SUMMARY JUDGMENT SHOULD BE GRANED IN FAVOR OF MOVING DEFENDANTS', AND PLAINTIFF'S CLAIMS AGAINST MOVING DEFENDANTS SHOULD BE DISMISSED BECAUSE MOVING DEFENDANTS' ARE NOT PLAINTIFF'S "EMPLOYERS" UNDER THE FLSA AND NYLL**

Moving Defendants cross-move for summary judgment pursuant to Fed. R. Civ. P. 56. Summary judgment should be granted if "there is no genuine issue as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c); *Major League Baseball Props., Inc. v. Salvino, Inc*., 542 F.3d 290, 309 (2d Cir. 2008). "Although all inferences must be drawn in favor of the nonmoving party, mere speculation and conjecture is insufficient to preclude the granting of the motion." *Harlen Assoc. v. Incorp. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Western World Ins. Co. v. Stack Oil*, 922 F.2d 118, 121 (2d Cir.1990)).

When the moving party has properly supported its motion for summary judgment, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks and citations omitted). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. Rather, the non-moving party must "offer concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The mere existence of a scintilla of evidence" supporting the non-moving party will not suffice; instead, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Id*. at 252.

3

Subject to certain exceptions not applicable in this case, the FLSA defines "employee" as "any individual employed by an employer."  29 U.S.C. § 203(e)(1).  The term "employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).

In construing the above-quoted definition of "employer," the Second Circuit Court of Appeals has held that when determining whether a particular individual qualifies as an "employer" under the FLSA, "the overarching concern is whether the alleged employer possessed the power to control the workers in question, with an eye to the "economic reality" presented by the facts of each case."  *Herman v. RSR Sec. Services Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999), citing *Carter v. Duchess Community College*, 735 F.2d 8, 12 (2d Cir. 1984); *Goldberg v. Whitaker House Coop.*, 366 U.S. 28, 33 (1961).  "Under the "economic reality" test, the relevant factors include whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  *Herman*, 172 F.3d at 139 (internal quotation marks and citations omitted).  "No one of the four factors standing alone is dispositive . . . [i]nstead, the 'economic reality' test encompasses the totality of the circumstances, no one of which is exclusive."  *Id.* (internal citation omitted).  *See also Barfield v. New York City Health and Hosps. Corp.*, 537 F.3d 132, 141-42 (2d Cir. 2008) (the "determination of whether an employer-employee relationship exists for purposes of the FLSA should be grounded in economic reality rather than technical concepts, determined by reference not to isolated factors, but rather upon the circumstances of the whole activity . . . employment for FLSA purposes [is] a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances)."

"[C]ourts have interpreted the definition of "employer" under the New York Labor Law coextensively with the definition used by the FLSA." *Jiao v. Shi Ya Chen,* No. 03 Civ. 0165(DF), 2007 WL 4944767, at \*9 n. 12 (S.D.N.Y. Mar. 30, 2007); *see also Yang v. ACBL Corp.,* 427 F.Supp.2d 327, 342 n. 25 (S.D.N.Y. 2005) ("The 'economic reality' test will be used to determine whether Lee is Yang's 'employer' as defined under both state and federal law, as there is general support for giving FLSA and the New York Labor Law consistent interpretations." (internal quotation marks and alterations omitted)).  The "economic reality" analysis that includes the four-factor economic reality test laid out above is also applied to claims brought under the NYLL.  *Lin v. Comprehensive Health Mgt., Inc.*, No. 08 Civ. 6519 (PKC), 2009 WL 976835, at \*2 (S.D.N.Y. Apr. 9, 2009), citing *Cannon v. Douglas Elliman, LLC*, No. 06 Civ. 7092 (NRB), 2007 WL 4358456, at \*4 (S.D.N.Y. Dec. 10, 2007).

Plaintiff's claims must be dismissed as to Moving Defendants. While the Amended Complaint alleges that Defendant Yang is an owner, operator, and/or officer of JR Sushi, Defendant Yang is the owner of JR Sushi in name only. She did not have any control over the affairs of JR Sushi or of Plaintiff. She did not (1) have the power to hire and fire the employees, (2) supervise and controlled employee work schedules or conditions of employment, (3) determine the rate and method of payment, and (4) maintain employment records. She never determined Plaintiff's rate of pay, work schedule, work load, and employment, nor did she ever determine the rate of pay, work schedule, work load, or employment for **any** employee employed by JR Sushi.

Additionally, Defendant Wang has no ownership interest in JR Sushi at all. Defendant Wang was a full-time college student at Fordham University until 2019. His involvement with JR Sushi is limited to the occasions when he would go there to have meals and his father would ask him to help out by performing some work at the JR Restaurant. He did not (1) have the power to hire and fire the employees, (2) supervise and controlled employee work schedules or conditions of employment, (3) determine the rate and method of payment, and (4) maintain employment records. He never determined Plaintiff's rate of pay, work schedule, work load, and employment, nor did he ever determine the rate of pay, work schedule, work load, or employment for **any** employee employed by JR Sushi.

 Plaintiff did not allege that she worked at the Famous Sichuan Restaurant; she only alleged that she worked at the JR Restaurant. She does not allege that Famous Sichuan could hire or fire her, that Famous Sichuan supervised or controlled her work schedules, that Famous Sichuan determined her rate and method of payment, or that Famous Sichuan maintained her employment records. In fact, Plaintiff made no allegations about payments made by Famous Sichuan at all. Plaintiff's memorandum states that employees who allegedly "work for both JR Sushi 2 and Famous Sichuan [are] paid by JR Sushi only". (Plaintiff's memorandum in support of Plaintiff's Motion at 1). Plaintiff was never employed by Moving Defendants and Moving Defendants never hired or fired employees, supervised or controlled employee work schedules or conditions of employment, determined the rate and method of payment of employees, or maintained employment records at the JR Restaurant.

The Amended Complaint alleges that the JR Restaurant and Famous Sichuan Restaurant share common management, employees, and supplies. Plaintiff's allegations are false.Famous Sichuan is separate and apart from JR Sushi. They do not share employees and staff, they do not

share equipment and materials, and they do not deliver each other's orders to customers. They have different phone numbers. They also serve different food: JR Sushi serves Japanese food, and Famous Sichuan serves Chinese food.

Furthermore, as set forth in greater detail below, Plaintiff's own affidavit indicates that she cannot even establish the hours these alleged shared employees work at each restaurant. Plaintiff's allegations are baseless. Defendant Yang does not know who Plaintiff is. Plaintiff has never worked at the Famous Sichuan Restaurant. Accordingly, Moving Defendant's cross-motion for summary judgment shall be granted, and Plaintiff's Amended Complaint as to Moving Defendants shall be dismissed.

## II.      PLAINTIFFS FAILED TO SHOW THAT CONDITIONAL CERTIFICATION OF A COLLECTIVE ACTION BY THE COURT IS WARRANTED

### A.      Requirements for Conditional Certification of a Collective Action Under the Federal Labor Standards Act

The Fair Labor Standards Act ("FLSA") provides a private cause of action against an employer "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Collective actions under the FLSA require potential class members to opt into the case. *See id*.; *Neary v. Metro. Prop. & Cas. Ins. Co.*, 517 F.Supp.2d 606, 618 (D. Conn. 2007). The District Court has discretion to certify a collective under § 216(b). *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d. Cir. 2010). For a collective action under 29 U.S.C. § 216(b) to be certified and proceed to trial, employees bringing the action must demonstrate that they are similarly situated to potential collective members. 29 U.S.C. § 216(b). The FLSA, however, does not define "similarly situated," nor does it prescribe a method for

certifying a collective action.  *See id*.  The Second Circuit utilizes a two-stage process to determine whether plaintiffs and potential opt-ins are similarly situated and may therefor proceed to trial as a collective.  *Myers*, 624 F.3d at 554-555; *Neary*, 517 F.Supp.2d at 618.

At the first stage, commonly referred to as conditional certification, the court determines whether notice of the action should be issued to potential opt-in plaintiffs and whether the action should proceed initially as a collective action.  *Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165, 169 (1989); *Neary*, 517 F.Supp.2d at 618.  Before facilitation of notice, plaintiffs must make a modest factual showing demonstrating that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law.  *Myers*, 624 F.3d at 555; *Neary*, 517 F.Supp.2d at 618.  "To meet this standard, plaintiffs must proffer 'substantial allegations' of a factual nexus between the named plaintiffs and potential opt-in plaintiffs with regard to their employer's alleged FLSA violation."  *Pippins v. KPMG LLP*, No. 11 Civ. 0377 (CM) (JLC), 2012 WL 19379, at *6 (S.D.N.Y. January 3, 2012).  Plaintiffs can satisfy this burden by showing that there are other employees who are similarly situated with respect to their job requirements and pay provisions.  *Myers*, 624 F.3d at 555.

However, plaintiffs cannot rely on unsupported assertions, *id.*, or conclusory allegations. *Sanchez v. JMP Ventures, L.L.C.*, No. 13 Civ. 7264 (KBF), 2014 WL 465542, at *3 (S.D.N.Y. Jan. 27, 2014).  There must be some identifiable factual nexus which binds the named plaintiffs and the potential class members together as victims of a common policy or scheme.  *Alli v. Boston Market Co.*, Civil No. 3:10-cv04 (JCH), 2011 WL 4006691, at *1-2 (D. Conn. March 31, 2012).  Courts have denied collective certification where the plaintiffs were unable to prove, beyond their own conclusive assertions, that they are similarly situated with potential class members.  *See, e.g.*, *Levinson v. Primedia Inc.*, No. 02-CV-222 (CBM), 2003 WL 22533428, at

*1-2 (S.D.N.Y. Nov. 6, 2003) (denying plaintiff's request for notice to potential class members where plaintiff failed to support their allegations of a company-wide policy with a factual showing that extended beyond his own circumstances); *Prizmic v. Armour*, No. 05-CV-2503 (DLI) (MDG), 2006 WL 1662614, at *2 (E.D.N.Y. June 12, 2006) (stating that "actual evidence of a factual nexus between [plaintiff's] situation and those they claim are similarly situated, rather than mere conclusory allegations" are required); *Morales v. Plantworks, Inc.*, 05-CV-2349 (DC), 2006 WL 278154, at *3 (S.D.N.Y. Feb. 2, 2006) (denying motion for conditional class certification where motion was based on conclusory allegations and plaintiffs offered nothing of evidentiary value); *Barfield v. N.Y.C. Health and Hospitals Corp.*, 05-CV-6319 (JRS), 2005 WL 309870 (S.D.N.Y. Nov. 18, 2005) (denying plaintiff's motion for conditional collection action certification where plaintiff did not present sufficient evidence that she and potential plaintiffs together were victims of a common policy or plan that violated the law).

The second stage of the collective certification process typically occurs at the close of discovery upon the filing of a defendant's motion for decertification. Here the court undergoes an inquiry into whether the action should be certified as a collective action and proceed to trial as such. The court will investigate whether plaintiffs who have opted in are in fact similarly situated to the name plaintiffs. If they are not, the action may be decertified, and the opt-in plaintiffs' claims may be dismissed without prejudice. *Myers*, 624 F.3d at 555.

A Motion for Conditional Certification asks the Court to exercise its judicial discretion, in the interest of efficient case management, to open an action to other parties. The impact of this request on the employer cannot be understated. The court must be sure that judicial intervention is appropriate. In authorizing notice in *Hoffman-LaRoche*, the Supreme Court pointed to the systemic benefits derived from a process that permits the "efficient resolution in

one proceeding of common issues of law and fact arising from the same alleged ... activity."
*Hoffman-LaRoche*, 493 U.S. at 170.  "In other words, the court must be satisfied that there is a
basis to conclude that questions common to a potential group of plaintiffs would predominate a
determination of the merits of the case."  *Mike v. Safeco Ins. Co. of Am.*, 274 F.Supp.2d 216, 220
(D. Conn. 2003).  Not only must diverse members of the proposed collective action present
common questions, those common questions must have common answers that will be resolved
through the representative.  Collective action is not proper if every opt-in plaintiff must testify
regarding his or her job duties.  Absent the requisite commonality, "it is doubtful that § 216(b)
would further the interests of judicial economy, and it would undoubtedly present a ready
opportunity for abuse."  *Horne v. United Services Auto Ass'n*, 279 F.Supp.2d 1231, 1234 (M.D.
Ala. 2003).

This core principle of aggregate or representative litigation was underscored in the
Supreme Court's landmark decision, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).
Although Dukes was decided under Rule 23 and the substantive claim arose under the Civil
Rights Act, two principles underlying that decision apply to all aggregate litigation.  The first is
commonality, "which requires the identification of a common question that will generate a
common answer "apt to drive the resolution of the litigation."  *Dukes*, 564 U.S. at 349.  Second,
the Supreme Court expressly disapproves of "trial by formula," a phrase that encompasses trial
plans based upon sampling methodologies that prevent a defendant from litigating its statutory
defense to individual claims.  *Id*. at 367.  A plaintiff's request for judicial intervention, therefore,
must be analyzed to determine whether the specific violation of law upon which they base their
claim and the claims of all other potential opt-in plaintiffs can be resolved collectively and
consistently with these principles.  *See MacGregor v. Farmers Ins. Exch.*, 10-CV-02088, 2011

U.S. Dist. LEXIS 80361, at *13-15 (D.S.C. July 22, 2011) (relying on the decision in *Dukes* to

deny a motion for class notice under the FLSA because individualized inquiries would be

required).  Some may argue that *Dukes* is irrelevant because it addresses Rule 23, not the FLSA.

However, the Second Circuit has expressly recognized that class certification under Rule 23 and

conditional certification under § 216(b) "are admittedly similar, even if the district courts may

apply a different burden of proof in assessing whether certification is appropriate at different

stages of the litigation.  *Myers v. Hertz Corp.*, 624 F.3d 537, 556 (2d Cir. 2010).

**B.**     **Plaintiff Did Not Submit Sufficient Evidence of a Factual Nexus Which Binds Her to Potential Members of the Collective; Plaintiff Cannot Show that Potential Collective Members Were Victims of a Common Policy or Plan that Violated the Law**

Plaintiff did not submit sufficient evidence of a factual nexus which binds her to the

potential members of the collective. Plaintiff submits no evidence other than her own self-

serving affidavit (which contains allegations which contradict the Amended Complaint) in an

attempt to establish a factual nexus which binds her to the potential members of the collective.

As an initial matter it should be pointed out that Plaintiff's affidavit contains information that

contradicts the Amended Complaint, indicating that Plaintiff is not credible and her affidavit

should be wholly disregarded. In her affidavit, Plaintiff goes into great detail as to what her

wages allegedly were from January 2017 through June 2019. Plaintiff Aff. ¶¶ 13 – 16. The wages

Plaintiff allegedly received and her alleged duration of employment conflict are not only

internally contradictory within her own affidavit, but they conflict with her allegations in the

Amended Complaint. For example, in her affidavit, Plaintiff states that "From February 2017 to

about May 2017, I was paid a flat compensation at a rate of one thousand nine hundred dollars ($1,900.00)". Plaintiff Aff.. ¶14. She later states that "From about April 2017 through about June 2017, I was paid a monthly compensation at a rate of one thousand ninty five hundred [*sic*] dollars ($1,950)." Plaintiff Aff. ¶15. So according to her own sworn statements, there exists a discrepancy as to what compensation she allegedly received for the months of April and May of 2017. Further, in the Amended Complaint, Plaintiff alleges she started employment with JR Sushi in December 2016 (¶73), but in her affidavit Plaintiff states her compensation started from January 2017 (Plaintiff Aff. ¶13).

Plaintiff also contradicts her own period of employment. The Amended Complaint alleges that Plaintiff started working for JR Sushi on December 28, 2016. ¶¶65, 67. But Plaintiff's affidavit states that another employee was not working at JR Sushui "on January 06, 2017, the date on which I began working at the restaurant…" Plaintiff Aff. ¶44. In the Amended Complaint, dated January 27, 2020, Plaintiff alleged that she "continues to be employed by Defendants to work at the restaurant 'JR Sushi 2'" (¶65). Yet in her affidavit, Plaintiff repeatedly states that she ended her employment on August 10, 2019 (¶¶22, 37, 44, 53, 110, 128, 137, 146). The numerous contradictions made by Plaintiff indicate that Plaintiff is not credible and that her affidavit should be disregarded.

Notwithstanding the foregoing, Plaintiff's own self-serving affidavit is grossly insufficient to create a factual nexus binding her to potential collective members. In fact, Plaintiff's own affidavit establishes that there is **not** a factual nexus binding her to potential collective members. As set forth above, Plaintiff can satisfy this burden by showing that there are other employees who are similarly situated with respect to their job requirements and pay provisions. *Myers*, 624 F.3d at 555. There must be some identifiable factual nexus which

Plaintiff and the potential class members together as victims of a common policy or scheme. *Alli v. Boston Market Co.*, Civil No. 3:10-cv04 (JCH), 2011 WL 4006691, at *1-2 (D. Conn. March 31, 2012).

Plaintiff alleges that she was employed at the JR Restaurant. Plaintiff Aff. ¶3. Plaintiff alleges that she worked as a "miscellaneous kitchen helper and cook". *Id*. Plaintiff alleges that she received a flat monthly payment. Plaintiff does not allege that she received any tips. Plaintiff seeks to represent a collective representing "all non-managerial employees" at both the JR Restaurant and the Famous Sichuan Restaurant.

Plaintiff's Affidavit provides a chart (the "Chart") of employees she alleges works at JR Restaurant, as well as employees she alleges works at both the JR Restaurant and/or the Famous Sichuan Restaurant. Plaintiff Aff. ¶22. The Chart, as well as Plaintiff's subsequent allegations, even if taken as true, are insufficient to establish a modest factual nexus between Plaintiff and the potential collective members. In fact, the Chart establishes that a factual nexus does **not** exist between Plaintiff and the potential collective members.

The Chart contains individuals who purportedly worked as chefs, delivery people, waitresses, a "packer" and miscellaneous workers.  Plaintiff Aff. ¶22. Some of these workers received tips, while some did not. It is clear that Plaintiff's job duties, as a miscellaneous worker, would differ greatly from the other purported class members, who work a wide range of positions. But it is also clear from the Chart that there are vastly different payment policies amongst those workers. Plaintiff alleges that she received a flat monthly wage from between $1,800 per month to $2,100. Plaintiff Aff. ¶¶13 – 16. The Chart indicates that the wages for the other purported class members differ greatly than the wage of Plaintiff, and even differ greatly

amongst each other. For example, the Chart alleges that there was a sushi bar chef who received a weekly (rather than monthly) payment of $900 per week. The Chart alleges there was another sushi bar chef who received a monthly wage of $3,000 per month. The Chart alleges there was one waitress who purportedly received $3,000 per month, and another waitress who purportedly received $3,300 per month. The foregoing examples are of employees who Plaintiff alleges only worked at the JR Restaurant.

Even assuming *arguendo* that Moving Defendants are employers of employees at the JR Restaurant (which Moving Defendants deny), the Chart indicates that there is simply no identifiable factual nexus which binds Plaintiff and the potential class members together as victims of a common policy or scheme: the employees have different tasks, different hours, and all have different wages.

Additionally, Plaintiff's affidavit makes clear that she was allegedly subject to a different payment scheme than the other alleged employees. Plaintiff alleges in her affidavit that she did not receive a paystub with her pay (Plaintiff Aff. ¶18). Yet Plaintiff also alleges that she learned of some other employee's wages when she saw her boss writing paystubs for those employees (Plaintiff Aff. ¶40), indicating that she was not subject to a common employment policy as those employees.

It is especially clear from the Chart and Plaintiff's Affidavit that Defendants JR Sushi 2 and Famous Sichuan do not constitute a joint enterprise, and that there is no identifiable factual nexus which binds Plaintiff and employees of the Famous Sichuan Restaurant together as victims of a common policy or scheme. Plaintiff does not allege that she ever worked at Famous

Sichuan's restaurant herself. Instead she alleges that she knows certain co-workers at the JR Restaurant who worked at both Famous Sichuan's Restaurant and the JR Restaurant.

The first employee appearing on the Chart Plaintiff alleges worked at both the JR Restaurant and the Famous Sichuan Restaurant is Huang Yi Ba. The Chart indicates that Mr. Huang works 6 days a week, works 66 hours per week, and received $2,100 - $2,200 per month. *Id*. Critically, the chart does not break down what days Mr. Huang allegedly works at each location, does not break down the number of days Mr. Huang allegedly works at each location. There is no allegation that Mr. Huang received any payment at all by Famous Sichuan, and in fact Plaintiff's memorandum in support of her motion indicates that Mr. Huang was only ever paid by JR Sushi. (Plaintiff's memorandum in support of Plaintiff's Motion at 1). Plaintiff makes conclusory allegations regarding Mr. Huang's work schedule and does not state the basis of this information. Plaintiff Aff. ¶120. Notably, Plaintiff does not break down how many hours Mr. Huang works at each restaurant. *Id*. Plaintiff also alleges knowledge of Mr. Huang's rate of pay. *Id*. ¶121. Plaintiff alleges that the basis for this knowledge is a conversation he had with Mr. Huang. *Id*. ¶122. Critically, Plaintiff alleges that during this conversation Mr. Huang stated that "WANG KAI TUAN had tricked him regarding the conditions and salary associated with his employment". *Id*. Kai Tuan Wang is associated with the JR Restaurant, and has nothing to do with the Famous Sichuan Restaurant. Plaintiff did not allege that any Moving Defendants were referenced in that conversation, and did not allege that Mr. Huang was paid by Moving Defendants.

The next employee appearing on the Chart Plaintiff alleges worked at both the JR Restaurant and the Famous Sichuan Restaurant is Yi Zhong. *Id*. ¶22. The Chart indicates that Mr. Zhong worked part-time and states he worked 2-3 days/week "working at Famous Sichuan I

heard". *Id*. It does not state the number of hours he worked, nor does it say what his wage is. *Id*. Critically Plaintiff does not state where she heard this information from. Plaintiff alleges that Mr. Zhong "received the salary of the employee he was substituting for" (*Id*. ¶131), and the basis for this allegation is that "another deliveryman mentioned YI ZHONG'S wage to [her]; however [she] cannot recall who specifically told [her] this information". *Id*.  ¶132.

The next employee appearing on the Chart Plaintiff alleges worked at both the JR Restaurant and the Famous Sichuan Restaurant is Zhang Guo Li. *Id*. ¶22. The Chart indicates that Mr. Li worked 6 days a week, works 66 hours per week, and received $1,200 per month. *Id*. Critically, the Chart does not break down what days Mr. Li allegedly works at each location, nor does it break down the number of days Mr. Li allegedly works at each location. There is no allegation that Mr. Li received any payment at all by Famous Sichuan, and in fact Plaintiff's memorandum in support of her motion indicates that Mr. Li was only ever paid by JR Sushi. (Plaintiff's memorandum in support of Plaintiff's Motion at 1). Plaintiff makes conclusory allegations regarding Mr. Li's work schedule and does not state the basis of this information. Plaintiff Aff. ¶135. Notably, Plaintiff does not break down how many hours Mr. Li works at each restaurant. *Id*. Plaintiff also alleges knowledge of Mr. Li's rate of pay. *Id*. ¶139. Plaintiff alleges that the basis for this knowledge is that "Mr. Li made the fact that he made $100 more than other delivery drivers well known". *Id*. ¶140. Critically, Plaintiff also alleges she "overheard WANG KAI TUAN confirm this to be true". *Id*. Defendant Wang Kai Tuan is associated with the JR Restaurant, and has nothing to do with the Famous Sichuan Restaurant. Plaintiff did not allege that any Moving Defendants confirmed the wage to be true, and did not allege that Mr. Li was paid by Moving Defendants.

The last employee appearing on the Chart Plaintiff alleges worked at both the JR Restaurant and the Famous Sichuan Restaurant is Shi Fu. *Id*. ¶22. The Chart indicates that Mr. Fu worked 6 days a week, worked at the Famous Sichuan Restaurant from 23:00 to 3:00, and received $1,100 per month. *Id*. There is no allegation that Mr. Fu received any payment at all by Famous Sichuan, and in fact Plaintiff's memorandum in support of her motion indicates that Mr. Fu was only ever paid by JR Sushi. (Plaintiff's memorandum in support of Plaintiff's Motion at 1). Notably, later on in her affidavit, when Plaintiff makes conclusory allegations regarding Mr. Fu's work schedule, she does not mention the 4 hours each day Mr. Fu allegedly worked at the Famous Sichuan Restaurant. Plaintiff Aff. ¶148.  Nor does Plaintiff state the basis of her knowledge for Mr. Fu's alleged work hours. *Id*. Furthermore, Plaintiff also alleges knowledge of Mr. Fu's rate of pay, but explicitly states that she "cannot recall how [she] learned of his wage specifically" and that she bases this knowledge "on the common rate of pay of delivery drivers at the restaurant". *Id*. ¶149.

As to the employees Plaintiff alleges worked at both the JR Restaurant and the Famous Sichuan Restaurant, Plaintiff's Chart and Affidavit show that Plaintiff cannot even properly establish what hours those employees worked, and establishes that they did not receive any payment at all from Famous Sichuan. For at least one employee listed in the Chart (Mr. Di), Plaintiff explicitly admits that they had a variable schedule and variable schedule. Plaintiff's Chart lists two employees (Mr. Di and Mr. Li) who received tips whereas Plaintiff did not. Plaintiff's Chart even indicates one employee who allegedly worked the same job as Plaintiff (Mr. Huang), and that employee allegedly received a higher wage than Plaintiff did and allegedly received a one hour break each day while Plaintiff did not.

17

There is "a consensus in this district that where a plaintiff bases assertion of a common policy on observations of coworkers or conversations with them, he must provide a minimum level of detail regard the contents of those conversations or observations" *Reyes v. Nidaja, LLC,* No. 14, Civ. 9812, 2015 WL4622587, at *2-3 (S.D.N.Y. August 3, 2015); Sanchez v. JMP Ventures, L.L.C., 13 Civ 7264 (KBF), 2014 WL 465542, at *2 (S.D.N.Y. Jan. 27 2014)(denying conditional certification where affidavits were based on plaintiff's observations and conversations with other employees but failed to "provide any detail as to a <u>single</u> such observation or conversation" (emphasis original). Plaintiff states her knowledge of Mr. Huang's wages is based upon a conversation she had with him, but Plaintiff does not provide any detail regarding that conversation. Plaintiff Aff. ¶122. Plaintiff states her knowledge of Mr. Zhong's wage is due to the fact that "another deliveryman mentioned YI ZHONG'S wage to [her]; however [she] cannot recall who specifically told [her] this information". *Id.*  ¶132. Plaintiff alleges that the basis for her knowledge of Mr. Li's wages is that "Mr. Li made the fact that he made $100 more than other delivery drivers well known". *Id.* ¶140. Yet this observation is problematic based on the fact that it relies on Plaintiff's knowledge of other delivery drivers' wages, which she has failed to sufficiently establish knowledge of. Lastly, in regards to Mr. Fu's wages, Plaintiff explicitly states that she "cannot recall how [she] learned of his wage specifically" and that she bases this knowledge "on the common rate of pay of delivery drivers at the restaurant". *Id.* ¶149. It is abundantly clear that Plaintiff has failed to proffer any baseline facts regarding her knowledge of the hours and pay for these employees, and thus falls short of meeting her burden for collective certification.

Even assuming *aruendo* that JR Sushi and Famous Sichuan constitute a joint enterprise and that these employees allegedly worked for both JR Sushi and Famous Sicuhuan (which

Moving Defendants deny, and which Plaintiff's Affidavit clearly fails to establish) there is simply no identifiable factual nexus which binds Plaintiff and the employees who allegedly worked at both the JR Restaurant and the Famous Sichuan Restaurant together as victims of a common policy or scheme. If anything, as set forth above, Plaintiff's Chart and Plaintiff's Affidavit indicate that there is *not* a common policy between them. For the foregoing reasons, collective certification should be denied.

**III.    THE COURT SHOULD DENY PLAINTIFFS' REQUEST FOR INFORMATION FOR INDIVIDUALS WITH A CAUSE OF ACTION DATING BACK TO AUGUST 6, 2016 BECAUSE THEIR CLAIMS ARE OUTSIDE THE STATUTE OF LIMITATIONS AND THEY CANNOT JOIN THE COLLECTIVE**

The statute of limitations for assertion of wage claims under the FLSA is two years from when the cause of action accrued, unless the employer acted willfully, in which case the limitations period is three years from when the cause of action accrued.  29 U.S.C. § 255(a).  The statute of limitations continues to run through the notice and opt-in period; potential plaintiffs must opt-in to the collective action to toll the statute of limitations.  *Hoffman v. Sbarro*, 982 F.Supp. 249, 260 (S.D.N.Y. 1997).

The Plaintiff's Motion made requests that are affected by the statute of limitations.  The Plaintiff requested a Microsoft Excel file containing contact information of current and former employees dating back to August 6, 2016.  Notice of Pl.'s Mot. ¶2. Plaintiff also asked the court to issue a Notice of Pendency addressed to current and former employees dating back to August 6, 2016.  *Id.*; Pl's Proposed Notice of Pendency.  An individual whose cause of action accrued on

August 6, 2016 would have had to bring his claim by August 6, 2019, at the latest.  If the court approves Plaintiff's request for the Microsoft Excel file and Notice of Pendency, it will result in solicitation of expired claims.  Therefore, the court should deny Plaintiff's request for the Microsoft Excel file and Notice of Pendency from August 6, 2016.  If the Court were to grant Plaintiff's motion, Plaintiff shall not be entitled to employees' information more than two years from the date of the granting of such motion.

## IV.   EQUITABLE TOLLING OF THE STATUTE OF LIMITATIONS IS NOT APPROPRIATE IN THIS CASE

The statute of limitations for assertion of wage claims under the FLSA is two years unless the employer acted willfully, in which case the limitations period is three years.  29 U.S.C. § 255(a).  Equitable tolling allows courts to extend the statute of limitations to avoid inequitable circumstances.  Johnson v. Nyack Hosp., 86 F.3d 8, 12 (2d Cir. 1996); The doctrine was developed to address situations in which fraudulent or other conduct concealed the existence of a claim.  *See, e.g.*, *Cerbone v. International Ladies' Garment Workers' Union*, 768 F.2d 45, 48 (2d Cir. 1985).  A litigant is entitled to equitable tolling of a statute of limitations only if the litigant establishes two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."  *Holland v. Florida*, 560 U.S. 631, 649 (2010).  The plaintiff has the burden of showing that equitable tolling is warranted.  *See Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).

Plaintiff has not satisfied either of the elements set forth by the Supreme Court to justify equitable tolling.  Plaintiff has not pointed to any extraordinary circumstances standing in the way of timely filing.  There is no indication that Moving Defendants will interfere with the exercise of any potential plaintiff's rights under the FLSA during the opt-in period.  Plaintiff

states that "delays are of particular concern due to the ability to promptly identify and provide notice to potential class members", but this concern is in no way extraordinary and exists for all FLSA opt-in periods. Plaintiff has not articulated why a potential class member who acts diligently might nevertheless fall outside the statute of limitations period.  In fact, the notice period aids potential opt-in plaintiffs by notifying them of potential claims against a defendant and providing an opportunity to preserve their claim by joining the collective.  Therefore, the Court should not grant equitable tolling for the opt-in period

## V.    PLAINTIFF'S PROPOSED NOTICE OF PENDENCY IS IMPROPER

Moving Defendants object to Plaintiff's proposed Notice of Pendency as attached to Plaintiff's motion on multiple grounds.  As set forth above, Moving Defendants object to the class that Plaintiffs seek to represent.  However, if certification is granted, Plaintiff's Notice is improper in several ways.

First, Plaintiff's counsel should be required to provide precise information regarding their fees and costs.  Specifically, Plaintiff's counsel should be required to disclose the fee arrangement with Plaintiff, as well as the percentage of any recovery that would be paid as attorney fees from any recovery by opt-in plaintiffs.  *See Fasanelli v. Heartland Brewery, Inc.*, 516 F.Supp.2d 317, 324 (S.D.N.Y. 2007) (holding that final notice must include statement regarding the fee arrangement agreed to by the named plaintiff and his attorneys, because such arrangement could have an impact on any recovery by opt-in plaintiffs).  Plaintiff's counsel should specify how costs will be paid.  In its current form, the Notice states that Plaintiff's counsel's costs and fees will "be paid out of any settlement or money judgment Plaintiffs Receive against Defendants. If there is no settlement or money judgment, Troy Law, PLLC will not receive any fee." Notice of Pendency at 4. However, there is no mention of how costs will be

handled in the event of a judgment against Plaintiff.  In addition, Plaintiff's counsel does not explain in any detail the costs and expense that may be incurred in the lawsuit, including paper discovery, depositions of named Plaintiff, the Defendants, and/or opt-in plaintiffs, motion practice, and trial.  The language in the Notice must provide potential opt-in plaintiffs with sufficient information regarding the attorney-client relationship they may be engaging in, and the Notice falls short in that regard.

Second, the proposed Notice directs potential plaintiffs to mail an opt-in form to Plaintiff's counsel.  The opt-in should instead be mailed to the Clerk of Court.  Notice of Pendency at 3 - 4.  Requiring potential opt-ins to mail the form to Plaintiff's counsel discourages potential plaintiffs from retaining their own counsel, which potential plaintiffs should be free to do without undue influence from Plaintiff's counsel.  *See Lujan v. Cabana Management, Inc.*, 2011 WL 317984, at *13 (E.D.N.Y. Feb. 1, 2011) (reasoning that mailing opt-in forms to plaintiffs' counsel "implicitly discourages opt-in plaintiffs from selecting other counsel," altering notice to direct opt-in plaintiffs to mail forms to the Court) (citing *Bowens v. Atl. Maint. Corp.*, 546 F.Supp.2d 55, 84-85 (E.D.N.Y. 2008);  *Iriarte v. Redwood Deli & Catering, Inc.*, No. 07-CV-5062 (FB)(SMG), 2008 WL 2622929, at *4 (E.D.N.Y. June 30, 2008); *Guzman v. VLM, Inc.*, No. 07-CV-1126 (JG)(RER), 2007 WL 2994278, at *5-6 (E.D.N.Y. Oct. 11, 2007).

Third, a 90-day opt-in period is excessive.  Plaintiff's proposed Notice gives potential collective members 90 days from the date the notice is sent out to respond.  Notice of Pendency 3.  Courts handling FLSA collective actions generally provide opt-in periods of 60 days.  *Martin v. Sprint/United Management* Company, No. 15 Civ. 5237 (PAE), 2016 WL 30334, at *17 (S.D.N.Y. Jan. 01, 2016); See*, e.g.*, *Lassen v. Hoyt Livery Inc.*, No. 3:13-cv-01529 (JAM), 2014 WL 4638860, at *7 (D. Conn. Sept. 17, 2014) (ordering a 60 day opt-in period absent a showing

that there will be unusual difficulties locating or contacting potential opt-in plaintiffs); *Marsh v. Tauck Inc.*, No. 3:04CV220 (WWE), 2005 WL 1221626, at \*1 (D. Conn. June 9, 2005) (Ordering a 60 day opt-in period); *Diaz v. S & H Bondi's Department Store, Inc.*, No. 10 Civ. 7676 (PGG), 2012 WL 137460 , at \*8 (S.D.N.Y. Jan. 18, 2012) (Ordering sixty-day opt-in period and remarking that many courts in the district have set a sixty-day period).  While some courts have issued ninety-day opt-in periods, such rulings have generally been on consent or where special circumstances indicate that an extend opt-in period is appropriate.  *See In re Milos Litig.*, No. 08 Civ. 6666(LBS), 2010 WL 199688, at \*2–3, (S.D.N.Y. Jan.11, 2010) (90 days); *Fang v. Zhuang*, No. 10–CV–1290 (RRM)(JMA), 2010 WL 5261197, at \*4 (E.D.N.Y. Dec. 1, 2010) (providing for ninety day period "in light of the frequent, long-term international travel of many of the prospective plaintiffs").

Plaintiff has not claimed there will be difficulty locating or contacting prospective plaintiffs during the opt-in period. Moving Defendants have not consented to a ninety-day opt-in period.  Nothing in the record indicates that there should be any difficulty during the opt-in period to warrant a 90-day opt-in period.  Considering this, a ninety-day opt-in period is excessive.  Moving Defendants maintain that conditional certification is unwarranted, but in the event the Court grants Plaintiff's Motion for Conditional Certification, the opt-in period should be reduced to sixty days, in conformity with standard court practice.

## VI.   <u>PUBLICATION AND DISTRIBUTION OF AN OPT-IN NOTICE VIA ELECTRONIC MEDIA IS OVERBROAD AND IMPROPER</u>

Plaintiff's Proposed Publication Order seeks authorization to distribute an opt-in notice via electronic media. Plaintiff's Proposed Publication Order requests authorization to disseminate notice of this matter via mail, email, text message, website or social media

messages, chats, or posts, to all members of the putative class. Proposed Publication Order ¶6. Plaintiff's Proposed Publication Order also seeks authorization to publish a short form of the notice to social media groups. Proposed Publication Order ¶7. Plaintiff's Proposed Publication Order seeks authorization to publish a full opt-in notice on Plaintiff's counsel's website. Proposed Publication Order ¶10. Plaintiff's Proposed Publication Order also seeks authorization to create an entirely new website to review the notice and submit a consent to join form. Proposed Publication Order ¶13. Plaintiff's requests are overbroad and improper.

This exact issue was discussed in *Mark v Gawker Media LLC*, 24 Wage & Hour Cas 2d (BNA) 991 (SDNY Mar. 5, 2015). In that case, the Court approved plaintiffs use of social media to disseminate notice to potential class members but required plaintiffs to submit proposals as to the methodology prior to final approval by the Court. Plaintiffs submitted proposals wherein they would post notices on websites such as Reddit and Tumblr. The Court denied this proposal stating that posting on these websites "lacks any realistic notion of specifically targeting its notice to individuals with opt-in rights, and instead would call attention to the lawsuit mostly of individuals with no material connection to the lawsuit whatsoever. The purpose of the FLSA notice is to notify and inform those eligible to opt in to the collective action. It is not to advertise the alleged violations by Defendants." *Id.* The Court went on to discuss Plaintiffs' proposed use of Twitter, LinkedIn and Facebook stating:

> "Plaintiffs' proposed use of Twitter, LinkedIn, and Facebook is also overbroad The Court approved use of social media notice on the understanding that such notice would effectively mirror the more traditional forms of notice being used in this case .This generally means that it expected the notice to contain private, personalized notifications sent to potential plaintiffs whose identities were known and would may not be reachable by other means. To the extent that Plaintiffs' proposals are shot through with attempts to send public-facing notices—such as general tweets rather than direct messages, or

publicly accessible groups—they cease to parallel the other forms of notice that the Court has already approved."

*Id.*

Plaintiff's requests here are similar to those which were rejected by the court in *Mark v. Gawker Media LLC.* Plaintiff's requests do not mirror those of more traditional forms of notice. Plaintiff's proposed disseminations are not tailored to target specified known individuals. As a result, Plaintiff's proposed publications would not specifically target potential opt-in individuals, but instead would only serve to advertise alleged violations of Moving Defendants in a manner extremely prejudicial to Moving Defendants, contrary to the purpose of FLSA notice requirements set forth by the court in *Mark v. Gawker Media LLC.* All of Plaintiff's requests to disseminate notice through electronic media should be denied in their entirety.

## VII.   AN ORDER TO PUBLISH THE NOTICE OF PENDENCY IN AN ABBREVIATED FORM AT DEFENDANTS' EXPENSE WOULD BE IMPROPER

Additionally, Plaintiff's Proposed Publication Order asks the court for permission to publish the Notice of Pendency in an abbreviated form to be approved by the Court, at Moving Defendants' expense by social media and by publication in newspaper should Moving Defendants fail to furnish a complete Excel list or more than 20% of the notice be returned as undeliverable with no forwarding address to be published in English and Chinese.  Proposed Publication Order ¶16.

First-class mail and in-store posting are sufficient to provide notice to potential opt-in class members.  *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F.Supp.2d 545, 565 (S.D.N.Y. 2013); *Rubery v. Buth-Na-Bodhaige, Inc.*, 569 F.Supp.2d 334, 338 (W.D.N.Y. 2008) (ordering

only mailed and posted notice where "plaintiff made no showing that would justify going beyond the belt-and-suspenders approach of utilizing both mailed and posted notices, and requiring defendants to further notify its employees via company e-mail and newsletter publications); *Sherril v. Sutherland Global Services, Inc.*, 487 F.Supp.2d 344, 351 (W.D.N.Y. 2007) (finding a proposal to e-mail, physically post, mail, and publish notice in an employee newsletter to be "broader than necessary").  In *Sutherland*, the court was concerned with striking a balance between "ensuring adequate notification, while also minimizing any disturbance to Sutherland's workplace."  *Sutherland*, 487 F.Supp.2d at 351.

Plaintiff has not made a showing that would justify "going beyond the belt and suspenders approach of utilizing both mailed and posted notices."  There is no indication in Plaintiff's memo or the record that posted and mailed notices would not suffice.  Alternatively, requiring extra steps such as publication in a newspaper or periodical would be incredibly disruptive to Moving Defendants' workplace and would have very little effect on providing notice to potential plaintiffs. Moving Defendants own a small restaurant that employs less than 10 employees at a time.  It is doubtful published notice would reach such a small subset of the population.  In addition, Plaintiff has not provided a justification for publication of notice at Moving Defendants' expense.  Plaintiff's request to publish notice is unnecessary and should not be granted.

## VIII.   <u>CONCLUSION</u>

For the reasons set forth above, Moving Defendants respectfully request that this Court deny Plaintiff's Motion in its entirety and grant Moving Defendants' Cross-Motion in its entirety.

Dated: June 24, 2020
        Glen Cove, New York

                                        Xue & Associates, P.C.
                                        *Attorneys for Defendants Famous Sichuan*
                                        *New York Inc., Ruifeng Yang, and Zi Wang*


                         By:    /s/ Benjamin B. Xue
                                Benjamin B. Xue, Esq.
                                1 School Street, Suite 303A
                                Glen Cove, NY 11542
                                Tel.: (516) 595-8887
                                Email: BenjaminXue@XueLaw.Com