UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| YI MEI KE, | |
| Plaintiff, | |
| -against- | |
| J R SUSHI 2 INC., et al., | |
| Defendants. | |

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __02/07/2022__

19-CV-7332 (PAE) (BCM)

**REPORT AND RECOMMENDATION
TO THE HONORABLE PAUL A.
ENGELMAYER**

**BARBARA MOSES, United States Magistrate Judge.**

Plaintiff Yi Mei Ke worked as a kitchen helper and cook at the JR Sushi 2 restaurant (JR Sushi), located at 86A West Broadway in Manhattan. Am. Compl. (Dkt. No. 31) ¶ 65. In this action, brought on behalf of herself and others similarly situated, plaintiff sued two corporate defendants and six individuals, alleging that they were all "shareholders, directors, officers, and/or managers" of JR Sushi (and another restaurant, called Famous Sichuan); that they were all her joint employers; and that they all violated the minimum wage and overtime provisions of the Fair Labor Standards Act (FLSA), as well as the minimum wage, overtime, spread-of-hours, wage notice, and wage statement provisions of the New York Labor Law (NYLL) and its implementing regulations. Am. Compl. ¶¶ 22, 24-31, 33-37, 39-41, 43-45, 47.

Both corporate defendants and four of the six individual defendants have appeared and answered. The four individuals are a family: Ruifeng Yang, who owns JR Sushi; her husband Kai Tuan Wang, the "general on-site manager" of JR Sushi; their son Zi Wang; and their daughter Xin Wang. Am. Compl. ¶¶ 26-43. Zi Wang has consistently maintained that he was never an owner or manager of JR Sushi; rather, during plaintiff's employment, he was a full-time college student. Declaration of Zi Wang (Zi Wang Decl.) (Dkt. No. 136) ¶¶ 3-7. Similarly, Xin Wang has consistently maintained that she was never an owner or manager of the restaurant. Declaration of

Xin Wang (Xin Wang Decl.) (Dkt. No. 137) ¶¶ 6-9. Rather, throughout plaintiff's employment, Xin Wang was a full-time schoolteacher. *Id.* ¶ 5.

At deposition on March 31, 2021, testifying through a Chinese interpreter, plaintiff confirmed that it was Kai Tuan Wang (whom she called "boss"), not his children, who hired her, supervised her, paid her wages, decided whether to give her a raise, and kept her employment records. Declaration of Benjamin B. Xue (Xue Decl.) (Dkt. No 135) Ex. F. (Ke Dep. Tr.) (Dkt. No. 135-6), at 33-36, 64, 79-80. She saw Zi Wang from time on weekends, when he came in, at his father's direction, to work a Saturday or Sunday shift as a waiter. *Id.* at 80. She saw Zi's sister Xin Wang a total of "[m]aybe three times," when her parents "felt there was a need to adjust the prices" and "would tell their daughter to come and make the adjustments" on the computer. *Id.* at 59, 83. Ke was not "aware" that she had sued Zi Wang and Xin Wang, *id.* at 81, and believed she was "only suing two, the boss and the boss' wife." *Id.* at 82. Plaintiff testified that she had "no right to sue Zi Wang," *id.,* and "no reason whatsoever to sue Xin Wang." *Id.* at 84.

Thereafter, the parties agreed that all claims against Zi and Xin Wang should be dismissed. However, plaintiff, through her counsel Troy Law, PLLC (Troy Law), refused to dismiss those claims with prejudice, as defendants requested, offering instead to "drop" Zi and Xin Wang without prejudice pursuant to Fed. R. Civ. P. 21, or dismiss the claims against them, also without prejudice, pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii). *See* Pl. Letter dated May 6, 2021 (Dkt. No. 131) at 1; Declaration of John Troy (Troy Decl.) (Dkt. No. 140) ¶¶ 22-24 & Exs. 6-9 (Dkt. Nos.140-6 through 140-9); Xue Decl. ¶ 15 & Exs. I & J (Dkt. Nos. 135-9, 135-10). Zi and Xin Wang, believing that they were entitled to an adjudication on the merits and protection against refiled claims, sought leave to move for summary judgment, which I granted. (Dkt. No. 133.)

Now before me for report and recommendation are: (i) the motion of Zi and Xin Wang (the Moving Defendants), filed on May 27, 2021, for summary judgment in their favor and sanctions against Troy Law (Dkt. No. 134); and (ii) plaintiff's cross-motion, filed on June 10, 2021, to drop the Moving Defendants as parties pursuant to Rule 21, without prejudice and with each party to bear her or his own costs. (Dkt. No. 139.) For the reasons that follow, the Moving Defendants' motion should be granted; plaintiff's cross-motion should be denied as moot; and Troy Law should be required to pay the Moving Defendants' reasonable attorneys' fees and costs incurred to obtain that result.

## I.   BACKGROUND

### A.   Facts

The following facts, which are undisputed unless otherwise noted, are taken from the Moving Defendants' Rule 56.1 Statement of Material Facts (Def. 56.1 Stmt.) (Dkt. No. 134-1); the underlying evidentiary materials, including the declarations of Zi and Xin Wang and the Ke deposition transcript; plaintiff's Counter-Statement of Material Facts (Pl. 56.1 Stmt.) (Dkt. No. 141); the underlying evidentiary materials, including plaintiff's pre-deposition affidavits and interrogatory answers, all of which were printed and signed by her in English, *see* Ke Aff. (Dkt. No. 70-5); Second Ke Aff. (Dkt. Nos. 80, 87); Ke Interrog. Ans. (Dkt. No. 135-5); the Troy declaration; and other materials in the record, as permitted by Fed. R. Civ. P. 56(c)(3).

Plaintiff worked at JR Sushi from January 6, 2017 through August 10, 2019. Ke Aff. ¶ 3; Second Ke Aff. ¶ 1; Ke Dep. Tr. 10. Defendant Kai Tuan Wang – known to plaintiff as "boss" – hired her. Ke Dep. Tr. 33-36; *see also id.* at 93 ("Q. Who is your boss? A. Kai Tuan Wang."). Kai Tuan Wang "arranged and handled" plaintiff's "daily work assignment[s]," *id.* at 64, "supervised" her "day-to-day work," *id.* at 33, set her work schedule, *id.* at 36, paid her wages, *id.* at 64, and decided whether to give her a raise. *Id.* Plaintiff clearly testified that Kai Tuan Wang was "the only

person" who supervised her, set her schedule, and determined her work conditions and pay. *Id.* at

79. He was also "the person who kept [her] employment record[s] at JR Sushi." *Id.* at 79-80.[1]

Defendant Zi Wang, who was 24 years old when he signed his declaration in 2021, was a

full-time college student at Fordham University until 2019 (the last year of plaintiff's work at JR

Sushi). Zi Wang Decl. ¶¶ 1, 3. He never had any ownership interest in JR Sushi. Def. R. 56.1 Stmt.

¶ 2; Pl. R. 56.1 Stmt. ¶ 2.; Zi Wang Decl. ¶ 4. During plaintiff's employment at JR Sushi, Zi Wang

worked some Saturday and Sunday shifts. As Ke explained at deposition, "the boss would tell his

son to come to work if there's no one else on a Saturday." Ke Dep. Tr. at 80. Asked if she had any

personal interaction with Zi Wang, plaintiff testified that if something was "not working right in

the restaurant, I would tell Zi Wang to tell his father." *Id.* at 80-81. She considered Zi Wang a

friend and testified, "We all regarded him as a good younger brother." *Id.* at 81.

---

[1] Notwithstanding her unequivocal deposition testimony, plaintiff now asserts, in her Counter-Statement of Material Facts (electronically signed by attorney Troy), that Zi Wang "supervised" plaintiff, "supervised and controlled employee work schedules and conditions of employment," "had the power" to hire and fire employees (though he did not hire or fire her), "determined employee rates and methods of payment" (though not for her), and "kept and maintained employee records" (other than hers) for JR Sushi. Pl. R. 56.1 Stmt. ¶¶ 4-18, 26-32. As discussed in more detail below, these assertions, in turn, are based upon Ke's pre-deposition interrogatory answers, in which she averred in identical (and wholly conclusory) terms, *quoting her own complaint*, that "Defendant Zi Wang 'had the power to hire and fire employees of, supervised and controlled employee work schedules and conditions of employment at, determined employee rates and methods of payment at, and kept and maintained employee records for J R SUSHI 2 INC d/b/a JR Sushi 2.'" Ke Interrog. Ans. at 13-14 (quoting Am. Compl. ¶ 40).

Plaintiff further asserts, in her Counter-Statement of Material Facts, that Xin Wang was a "manager" at JR Sushi who had "the authority to change the prices of menu items, which directly impacted Defendants' business," and that she "worked full-time at JR Sushi in the past." Pl. R. 56.1 Stmt. ¶¶ 67-73. In fact, according to plaintiff's deposition testimony, Xin Wang changed the prices only when called in for that purpose by "the boss or the boss' wife," who would "tell their daughter to come and make the adjustments" whenever they "felt there was a need to adjust the prices." Ke Dep. Tr. at 59. Plaintiff's assertion about Xin Wang's past employment finds no better support in the record. The *only* citation plaintiff provides is to her own unsourced hearsay testimony that she "heard" that Xin Wang "worked in that restaurant in the past," as a waitress. Ke Dep. Tr. at 82.

It is undisputed that Zi Wang did not hire or fire plaintiff – or any other JR Sushi employee. Def. R. 56.1 Stmt. ¶¶ 5, 12-13; Pl. R. 56.1 Stmt. ¶¶ 5, 12-13.[2] It is similarly undisputed that he did not determine plaintiff's rate or method of payment or maintain her employment records. Def. R. 56.1 Stmt. ¶¶ 10-11; Pl. R. 56.1 Stmt. ¶¶ 10-11. Zi Wang further attests – without any evidentiary contradiction – that he never hired, fired, determined the rate of pay, work schedule, workload, or employment conditions of, kept employment records for, or supervised *any* employee of JR Sushi, and never had any authority to do so. Def. 56.1 Stmt. ¶¶ 7-39; Zi Wang Decl. ¶¶ 6-7.[3]

Defendant Xin Wang, who was 30 years old when she signed her declaration in 2021, is a full-time schoolteacher and has been since 2016 – before plaintiff began working at JR Sushi. Def. R. 56.1 Stmt. ¶ 42; Pl. R. 56.1 Stmt. ¶ 42; Xin Wang. Decl. ¶¶ 2, 5. She never had any ownership interest in either restaurant. Def. R. 56.1 Stmt. ¶¶ 43-44; Pl. R. 56.1 Stmt. ¶¶ 43-44. During plaintiff's employment at JR Sushi, if "the boss or the boss' wife felt there was a need to adjust the prices," they "would tell their daughter to come and make the adjustments" on the computer. Ke Dep. Tr. at 59. Asked how often Xin Wang came to the restaurant, plaintiff testified that "sometimes it takes several months for her to come once," and that she saw Xin Wang "[m]aybe three times" during her entire tenure at JR Sushi. Ke Dep. Tr. at 59-60, 83. "When she was there, she would be gone as soon as she finished her work," in less than "two hours." *Id.* at 83-84. Once, when Xin Wang was there at a mealtime, "the boss told me to make one for her." *Id.* at 84. Plaintiff

---

[2] In her Counter-Statement of Material Facts, plaintiff states that she "[l]ack[s] information to admit or deny" these facts. Pl. R. 56.1 Stmt. ¶¶ 12-13. They are therefore deemed admitted. *See* Local Civ. R. 56.1(c) (to the extent not "specifically controverted" by the non-moving party, the statement of material facts submitted by the moving party may be "deemed to be admitted for purposes of the motion"); *see also Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party then fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.").

[3] Plaintiff attempts to controvert some of these facts, *see* Pl. R. 56.1 Stmt. ¶¶ 7-39, but points to no admissible evidence supporting her counter-statement. *See supra* n.1; *infra* n.5.

"never talked to her personally," and had no other knowledge about "what Xin Wang did." *Id.* at 60, 84; *see also id.* at 63 ("What she does, I don't know.").

It is undisputed that Xing Wang did not hire, fire, or supervise plaintiff – or any other JR Sushi employee. Def. R. 56.1 Stmt. ¶¶ 46-48, 53-55; Pl. R. 56.1 Stmt. ¶¶ 46-58, 53-55. It is also undisputed that Xin Wang never determined the rate of pay, work schedule, workload, or employment conditions of, kept employment records for, or supervised *any* employee of JR Sushi. Def. R. 56.1 Stmt. ¶¶ 49-52, 55-66. Xin Wang further attests – without any evidentiary contradiction – that she never had any *power* to hire, fire, supervise, determine the rate of pay, work schedule, workload, or employment conditions of, or keep employment records for, any employee of JR Sushi. Def. 56.1 Stmt. ¶¶ 67-80; Xin Wang Decl. ¶¶ 7-9.[4]

At her deposition, plaintiff testified that she was "not aware" that she had sued either Zi Wang or Xin Wang. Ke Dep. Tr. at 81, 84. All she knew was that she was suing "two persons, the boss and the boss's wife." *Id.* at 67. Plaintiff was confident that she "didn't include Zi Wang," *id.* at 82, and repeated – at least seven times, in total – that she was "only" suing "the boss and the boss' wife." *Id.* at 63, 70, 81-82, 90-91, 98. Plaintiff further testified that she had "no right to sue Zi Wang," *id.* at 82, and "no reason whatsoever to sue Xin Wang." *Id.* at 84.

There is no admissible evidence in the record before this Court that contradicts plaintiff's deposition testimony on this point (*i.e.*, that she did not know she was suing Zi and Xin Wang). John Troy, the managing attorney at Troy Law, attempts to undermine his client's testimony by pointing to her pre-deposition affidavits and interrogatory answers, which bear her signature and

---

[4] Plaintiff attempts to controvert these facts, *see* Pl. R. 56.1 Stmt. 67-80, but points to no admissible evidence supporting her counter-statement. *See supra* n.1; *infra* n.5.

list Zi and Xin Wang as defendants in their captions.[5] However, these documents are all written (and signed) in English, which plaintiff cannot read. Ke Dep. Tr. at 96. Each includes a declaration by Ellen Chen, notarized Aaron B. Schweitzer, the managing associate of Troy Law, stating that Chen provided a "true and accurate translation" of the document. Ke Aff. at 24; Second Ke Aff. at 8; Ke Interrog. Ans. at 18. However, Chen does not state *when* she provided the translations, which were apparently oral, or whether she translated the captions.

Attorney Troy also submits his own declaration, in which he states that plaintiff's deposition testimony, to the effect that "she didn't know she was suing Zi Wang or Xin Wang," was "not correct." Troy Decl. ¶¶ 19-20. As support for this conclusion, Troy points out that Xin Wang was listed as a defendant in plaintiff's original Complaint (Dkt. No. 1), which was prepared by another law firm, and states that during her intake session with Troy Law, plaintiff "identified Xin Wang as the boss's daughter, and Zinn Wang as his son," which prompted Troy Law to add Zi Wang as a defendant in the Amended Complaint in place of a John Doe defendant. Troy Decl.

---

[5] Additionally, plaintiff's original affidavit, submitted in connection with her collective certification motion, mentions the Moving Defendants in a single paragraph, as follows: "In addition to RUI YANG, Defendants YUKWAH KWOK CHENG, KAI TUAN WANG, XIN WANG, RUI YANG (a/k/a Ruifeng Yang, a/k/a Rui Feng Yang, a/k/a Jane Doe) and ZINN WANG (a/k/a ZI WANG, a/k/a John Doe) also serve as shareholder, directors, officers, and/or managers of 'JR Sushi 2' and/or 'Famous Sichuan.'" Ke Aff. ¶ 7. Her second affidavit, submitted in further support of her collective certification motion, states that Zi Wang "worked at JR Sushi on Saturdays for the whole day as a waiter," but does not state or suggest that he was an owner or a manager, and does not mention Xin Wang outside of the caption. Second Ke Aff. ¶¶ 63-64. In her interrogatory answers, plaintiff states that "ZINN WANG a/k/a/ Zi Wang a/k/a John Doe supervised Plaintiff." Ke Interrog. Ans. at 10. However, asked for the "facts and circumstances" that "substantiate" the allegations of paragraph 40 of the Amended Complaint (characterizing Zi Wang as a supervisor), plaintiff instead *reproduces* paragraph 40 of the Amended Complaint, as follows: "Subject to and without waiving any objections, Plaintiff states that Defendant Zi Wang 'had the power to hire and fire employees of, supervised and controlled employee work schedules and conditions of employment at, determined employee rates and methods of payment at, and kept and maintained employee records for J R SUSHI 2 INC d/b/a JR Sushi 2.'" Ke Interrog. Ans. at 13-14 (quoting Am. Compl. ¶ 40). The interrogatory answers, like Ke's second affidavit, do not mention Xin Wang outside of the caption.

¶¶ 4-10. Troy attaches what appear to be attorney notes (some handwritten, mostly in Chinese, and some typed, mostly in English) mentioning both Xin Wang and Zi Wang. *Id.* Exs. 1-3 (Dkt. Nos. 140-1 through 140-3). However, he does not attest that plaintiff ever directed or authorized him to sue the Moving Defendants, nor that he ever told her plainly that she was doing so. Moreover, plaintiff did not make any corrections to her deposition transcript. *See* Ke Dep. Tr. at ECF page 112 (blank errata sheet). Nor did she submit any new declaration in opposition to the Moving Defendants' motions.

### B.    Procedural History

Plaintiff filed this action on August 6, 2019. The next day, the Hon. Paul A. Engelmayer, United States District Judge, referred it to me for general pretrial management. (Dkt. No. 5.) On February 12, 2020, plaintiff filed her Amended Complaint, which the Moving Defendants answered on March 13 and May 6, 2020. (Dkt. Nos. 49, 58.) On June 3, 2020, plaintiff filed a motion for conditional collective certification. (Dkt. No. 69.) Defendants opposed that motion and certain defendants, including Zi Wang, cross-moved for summary judgment. (Dkt. No. 74.)[6] On January 15, 2021, I granted plaintiff's motion for conditional certification of a collective limited to non-managerial, non-exempt employees at JR Sushi. (Dkt. No. 95.) On January 28, 2021, with the consent of the parties, I deemed the cross-motion for summary judgment withdrawn, without prejudice to renewal after discovery closed. (Dkt. No. 98.)

---

[6] In support of the cross-motion, Zi Wang submitted a declaration attesting (much as he does now) that he was a full-time college student until 2019; that he had no ownership interest in or management responsibilities for JR Sushi; that he did not supervise plaintiff or any other restaurant employees; and that his involvement with the restaurant was limited to "the occasions when I would go there to have meals and my father would ask me to help him out by performing some work at the JR [Sushi] Restaurant." Declaration of Zi Wang dated June 24, 2020 (Dk. No. 76-5) ¶¶ 4, 8-9.

Discovery was scheduled to close on November 25, 2020, but on December 17, 2020, plaintiff asked that it be re-opened for 90 days "for the purpose of taking the parties' depositions." (Dkt. No. 93.) I granted that request, extending the discovery period to February 25, 2021, but warned that "[n]o further extensions will be granted." (Dkt. No. 94.) During the 90-day extension, Troy Law did not take even one deposition. Instead, on February 25, 2021, plaintiff asked for an even longer extension, until June 6, 2021. (Dkt. No. 115.) I granted that application in part, giving plaintiff a month, through March 31, 2021, to take no more than two party depositions. *See* Order dated March 1, 2021 (March 1 Order) (Dkt. No. 118) at 2. Additionally, I ordered plaintiff to show cause why she should not be sanctioned pursuant to Fed. R. Civ. P. 16(f)(1)(C) "for her failure to conduct any party depositions during the period allotted for them or to seek a further extension until the day on which that period expired," *id.*, and directed that:

> Prior to making *any* further motion in this case, seeking *any* relief, for *any* reason . . . the moving party shall meet and confer with all other parties in good faith and in real time (*e.g.*, via telephone or videoconference; an exchange of emails or text messages will not suffice) in an effort to negotiate a result to which all parties can agree. A party receiving a request for such a meet-and-confer shall respond to it promptly and in good faith.

March 1 Order at 2-3 (emphases in the original).[7]

Defendants took plaintiff's deposition on the last day of the extended discovery period. Three days later, on April 3, 2021, defendants' counsel sent a joint letter (dated April 2, 2021) to plaintiff's counsel, by email, demanding that plaintiff dismiss the action as against Zi and Xin

---

[7] In response to the show-cause order, plaintiff's counsel explained, in substance, that Troy Law was too busy to conduct any discovery during the extended 90-day period requested for that purpose. (Dkt. No. 119.) On March 15, 2021, after analyzing counsel's failings, I determined that non-monetary sanctions were appropriate and ordered that "in the event any additional plaintiffs opt in to this action, Troy Law shall furnish each such plaintiff with a copy of this Order, both in English and in Chinese, and shall file a certificate attesting that it has done so (together with a copy of the Chinese translation) along with any consent-to-sue form filed on behalf of such plaintiff." Sanctions Order (Dkt. No. 122) at 5. No additional plaintiffs have opted in to this action.

Wang. Xue Decl. ¶ 9 & Ex. G (Dkt. No. 135-7); Troy Decl. ¶ 21. Receiving no reply for the next 13 days, defendants' counsel telephoned Troy Law on April 16, 2021, in an effort to meet and confer in compliance with the March 1 Order, but the receptionist "declined to take [a] message" and instead suggested that counsel send an email, which they did. Xue Decl. ¶ 10 & Ex. H (Dkt. No. 135-8). That same day, attorney Troy replied, by email, that he would "be willing to drop Zi Wang and Xin Wang with each party to bear its own costs pursuant to Rule 21." Xue Decl. ¶ 11 & Ex. I, at ECF page 2; Troy Decl. ¶ 21.

On April 23, 2021, defendants' counsel emailed Troy Law a proposed stipulation of dismissal with prejudice pursuant to Rule 41(a)(1)(A)(ii). Xue Decl. ¶ 12 & Ex. I, at ECF page 2; Troy Decl. ¶ 22 & Ex. 6. Four days later (after two reminder emails, *see* Xue Decl. Ex. I, at ECF page 1; *id.* Ex. J, at ECF page 2), Troy Law transmitted a modified version of the proposed stipulation in which the Rule 41(a)(1)(A)(ii) dismissal would be without prejudice. Xue Decl. ¶ 15 & Ex. I, at ECF page 1, *id.* Ex. J, at ECF page 1; Troy Decl. ¶ 23 & Ex. 7. Defendants' counsel objected, stating that if plaintiff refused to dismiss with prejudice they would seek summary judgment and sanctions on behalf of Zi and Xin Wang. Xue Decl. ¶¶ 16-17 & Ex. I, at ECF page 1. In the same email, defendants' counsel again requested to meet and confer, reminding their adversaries that the March 1 Order required it. *Id.* Troy Law ignored the request for a meet-and-confer. Instead, replying by email two days later, attorney Troy wrote, "[T]his is an FLSA case, and without a finding of fairness we may not stipulate to dismissal of a defendant with prejudice. But if you want to fight on this point, let's fight." Troy Decl. ¶ 24 & Ex. 8, at ECF page 1; Xue Decl. ¶ 19.

And fight they did. On April 30, 2021, the Moving Defendants sought a pre-motion conference in anticipation of moving for summary judgment and sanctions. (Dkt. Nos. 124, 125.)

In response, attorney Schweitzer explained that plaintiff refused to dismiss the Moving Defendants with prejudice because such a dismissal would require court approval under *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015), and the dismissal of Zi and Xin Wang for no consideration "would not pass muster under *Cheeks*." (Dkt. No. 126.) Plaintiff urged the Court to avail itself of "a simpler avenue of proceeding" and drop the Moving Defendants pursuant to Rule 21, without prejudice and with each party to bear its own costs. (*Id.*)

During a pre-motion conference before me on May 20, 2021, attorney Schweitzer argued again that plaintiff could not stipulate to a with-prejudice dismissal of the Moving Defendants without running afoul of *Cheeks*, and again invited the Court to drop the Moving Defendants under Rule 21, *sua sponte*, without motion practice and without prejudice. *See* Order dated May 24, 2021 (May 24 Order) (Dkt. No. 133) at 2. Defendants' counsel, for their part, offered to draft a "*Cheeks* review letter," *id.*, and the Court "indicated that [it] would be open to approving a voluntary dismissal with prejudice under *Cheeks*," Troy Decl. ¶ 29. When asked, at that point, why he continued to resist a with-prejudice dismissal, attorney Schweitzer stated that an adjudication on the merits "would expose my client to various forms of sanctions." May 24 Order at 2. When the Court pointed out that plaintiff would be in a worse position should the Moving Defendants make and win a summary judgment motion, attorney Schweitzer momentarily agreed to a dismissal with prejudice – only to change his mind immediately thereafter, telling the Court that he "did not appreciate being railroaded here." *Id.* Consequently, I authorized the Moving Defendants to move for summary judgment and plaintiff to cross-move for a dismissal without prejudice. *Id.* at 3.

On May 27, 2021, the Moving Defendants filed their joint motion, seeking summary judgment pursuant to Fed. R. Civ. P. 56 and sanctions pursuant to 28 U.S.C. § 1927 and the Court's inherent authority, together with the supporting papers described above and a memorandum of law

(Def. Mem.) (Dkt. No. 138). On June 10, 2021, plaintiff filed her opposition papers and cross-motion to drop the Moving Defendants pursuant to Rule 21, together with the supporting papers described above and a memorandum of law (Pl. Mem) (Dkt. No. 143). On June 17, 2021, the Moving Defendants filed their reply memorandum of law (Def. Reply) (Dkt. No. 145).

## II.   LEGAL STANDARDS

### A.   Summary Judgment

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Holt v. KMI-Cont'l, Inc.*, 95 F.3d 123, 128-29 (2d Cir. 1996). The moving party bears the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine dispute as to any material fact. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 323; *Koch v. Town of Brattleboro, Vermont*, 287 F.3d 162, 165 (2d Cir. 2002). In evaluating the record, the court must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d 76, 87 (2d Cir. 2008). "In applying this standard, the court should not weigh evidence or assess the credibility of witnesses. These determinations are within the sole province of the jury." *Frost v. New York City Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (quoting *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996)).

If the moving party meets its initial burden, the burden shifts to the non-moving party to establish a genuine dispute of material fact. *Celotex,* 477 U.S. at 322; *Beard v. Banks*, 548 U.S. 521, 529 (2006); *Santos v. Murdock*, 243 F.3d 681, 683 (2d Cir. 2001). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). To defeat summary judgment, she must present specific, admissible evidence in support of her contention that there is a genuine dispute as to the material facts. *Celotex,* 477 U.S. at 324; *see also Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (the nonmoving party must offer "some hard evidence showing that its version of the events is not wholly fanciful") (quoting *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998)). The evidence must be sufficient to permit a reasonable jury to return a verdict in the non-moving party's favor. *Anderson,* 477 U.S. at 248; *see also Nick's Garage, Inc. v. Progressive Casualty Ins. Co.*, 875 F.3d 107, 113 (2d Cir. 2017) ("A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.") (internal quotation marks omitted). Thus, "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996).

### B.    Local Civil Rule 56.1

In this District, the moving party must submit a "short and concise statement, in numbered paragraphs," of the material facts that it contends to be undisputed. Local Civ. R. 56.1(a). The non-moving party must then respond in kind, with numbered paragraphs that correspond "to each numbered paragraph in the statement of the moving party." Local Civ. R. 56.1(b). To the extent not "specifically controverted" by the non-moving party, the statement of material facts submitted by the moving party may be "deemed to be admitted for purposes of the motion." Local Civ. R. 56.1(c); *see also Giannullo*, 322 F.3d at 140. Each statement asserting, or controverting, a statement of material fact "must be followed by citation to evidence which would be admissible, as required by Fed. R. Civ. P. 56(c)." Local Civ. R. 56.1(d).

### C.        The FLSA and the NYLL

The FLSA establishes minimum wage and overtime compensation requirements binding on "employers" nationwide, 29 U.S.C. §§ 206, 207, and makes "employer[s]" civilly liable to wronged employees for unpaid minimum wages, unpaid overtime compensation, liquidated damages, and reasonable attorneys' fees, as well as costs. 29 U.S.C. § 216(b). Similarly, under the NYLL, employees can sue their "employers" for unpaid minimum wages, unpaid overtime and spread-of-hours compensation, recordkeeping penalties, liquidated damages, attorneys' fees, and costs, among other things. NYLL §§ 190 *et seq.*

The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). In assessing whether an individual qualifies as an "employer" under the statute, the Supreme Court has admonished that courts consider the "economic reality" of the employer-employee relationship. *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961); *see also Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) ("[T]he overarching concern is whether the alleged employer possessed the power to control the workers in question."). To evaluate the "economic reality" of an employer-employee relationship, the Second Circuit has traditionally considered various indicia of "formal" control, including whether the alleged employer: "(1) had the power to hire and fire the employee[], (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 66-67 (2d Cir. 2003) (quoting *Carter v. Dutchess Comm. College*, 735 F.2d 8, 12 (2d Cir. 1984)). However, although the four *Carter* factors "can be *sufficient* to establish employ[ment] status," they are not "*necessary* to establish an employment relationship." *Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 143 (2d Cir. 2008) (emphases and alteration in the original). Relying on language drawn from *Rutherford v. Food*

14

*Corp. v. McComb*, 331 U.S. 722, 724-25 (1947), the Second Circuit in *Zheng* articulated a six-part

"functional" test for determining whether a defendant is an employer or a joint employer of the

plaintiffs, namely:

> (1) whether [the defendant's] premises and equipment were used for the plaintiffs' work; (2) whether the [defendant] had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line-job that was integral to [the defendant's] process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which the [defendant] or [its] agents supervised plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominantly for [the defendant].

*Barfield*, 537 F.3d at 143 (quoting *Zheng*, 355 F.3d at 72) (additional alterations added).

Neither the *Carter* factors nor the *Zheng* factors impose a "rigid rule for the identification

of an FLSA employer." *Irizarry v. Catsimatidis*, 722 F.3d 99, 105 (2d Cir. 2013) (quoting *Barfield*,

537 F.3d at 143). Rather, they offer a "nonexclusive and overlapping set of factors to ensure that

the economic realities test mandated by the Supreme Court is sufficiently comprehensive and

flexible to give proper effect to the broad language of the FLSA." *Id.* (internal quotation marks

omitted). Ultimately, the Second Circuit "treat[s] employment for FLSA purposes as a flexible

concept to be determined on a case-by-case basis by review of the totality of the circumstances."

*Barfield*, 537 F.3d at 141-42.

The definition of "employer" under the NYLL is "similarly expansive." *Chichinadze v. BG*

*Bar Inc.*, 517 F. Supp. 3d 240, 255 (S.D.N.Y. 2021) (quoting *Doo Nam Yang v. ACBL Corp.*, 427

F. Supp. 2d 327, 342 (S.D.N.Y. 2005)). Although neither the Second Circuit nor the New York

Court of Appeals has spoken on the issue, "district courts in this Circuit have consistently

interpreted the definition of 'employer' under the New York Labor Law coextensively with the

definition used by the FLSA." *Inclan v. New York Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 511

(S.D.N.Y. 2015) (quoting *Ho v. Sim Enters. Inc.*, 2014 WL 1998237, at *10 (S.D.N.Y. May 14,

2014)); *see also Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 335 n.13 (S.D.N.Y. 2010) (FLSA and NYLL "employer" definitions are treated "coextensively").

### E.     28 U.S.C. § 1927 and the Court's Inherent Authority

Under 28 U.S.C. § 1927, "'[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.'" *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 79 (2d Cir. 2000) (quoting 28 U.S.C. § 1927) (alterations in the original). The federal courts also maintain the "inherent power" to impose sanctions on parties and attorneys alike. *United States v. Seltzer*, 227 F.3d 36, 39 (2d Cir. 2000); *see also Ransmeier v. Mariani*, 718 F.3d 64, 68 (2d Cir. 2013) (noting that "a federal court . . . may exercise its inherent power to sanction a party or an attorney who has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons'") (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991)). Ordinarily, however, where the misconduct conduct at issue "could be adequately sanctioned" under the Federal Rules of Civil Procedure or a specific statute (such as § 1927), the court "should rely on the Rules rather than the inherent power." *Chambers*, 501 U.S. at 50.

To impose sanctions against an attorney under either § 1927 or its inherent authority, the court must find that "the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986); *George v. Pro. Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 437-38 (S.D.N.Y. 2016). Thus, the order imposing sanctions, whether premised on § 1927 or the court's inherent authority, "must be supported by a finding of bad faith." *Id.* This standard is met if an attorney becomes "aware of the meritless nature of [his client's] claims," yet continues to pursue the litigation. *Baiul v. NBC Sports*, 708 Fed. App'x 710, 715 (2d Cir. 2017) (summary order); *see also Ji Li v. New Ichiro Sushi, Inc.*, 2020 WL 2094095, at *9-11 (S.D.N.Y.

Apr. 30, 2020) (sanctioning Troy Law pursuant to § 1927 for failing to withdraw its clients' FLSA claims against certain alleged employers when it became clear, through plaintiffs' testimony at trial, that those claims were "entirely meritless"), *aff'd sub nom. Li v. New Ichiro Sushi Inc.*, 2021 WL 6105491 (2d Cir. Dec. 21, 2021) (summary order).

There is an exception to the bad-faith requirement: If a district court relies on its inherent authority to sanction "misconduct by an attorney that involves that attorney's violation of a court order," or "other misconduct that is not undertaken for the client's benefit," the court "*need not* find bad faith before imposing a sanction." *Seltzer*, 227 F.3d at 42 (emphasis added); *see also, e.g.*, *Williams v. Lutheran Med. Ctr.*, 776 Fed. App'x 730, 731 (2d Cir. 2019) (no showing of bad faith needed where attorney misconduct at issue was not inherent to client's representation). Under this exception, the court may "police the conduct of attorneys as officers of the court," and "sanction attorneys for conduct not inherent to client representation, such as, violations of court orders or other conduct which interferes with the court's power to manage its calendar and the courtroom without a finding of bad faith." *Seltzer*, 227 F.3d at 42.

## III.   DISCUSSION

### A.   The Moving Defendants Are Entitled to Summary Judgment

The undisputed material facts as to the Moving Defendants lead to only one conclusion: neither Zi Wang nor Xin Wang was plaintiff's employer. I discuss each Moving Defendant in turn.

#### 1.   Zi Wang

During plaintiff's employment at JR Sushi, Zi Wang was a full-time college student and a part-time weekend waiter at JR Sushi, pitching in, at his father's direction, "if there's no one else on a Saturday." Zi Wang Decl. ¶ 3; Ke Dep. Tr. at 80. It is undisputed that he had no ownership interest in the restaurant; did not hire or fire plaintiff (or any other JR Sushi employee); did not determine plaintiff's rate or method of payment; and did not maintain her employment records.

Def. R. 56.1 Stmt. ¶¶ 2, 5, 10-13; Pl. R. 56.1 Stmt. ¶¶ 2, 5, 10-13. Thus, the parties are agreed that

three of the four *Carter* factors are not satisfied. *See Zheng*, 355 F.3d at 66-67 (quoting *Carter*,

735 F.2d at 12).

As to the remaining *Carter* factor – whether the alleged employer "supervised and

controlled employee work schedules or conditions of employment," *id.* at 67 – plaintiff *contends*

that there is a dispute, *see* Pl. 56.1 Stmt. ¶¶ 7-9, but offers no *evidence* to support her repeated but

wholly conclusory assertion that "Zi Wang supervised Yi Mei Ke, and supervised and controlled

work schedules and conditions of employment" at JR Sushi. *Id.* Instead, she relies on her pre-

deposition interrogatory answers, which are themselves worthless boilerplate,[8] and portions of her

deposition testimony, which provide no support whatsoever for her contention.[9]

---

[8] Interrogatory No. 16 asked plaintiff to identify the individuals responsible for, among other things, supervising her performance. In relevant part, she answered: "ZINN WANG a/k/a Zi Wang a/k/a John Doe supervised Plaintiff." Ke Interrog. Ans. at 10. Interrogatory No. 25 asked her to set forth the "facts and circumstances to substantiate" ¶ 40 of her Amended Complaint, which alleged that Zi Wang "had the power to hire and fire employees of, supervised and controlled employee work schedules and conditions of employment at, determined employee rates and methods of payment at, and kept and maintained employee records" for JR Sushi. In response, plaintiff did not identify a single fact or describe a single circumstance. Instead, she parroted back the language of her pleading: "Defendant Zi Wang 'had the power to hire and fire employees of, supervised and controlled employee work schedules and conditions of employment at, determined employee rates and methods of payment at, and kept and maintained employee records for J R SUSHI 2 INC d/b/a JR Sushi 2.'" Ke Interrog. Ans. at 14 (quoting Am. Compl. ¶ 40).

To be clear: these interrogatory answers fail to raise a genuine issue of disputed material fact not because they are "inconsistent" with plaintiff's later deposition testimony, *see* Pl. Mem. at 14-15 (arguing that courts should not attempt to resolve inconsistent testimony on summary judgment), but because they include only "conclusory statements," *Kulak*, 88 F.3d at 71, which "will not defeat summary judgment." *Id.*; *see also, e.g.*, *Livingston v. City of New York*, 2021 WL 4443126, at *29 (S.D.N.Y. Sept. 28, 2021) (granting summary judgment for defendants on hostile work environment claim after considering "only the specific comments identified by Plaintiff, rather than his sweeping assertions," such that he was subject to "belittling comments").

[9] To the contrary: on the cited pages of her deposition transcript, plaintiff testified that Kai Tuan Wang (her "boss") is "the only one" who set her work conditions, that "the boss would tell his son [Zi Wang] to come to work if there's no one else on a Saturday," and that she sometimes used Zi Wang as a messenger: "If there is something not working right in the restaurant, I would tell Zi

After construing the record in the light most favorable to plaintiff, I cannot find even a shred of specific, admissible evidence, *Celotex*, 477 U.S. at 324, to suggest that Zi Wang "supervised" plaintiff or "controlled" her work schedule or conditions of employment. Nor is there any evidence that plaintiff "worked exclusively or predominantly" for Zi Wang, *Zheng*, 355 F.3d at 72,[10] or was otherwise subject to his control, either formally or functionally. Since the "economic reality" is that defendant Zi Wang was not plaintiff's employer, he is entitled to summary judgment on her FLSA and NYLL claims. *See Zheng*, 355 F.3d at 66-67; *Carter*, 735 F.2d at 12; *Inclan*, 95 F. Supp. 3d at 511; *Spicer*, 269 F.R.D. at 335 n.13.

### 2.    Xin Wang

The evidence concerning Xin Wang is, if anything, even more one-sided. She held down a full-time job as a schoolteacher throughout plaintiff's employment at JR Sushi. The parties are agreed that *none* of the four *Carter* factors, and *none* of the applicable *Zheng* factors, can be satisfied: Xin Wang had no ownership interest in the restaurant; did not hire or fire plaintiff (or any other JR Sushi employee); did not supervise plaintiff (or any other JR Sushi employee); did not control plaintiff's work schedule (or the schedule of any other JR Sushi employee); did not control plaintiff's conditions of employment (or those of any other JR Sushi employee); did not determine the rate and method of payment for plaintiff (or for any other JR Sushi employee); and did not maintain plaintiff's employment records (or those of any other JR Sushi employee). Def. R. 56.1 Stmt. ¶¶ 43, 46-59; Pl. R. 56.1 Stmt. ¶¶ 43, 46-59. Moreover, Xin Wang came to the restaurant rarely – plaintiff testified that she saw her boss's daughter "[m]aybe three times," Ke

---

Wang to tell his father." Ke Dep. Tr. at 80-81; *see also id.* at 105 (plaintiff asked Zi Wang "to get the boss").

[10] The other *Zheng* factors either do not apply to an individual defendant or overlap with the *Carter* factors.

Dep. Tr. at 83 – and only when "the boss or the boss' wife felt there was a need to adjust the prices," at which point they "would tell their daughter to come and make the adjustments" on the computer, *id.* at 59, which took her no more than two hours. *Id.* at 83-84.

As against these undisputed facts, plaintiff offers one entirely fanciful conclusion (that "Xin Wang was a manager at JR Sushi"), ungrounded in any record evidence; one misleading statement (that Xin Wang had "authority to change the prices of menu items"), which neglects to mention that she "chang[ed] the prices" only when directed to do so by her parents; and one wholly irrelevant fact (that Xin Wang "worked full-time at JR Sushi in the past") which is itself supported only by plaintiff's hearsay testimony that she "heard" it from an unnamed source. *See* Pl. 56.1 Stmt. ¶¶ 45, 48, 67; Ke Dep. Tr. at 59, 82. In short, the record is entirely devoid of any evidence suggesting that Xin Wang was plaintiff's employer – much less "hard evidence," *Jeffreys*, 426 F.3d at 554, sufficient for a reasonable juror to return a verdict in plaintiff's favor, as required to defeat summary judgment. *Anderson,* 477 U.S. at 248; *Nick's Garage*, 875 F.3d at 113.

Since both Moving Defendants are entitled to summary judgment under the FLSA and the NYLL, all of plaintiff's claims against them should be dismissed, on the merits, and plaintiff's cross-motion to drop the Moving Defendants as parties without prejudice pursuant to Rule 21 should be denied as moot.

### B.    The Moving Defendants are Entitled to Sanctions Pursuant to § 1927

The Moving Defendants seek sanctions against plaintiff's counsel – not plaintiff herself – pursuant to 28 U.S.C. § 1927 and the Court's inherent authority. They argue that Troy Law unreasonably, vexatiously, and repeatedly multiplied these proceedings by: (1) refusing to dismiss plaintiff's claims against the Moving Defendants with prejudice in light of her deposition testimony (even after agreeing that her claims against these defendants should be dropped); (2) failing to communicate to plaintiff "the contents of [her] pleadings, affidavits, and interrogatory responses,"

which in the Moving Defendants' view led to "the wrong parties being sued and unnecessary motion practice"; (3) Troy Law's prior "unreasonable delay in conducting discovery"; and (4) counsel's refusal to "promptly respond to multiple requests by [the] Moving Defendants to meet-and-confer," as required by the March 1 Order. Def. Mem. at 1-2. As a sanction, the Moving Defendants request reimbursement of their legal fees and costs incurred in defending this action from its inception. *Id.* at 2, 22.

In response, Troy Law characterizes the conduct at issue here as its "refusal to settle [plaintiff's] claims with prejudice against Zi Wang and Xin Wang, for no consideration, following her deposition where for the first time and in contradiction to all her previous statements to both current and prior counsel she said she did not want to be suing them and didn't think she had the right." Pl. Mem. at 16.[11] It then argues that a party has the "absolute right to refuse to settle," *see id.* at 17; points out that a settlement involving a with-prejudice dismissal would require court approval under *Cheeks*, *id.* at 17.; and offers two reasons for its refusal to "settle" by stipulating to such a dismissal: (i) that judicial approval would likely be withheld, since no consideration was offered to plaintiff, *id.* at 17-18; and (ii) to protect plaintiff Ke from further "litigation by Zi Wang or Xin Wang." *Id.* at 18. *See also* Troy Decl. ¶ 30 (explaining that, given the Moving Defendants' past litigation conduct and "confrontational posture in negotiations after [plaintiff's] deposition," he feared that "agreeing to dismissal with prejudice would expose Plaintiff to a sanctions motion and so would neither be in Plaintiff's best interest [n]or save the [Court] time and resources on motion practice"). Further, Troy Law argues, the Moving Defendants' claim that his firm was

---

[11] Although Troy Law submitted a single memorandum of law – in plaintiff's name – in opposition to the Moving Defendants' motions and in support of the cross-motion, it is clear that this portion of the brief was submitted to advance the interests of the firm, not its client. In describing the arguments made in opposition to the Moving Defendants' sanctions motion, therefore, I ascribe them to Troy Law, not to plaintiff Ke.

operating in bad faith and against the client's wishes from the outset is based on "speculation and insinuation" as to the interaction between Ms. Ke and her counsel during the early stages of this case. Pl. Mem. at 16. Since the present controversy was prompted by plaintiff's "first-time about-face at the very tail-end of discovery," the firm contends, any sanction should be limited to "that portion of the litigation which succeeded [the deposition], not which preceded it." *Id.*

### 1.    Pre-Deposition Misconduct

I share the Moving Defendants' suspicion that Troy Law over-pled this case from the outset, with no colorable basis and no client authorization to sue any individual defendants other than "the boss and the boss's wife." Attorney Troy's declaration fails to quell that suspicion. I note, for example, that the firm's October 24, 2019 intake notes (consisting of a series of emails, mostly in English, from "troylaw@troypllc.com" to "troylaw@troypllc.com") identify Xin Wang simply as "daughter" and Zi Wang as "son." Troy Decl. Ex. 3, at ECF page 1. Nothing in those notes (which were neither authored by nor copied to plaintiff) suggests that the "daughter" or the "son" "had the power to hire and fire employees of, supervised and controlled employee work schedules and conditions of employment at, determined employee rates and methods of payment at, and kept and maintained employee records" for JR Sushi, as Troy Law alleged ("[u]pon the personal knowledge of Plaintiff") a few months later in what remains plaintiff's operative pleading, signed by attorney Troy. *See* Am. Compl. ¶¶ 30, 40. Nor do the intake notes explain Troy Law's claim that two other individuals, Yukwah Kwok Cheng and Henry Zhang (supposedly known to plaintiff as "uncle"), were also plaintiff's employers. *See id.* ¶¶ 24, 44.[12]

---

[12] At deposition, Ke testified that she did not know she had sued Cheng, whose name she appeared not to recognize, or Zhang, whom she described as "a waiter." Ke Dep. Tr. at 62-63, 67-70. Because neither of these defendants has appeared or answered, the viability of plaintiff's claims against them is not directly at issue on the present motion.

Ke's deposition testimony also raises questions as to whether Troy Law translated the full contents, or explained the purpose, of the various English-language documents that the firm asked her to sign.[13] Attorney Troy's declaration does nothing to answer these questions. Nor is there any post-deposition declaration from plaintiff that addresses them. I note as well that Troy Law has previously been sanctioned, or threatened with sanctions, for filing evidentiary materials on behalf of non-English speaking clients that were later contradicted by the clients' live testimony.[14]

However, before the Court sanctions an attorney under § 1927 or its inherent power for pressing meritless claims, it "must find clear evidence" not only that the "claims were entirely meritless" but also that the attorney knew or should have known that they lacked merit and thus "acted for improper purposes" in filing or pursuing them. *Revson*, 221 F.3d at 79. Here, as in *Ji Li*, 2020 WL 2094095, at *10, the evidence as to Troy Law's bad faith during the early stages of this action, though troubling, is insufficiently "clear," on the present record, to warrant sanctions.[15]

---

[13] For example, although plaintiff testified generally that "there was a translation" of the affidavit she submitted in support of her collective certification motion, Ke Dep. Tr. at 86, she was clearly unaware that she had made such a motion, and in fact testified that that she did not "have the right" to represent her co-workers. *Id.* at 91-92. Additionally, plaintiff denied any knowledge of the notice that her attorneys sent out to invite other employees to join this action. *Id.* at 92. Because Troy Law has never filed any consent-to-sue forms on behalf of additional plaintiffs, this Court need not determine, at present, the viability of the conditionally certified collective.

[14] *See, e.g.*, *Lin v. Quality Woods, Inc.*, 2021 WL 2343179, at *1 (E.D.N.Y. June 4, 2021) (ordering John Troy to show cause why he should not be sanctioned for pursuing FLSA case against a "bevy of parties that Troy alleged employed Plaintiff" when in fact "they never did," which was ultimately revealed when plaintiff testified under oath that he did not know many of the alleged employers), *report and recommendation adopted*, 2021 WL 4129151 (E.D.N.Y. Aug. 10, 2021); *Ji Li*, 2020 WL 2094095, at *9-11 (sanctioning Troy Law where multiple plaintiffs stated in their written direct testimony, prepared by their counsel, "that Jian Ping Chen "was the 'boss' or 'lady boss' at Ichiro Sushi on Second Avenue," but "completely contradicted" that assertion in their live testimony at the bench trial); *Jianjun Chen v. 2425 Broadway Chao Rest., LLC*, 331 F.R.D. 568, 570, 572-73 (S.D.N.Y. 2019) (sanctioning Troy Law for serving discovery responses "which cannot be reconciled with Plaintiff's prior deposition testimony").

[15] The gaps in the present record are due in part to attorney Schweitzer's invocation of the attorney-client privilege during plaintiff's deposition to prevent his client from directly addressing – for example – whether anyone explained the Amended Complaint to her, Ke Dep. Tr. at 51, and

Moreover, the Court has already sanctioned Troy Law for its unreasonable delay in conducting discovery. *See* Sanctions Order at 5. The Moving Defendants (who apparently took advantage of that delay to conduct the Ke deposition on March 31, 2021, long after the expiration of the initial fact discovery deadline) are not entitled to additional sanctions for the same misconduct. I therefore recommend, respectfully, that no new sanctions be assessed against Troy Law for its conduct prior to plaintiff's deposition.

### 2.      Post-Deposition Misconduct

Even if I assume that plaintiff initially agreed to sue Kai Tuan Wang's children – and then surprised her counsel by executing an "about-face at the very tail-end of discovery," as Troy Law now asserts, *see* Pl. Mem. at 16 – the firm's stubborn refusal to dismiss those claims on the merits, *after* plaintiff's deposition testimony made it clear that neither Zi nor Xin Wang had ever been her employer, was sanctionable. *See Baiul*, 708 Fed. App'x at 715 (affirming § 1927 sanctions where attorney refused to withdraw plaintiff's claims after becoming "aware" of their "meritless nature"); *Ji Li*, 2020 WL 2094095, at *9-11 (sanctioning Troy Law under § 1927 for failing to withdraw plaintiffs' FLSA claims against certain defendants in the face of the "Rule 50 motion" made by those defendants after plaintiffs' live testimony revealed that the claims against them were "entirely meritless"). Here, as in *Ji Li*, none of the explanations offered by Troy Law for its intransigence justifies the firm's conduct.

---

whether she authorized her counsel to sue Henry Zhang. *Id.* at 69. I note, however, that attorney Troy appears to have waived both the attorney-client privilege and the work product doctrine with respect to (i) communications between his firm and Ms. Ke regarding Zi and Xin Wang and (ii) Troy Law's decision to pursue them as defendants. *See* Troy Decl. ¶¶ 7, 19-20; Pl. Mem. at 16 (asserting, albeit without any direct evidentiary support, that plaintiff spent "years . . . telling her lawyers that Xin Wang and Zi Wang were her employers and that she wanted to sue them"). As an alternative to sanctioning Troy Law only for its conduct after the Ke deposition, therefore, the Court could conduct (or direct the assigned magistrate judge to conduct) an evidentiary hearing at which plaintiff Ke and her attorneys would be required to testify as to these matters.

First, the requested stipulation of dismissal with prejudice would not have been a "settlement" (any more than, for example, an agreed-to dismissal under Fed. R. Civ. P. 50(a) would be a "settlement").[16] Because the premise for the dismissal was plaintiff's failure of proof as to a foundational element of her claim – that the Moving Defendants were her "employers" – no settlement consideration was offered or received. Nor did the parties negotiate any other terms, provisions, obligations, or understandings. Thus, the Moving Defendants do not seek sanctions for plaintiff's "refusal to settle," Pl. Mem. at 16; instead, they seek compensation for being required to defend against plaintiff's claims even after they were revealed, by plaintiff's deposition testimony, to be "entirely meritless." *Ji Li*, 2020 WL 2094095, at *10-11.

Second, the parties' assumption that the dismissal requested by the Moving Defendants would require judicial approval under *Cheeks*, 796 F.3d at 206-07,[17] furnished no reason to balk

---

[16] Rule 50(a) "involves a determination by a judge that, based on the evidence presented, the plaintiff is not entitled to prevail against the defendant. That determination is made at trial and, if granted, entitles the prevailing party to costs." *Lapierre v. Exec. Indus., Inc.*, 117 F.R.D. 328, 329 (D. Conn. 1987). The standard applied on a Rule 50(a) motion for judgment as a matter of law is similar to the standard applied on a Rule 56 summary judgment motion: the court may grant the motion if a party "has been fully heard on an issue" and the court "finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1).

[17] The bright line that plaintiff's counsel attempts to draw between with-prejudice dismissals of FLSA claims (which in their view always require judicial review under *Cheeks*) and without-prejudice dismissals (which in their view never require such review) is not in fact quite so bright. Less than two weeks ago, in *Samake v. Thunder Lube, Inc.*, 2022 WL 244143 (2d Cir. Jan. 27, 2022), the Court of Appeals characterized the holding of *Cheeks* as follows: "[A]ny Fair Labor Standards Act ('FLSA') *settlement* must be reviewed by the district court for compliance with that Act before the parties may dismiss a case *with prejudice* by joint stipulation pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii)." *Id.* at *1 (emphases added). The Second Circuit then extended the requirement of judicial review to *settlements* effected through unilateral dismissals of FLSA claims *without prejudice* pursuant to Rule 41(a)(1)(A)(i). *Id.* at *5. At the same time, the *Samake* panel noted approvingly that the district court's preliminary inquiry, in the case before it, was whether "the parties had . . . reached any *settlement* that would necessitate review," *id.* at *1 (emphasis added), and explained that if there was no settlement, judicial review of the dismissal "may be quite limited – for instance, in this case, all that was needed was confirmation that no settlement existed." *Id.* at *5.

at executing the stipulation. As attorney Troy noted, the assigned magistrate judge "indicated that she would be open to approving a voluntary dismissal with prejudice under *Cheeks*," Troy Decl. ¶ 29, and the Moving Defendants' counsel offered to prepare the "*Cheeks* review letter" for that purpose. May 24 Order at 2. Counsel's professed uncertainty as to whether judicial approval could be obtained – because plaintiff would "receive no settlement payment at all," Pl. Mem. at 17 – is, on the facts of this case, entirely unconvincing.[18]

Third and finally, Troy Law's pious insistence that it refused to dismiss plaintiff's claims with prejudice to protect her from "further litigation by Zi Wang or Xin Wang," Pl. Mem. at 18, is plainly pretextual. The Moving Defendants have consistently stated, since they first filed their pre-motion conference letters, that, if required to move for summary judgment, they would seek sanctions only against plaintiff's counsel, who, in their view, were "advancing this action without Plaintiff's authorization and against her consent." Zi Wang Pre-Mtn. Ltr. (Dkt. No. 124) at 4; Xin Wang Pre-Mtn. Ltr. (Dkt. No. 125) at 4.[19] Moreover, the stipulation drafted by the Moving Defendants' counsel specified not only that plaintiff's claims against Zi and Xin Wang would be

---

[18] *Cabrera v. CBS Corp.*, 2019 WL 502131 (S.D.N.Y. Feb. 8, 2019), is entirely inapposite. In that case, I rejected a proposed settlement under which the plaintiffs – who according to their lawyer had "strong" FLSA retaliation claims – agreed to dismiss those claims, with prejudice, for no consideration other than the without-prejudice dismissal of CBS's counterclaims for fraud and breach of fiduciary duty. Pointing out that the consideration was "illusory," since CBS could refile the counterclaims "at will," I reasoned that such a settlement could not pass muster under *Cheeks* "unless I assume that there is no merit whatsoever to plaintiff's claims and thus no conceivable 'range of possible recovery.'" *Id.* at *5 (quoting *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012)). Since the *Cabrera* complaint had survived a motion to dismiss, and neither side had presented the Court with "even a shred of evidence going to the merits," *id.*, I could not so assume. Here, by contrast, discovery had been completed, revealing that plaintiff's claims against the Moving Defendants were in fact meritless and that they were entitled to a judgment, in their favor, on the merits. Additionally, plaintiff has never faced any counterclaims.

[19] Even if defense counsel had been less specific, the substance of plaintiff's deposition testimony, including her repeated statements that she did not intend to sue the Moving Defendants and did not know she had done so, would have made it obvious to Troy Law that the firm had more to fear from "further litigation" by the Moving Defendants than its client did.

dismissed "with prejudice," but also that each party would bear his or her "own costs, expenses, disbursements, *and attorneys' fees*," Troy Decl. Ex. 6 (emphasis added). Troy Law's refusal to sign that stipulation thus had little if anything to do with protecting its client – who would surely be better off pursuing a streamlined case against her actual employers than continuing to litigate with their children, who did not employ her and whom she did not wish to sue – and everything to do with protecting the firm itself.

Moreover, Troy Law got the law wrong. To the Moving Defendants, it mattered whether the stipulation of dismissal was with or without prejudice, because a dismissal with prejudice under Rule 41(a)(1)(A), whether by notice or by stipulation, "is subject to the general rules of preclusion – res judicata and collateral estoppel – and is effective not only on the immediate parties to the action but also on their privies." 9 Charles A. Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 2367, at 658 (4th ed. 2020). To Troy Law, however, it did not matter whether the stipulation was with or without prejudice. This is so because, after a voluntary dismissal pursuant to Rule 41(a)(1)(A) – with or without prejudice – "the Court retains discretion whether to impose sanctions under its inherent power or § 1927." *Crown Awards, Inc. v. Trophy Depot, Inc.*, 2017 WL 564885, at *14 (S.D.N.Y. Feb. 13, 2017).[20] Thus, for example, in *Bolivar v. Pocklington*, 975 F.2d 28, 31 (1st Cir. 1992), the court first held that even after the voluntary dismissal of plaintiff's claims by notice and without prejudice, "the district court possessed the requisite jurisdiction to impose sanctions under Rule 11 and section 1927." It then affirmed a post-dismissal sanctions award against plaintiff and his counsel. *Id.* Similarly, in *Macheska v. Thomson Learning*, 347 F. Supp.

---

[20] *See also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 412 (1990) (Stevens, J., concurring in part and dissenting in part) (because "the dismissal of an action pursuant to Rule 41(a)(1) does not deprive the district court of jurisdiction to resolve collateral issues," a court "may impose sanctions for contempt on a party who has voluntarily dismissed his complaint or impose sanctions under 28 U.S.C. § 1927 against lawyers who have multiplied court proceedings vexatiously").

2d 169 (M.D. Pa. 2004), the court first held that "Thomson is not barred from asserting a § 1927 motion subsequent to the stipulated voluntary dismissal filed in this case," and then sanctioned Macheska's counsel pursuant to § 1927 for pursuing her claims past the point at which he "clearly knew that his client's case lacked merit." *Id.* at 180-81.

In short, Troy Law's stubborn refusal to dismiss plaintiff's meritless claims against the Moving Defendants with prejudice harmed those defendants (by requiring them to move for summary judgment to obtain a dismissal on the merits); harmed their client, plaintiff Ke (by delaying the resolution of her colorable claims against other defendants while running up her counsel's fees and costs); and failed to protect the firm itself from "further litigation" by the Moving Defendants (in the form of their pending motion for summary judgment and sanctions). Moreover, by opposing summary judgment without any non-frivolous basis on which to do so, Troy Law has succeeded only in further "multipl[ying] the proceedings," 28 U.S.C. § 1927, thereby increasing its exposure to the accompanying sanctions motion. *See Baiul*, 708 Fed. App'x at 715 (affirming award of sanctions under § 1927 where counsel's "refusal to dismiss the action *with prejudice* . . . unduly multiplied the proceedings and caused unnecessary expense," including defendant's attorneys' fees incurred in making and winning a motion for judgment on the pleadings) (emphasis added).

Here, as in *Ji Li*, Troy Law "acted improperly – and, indeed, in bad faith," 2020 WL 2094095, at *10, by pursuing plaintiff's claims against the Moving Defendants after her own deposition testimony established that they were never her employers and therefore that her claims against them were "entirely meritless" *Id. See also Baiul*, 708 Fed. App'x at 715 (bad faith was adequately established by court's determination that counsel "was aware of the meritless nature of [plaintiff's] claims, yet continued to pursue litigation in New York anyway"); *Macheska*, 347 F.

Supp. 2d at 181 (awarding sanctions for defendant's costs and fees incurred after March 1, 2004, by which date plaintiff's counsel "clearly knew that his client's case lacked merit"). Consequently, the Moving Defendants' motion for sanctions should be granted pursuant to § 1927, and they should be awarded the "excess costs, expenses, and attorneys' fees" that they incurred as a result of the refusal of plaintiff's lawyers to dismiss her claims against them on the merits once those lawyers understood – as they must have, after the deposition – that those claims could not succeed.[21]

In *Ji Li*, the sanctions commenced when defendants' counsel "made a Rule 50 motion" at trial. 2020 WL 2094095, at *11. In this case, the Moving Defendants first attempted, appropriately, to obtain a stipulated dismissal. After Troy Law rebuffed their efforts by email (in violation of my recently-issued March 1 Order, which required the parties to meet and confer in "real time" and "good faith"), the Moving Defendants were obliged to submit pre-motion conference letters on April 30, 2021, attend a pre-motion conference on May 20, 2021, move for summary judgment, and oppose plaintiff's cross-motion. Under these circumstances, the "excess" costs, expenses, and attorneys' fees were those that the Moving Defendants reasonably incurred to prepare the pre-motion conference letters, attend the pre-motion conference, and undertake all motion practice thereafter.

---

[21] Because sanctions are available pursuant to § 1927, there is no need for the Court to rely on its inherent power to reach the same result. *See Chambers*, 501 U.S. at 50 (noting that a trial court must "exercise caution in invoking its inherent power," particularly when the conduct at issue "could be adequately sanctioned" under "one of the other sanctioning provisions"); *Ji Li*, 2020 WL 2094095, at *11 ("[B]ecause the Court concludes that [defendants] are entitled to § 1927 sanctions, it declines to decide whether [Troy Law] should also be sanctioned pursuant to its inherent powers.").

## IV.    CONCLUSION

For the reasons set forth above, I recommend, respectfully, that the Moving Defendants' motion for summary judgment and for sanctions (Dkt. No. 134) be GRANTED, to the extent set forth herein; that plaintiff's claims against the Moving Defendants be DISMISSED with prejudice; and that plaintiff's cross-motion to drop the Moving Defendants as parties without prejudice (Dkt. No. 139) be DENIED as moot. I further recommend that the sanction be imposed on John Troy and Aaron Schweitzer, jointly and severally, and that in order to quantify the sanction the Moving Defendants be directed to submit one or more declarations evidencing their recoverable fees and expenses, supported by properly authenticated copies of their attorneys' relevant time and expense records, including contemporaneous timesheets, as well as evidence supporting the reasonableness of counsel's rates.

Dated:  New York, New York
        February 7, 2022

**BARBARA MOSES**
**United States Magistrate Judge**

## <u>NOTICE OF PROCEDURE FOR FILING OF OBJECTIONS</u>
## <u>TO THIS REPORT AND RECOMMENDATION</u>

The parties shall have fourteen days from this date to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). *See also* Fed. R. Civ. P. 6(a) and (d). Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the Hon. Paul A. Engelmayer at 500 Pearl Street, New York, New York 10007, and to the chambers of the undersigned magistrate judge. Any request for an extension of time to file objections must be directed to Judge Engelmayer. **Failure to file timely objections will result in a waiver of such objections and will preclude appellate review**. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Frydman v. Experian Info. Sols., Inc.*, 743 Fed. App'x 486, 487 (2d Cir. 2018) (summary order); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).