UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| YI MEI KE, | | 19 Civ. 7332 (PAE) (BCM) |
| | Plaintiff, | |
| -v- | | OPINION & ORDER |
| J R SUSHI 2 INC, et al., | | |
| | Defendants. | |

PAUL A. ENGELMAYER, District Judge:

This is a Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") action alleging violations of minimum-wage, overtime, spread-of-hours, notice, and wage-statement provisions. Currently pending is a motion from defendants Zi and Xin Wang (the "Moving Defendants") for summary judgment and sanctions against plaintiff's counsel, Troy Law, PLLC, Dkts. 134 ("Def. Mot."), 138 ("Def. Mem."); and a cross-motion by plaintiff Yi Mei Ke to drop the Moving Defendants as parties from this lawsuit without prejudice, Dkts. 139 ("Pl. Mot."), 143 ("Pl. Opp."), 144 ("Pl. Mem."). The Moving Defendants argue, *inter alia*, that (1) the claims against them are baseless, as there is no evidence that they are proper defendants, and (2) that Troy Law should be sanctioned under 28 U.S.C. § 1927 for unreasonably and vexatiously multiplying the proceedings, or under the Court's inherent powers for refusing to dismiss them from the suit earlier. Def. Mem. at 1–2. Ke argues that the Moving Defendants should be dropped without prejudice; that, alternatively, summary judgment should not be granted because genuine issues of material fact preclude such; and that Troy Law should not be sanctioned. Pl. Mem. at 1.

Before the Court is the February 7, 2022 Report and Recommendation of the Honorable

Barbara C. Moses, United States Magistrate Judge, which recommends that the Court grant the

Moving Defendants' motion for summary judgment; deny Ke's cross-motion as moot; and

require Troy Law to pay the Moving Defendants' reasonable attorneys' fees and costs. Dkt. 146

(the "Report"). Ke has timely objected to the Report. Dkt. 147.

For the reasons that follow, the Court adopts the Report's recommendation in full. The

Court directs Moving Defendants' counsel to submit, within two weeks, declarations as to their

recoverable fees and expenses, contemporaneous time records, and a memorandum of law

supporting the reasonableness of their rates, for Judge Moses' review in imposing appropriate

monetary sanctions.

## I.   Background

### A.   Factual and Procedural Background

The Court adopts the Report's detailed account of the facts and procedural history, to

which no party objects. The following summary captures the limited facts necessary for an

assessment of the issues presented.

#### 1.   Pre-Discovery and Discovery

On August 6, 2019, Ke, a kitchen helper and cook, filed a complaint against J R Sushi 2

Inc. ("JR Sushi"), Yukwah Kwok Cheng, Kai Tuan Wang, Xin Wang, Jane Doe, and John Doe,

bringing FLSA and NYLL claims. Dkt. 1. At that point, she was represented solely by attorney

John S. Yong. *See id.* at 16. On October 1, 2019, attorneys John Troy and Aaron B. Schweitzer

of Troy Law, Ke's current counsel, appeared. Dkts. 16–17.

On February 12, 2020, Ke filed the first amended complaint, which added defendants

Famous Sichuan New York Inc., Rui Yang (a/k/a Jane Doe), Zinn Wang (a/k/a Zi Wang and

John Doe), and Henry Zhang. Dkt. 31. Yang, Kai Tuan Wang, Xin Wang, and Zi Wang—four

of the six individual defendants, and the four who have appeared in this action—are a family. Yang owns JR Sushi; Kai Tuan Wang, her husband, is the restaurant's general on-site manager; and Xin and Zi Wang (the Moving Defendants) are their children. Report at 1. The Moving Defendants have argued that they were never owners, managers, or employers at JR Sushi. Throughout Ke's employment, Zi Wang was a full-time college student; in the same time period, Xin Wang was a schoolteacher. *Id.* at 1–2.

On January 15, 2021, Judge Moses granted Ke's motion for conditional collective certification. Dkt. 95. On February 9, 2021, the Court affirmed that certification. Dkt. 108.[1] On March 1, 2021, after granting a discovery extension, Dkt. 94, and receiving another application to extend discovery by more than three months, Dkt. 115, which defendants had opposed, Dkts. 116–17, Judge Moses issued an order, Dkt. 118 (the "March 1 Order"). It (1) extended fact discovery for 30 days so that Ke could take two party depositions; (2) directed Ke to show cause why she should not be sanctioned for failure to conduct any party depositions or seek an extension until the expiration of fact discovery; and (3) directed all parties to meet and confer with all other parties "[p]rior to making *any* further motion in this case, seeking *any* relief, for *any* reason," in real time, and to "*certify* that the required meet-and-confer took place and . . . *specifically describe* all compromise offers made, as well as the reason(s) why such offers were not acceptable," in any future motion. *Id.* at 2–3 (emphases in original).

### 2.     The Instant Motions

On April 3, 2021, three days after defendants took Ke's deposition, Moving Defendants' counsel sent a letter, via email, to Troy Law, arguing that the action should be dismissed as against them. Report at 9–10. That was because, as the Report explains, at Ke's deposition, she

---

[1] No additional plaintiffs have opted into this suit. *See* Report at 9 n.7.

testified that it was Kai Tuan Wang, and not either of his children, "who hired her, supervised her, paid her wages, decided whether to give her a raise, and kept her employment records." *Id.* at 2 (citing Dkt. 135-6 ("Ke Tr.") at 33–36, 64, 79–80). Ke saw Zi Wang occasionally when he came in, at his father's direction, to work a weekend shift. And she saw Xin Wang perhaps three times, in total, between January 6, 2017, and August 10, 2019, when her parents wanted to adjust the restaurant's menu prices and enlisted her for that task. *Id.* at 2, 3 (citing Ke Tr. at 59, 83). Ke further testified that she did not know that she had sued the Moving Defendants; that she thought she was only suing Yang and Kai Tuan Wang; that she had "no right to sue Zi Wang" and "no reason whatsoever to sue Xin Wang." *Id.* at 2 (quoting Ke Tr. at 81, 82, 84); *see id.* at 6 (noting that Ke said "at least seven times, in total . . . that she was 'only' suing 'the boss and the boss' wife'").[2]

On April 16, 2021, Moving Defendants' counsel, not having received a response to their letter seeking to dismiss the Moving Defendants, called Troy Law in "an effort to meet and confer in compliance with the March 1 Order." *Id.* at 10. Unable to reach Troy Law counsel via telephone, Moving Defendants' counsel was directed to send another email, which counsel did. *Id.* That day, attorney Troy replied, via email, with an offer to drop the Moving Defendants without prejudice. *Id.* On April 23, 2021, Moving Defendants' counsel emailed Troy Law a proposed stipulation of dismissal *with* prejudice. *Id.* Four days later, and after two follow-ups by defense counsel, Troy Law responded with a proposed stipulation of dismissal, again *without* prejudice. *Id.* Defense counsel replied, telling Troy Law that if Ke refused to dismiss the action

---

[2] Judge Moses adds that attorney Troy "does not attest that [Ke] ever directed or authorized him to sue the Moving Defendants, nor that he ever told her plainly that she was doing so," and that Ke did not make any corrections to her deposition transcript or submit a declaration in opposition to the pending motions. *Id.* at 8.

against the Moving Defendants with prejudice, they would seek summary judgment and sanctions, and again requested a meet-and-confer per the March 1 Order. *Id.* As the Report explains, "Troy Law ignored the request for a meet-and-confer." *Id.* at 10.  Attorney Troy instead responded that "without a finding of fairness we may not stipulate to dismissal of a defendant with prejudice" because Ke had made claims under the FLSA, *see Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015).  Troy further countered, "if you want to fight on this point, let's fight."  Report at 10.

On May 20, 2021, at a pre-motion conference before Judge Moses, the parties discussed the dismissal of the Moving Defendants.  Attorney Schweitzer, of Troy Law, "invited the Court to drop the Moving Defendants under Rule 21, *sua sponte*, without motion practice and without prejudice," but refused to accede to a dismissal with prejudice—which Judge Moses indicated she would consider under *Cheeks*—arguing that such would expose Ke to sanctions.  Report at 10–11.  Schweitzer then apparently "momentarily agreed" to such a dismissal when Judge Moses observed that a successful summary judgment motion on the point would worsen his client's position, but then reversed course, and told Judge Moses that he "did not appreciate being railroaded here." *Id.* at 11.  Judge Moses thus permitted the Moving Defendants to move for summary judgment and Ke to cross-move for a dismissal without prejudice. *Id.*

On May 27, 2021, the Moving Defendants filed motions for summary judgment and sanctions, supporting declarations, and a memorandum of law.  Dkts. 134–38.  They argued that neither Moving Defendant had been Ke's employer, making summary judgment warranted for them on all claims, and that Troy Law should be sanctioned for (1) refusing to drop these claims; (2) failing to communicate adequately with their client, Ke, about the contents of her pleadings; (3) unreasonable delays in conducting discovery; and (4) refusing to meet and confer as required

by the March 1 order.  Def. Mem. at 1–2; Report at 20–21.  On June 10, 2021, Ke filed a motion

to sever the Moving Defendants and an opposition to the Moving Defendants' motions,

supporting declarations, and memoranda of law.  Dkts. 139–144.  The memoranda argued that

the Moving Defendants should be dropped without prejudice; that summary judgment should not

be granted because there were genuine issues of material fact as to their employer status; and that

Troy Law should not be sanctioned.  Pl. Mem. at 1; Pl. Opp. at 1.  On June 17, 2021, the moving

Defendants filed a reply memorandum in support of their motions and in opposition to Ke's

motion to sever.  Dkt. 145.

On February 7, 2022, Judge Moses issued the Report, recommending that the Court grant

the Moving Defendants' motions for summary judgment; deny Ke's motion to sever as moot;

and award sanctions against Troy Law.  On February 22, 2022, Ke filed objections to the Report.

Dkt. 147 ("Objections").  On March 8, 2022, the Moving Defendants filed a response to Ke's

objections.  Dkt. 148 ("Opp.").

**B.**      **The Report and Recommendation**

      **1.**      **Summary Judgment**

Judge Moses recommended finding that the Moving Defendants are entitled to summary

judgment, because, on the undisputed material facts, "neither Zi Wang nor Xin Wang was [Ke's]

employer."  Report at 17.  Accordingly, they could not be held liable under the FLSA or NYLL.

The Court here reviews her recommendation as to each Moving Defendant in turn.

      *a.*      *Zi Wang*

Judge Moses' thorough review of the uncontested evidence found that, throughout Ke's

employment, Zi Wang had been a college student who picked up occasional weekend shifts at JR

Sushi at his father's direction.  *Id.*  He "had no ownership interest in the restaurant; did not hire

or fire [Ke] (or any other JR Sushi employee); did not determine [Ke's] rate or method of payment; and did not maintain her employment records." *Id.*

Ke raised one argument to the contrary. Namely, she asserted in her 56.1 statement that Zi Wang had supervised her. *See* Dkt. 141 ¶¶ 7–9. However, Judge Moses found that Ke there "relies on her pre-deposition interrogatory answers, which are themselves worthless boilerplate, and portions of her deposition testimony, which provide no support whatsoever for her contention." Report at 18 (footnotes omitted). Accordingly, despite a searching review, Judge Moses failed to find "even a shred of specific, admissible evidence" to show that Zi Wang was a proper defendant. *Id.* at 19.

> b.   *Xin Wang*

Judge Moses found the evidence to be "if anything, even more one-sided" in Xin Wang's favor. On her review of the undisputed material evidence, Judge Moses explained that Xin Wang

> had no ownership interest in the restaurant; did not hire or fire [Ke] (or any other JR Sushi employee); did not supervise [Ke] (or any other JR Sushi employee); did not control [Ke's] work schedule (or the schedule of any other JR Sushi employee); did not determine the rate and method of pay for [Ke] (or for any other JR Sushi employee); and did not maintain [Ke's] employment records (or those of any other JR Sushi employee).

Report at 19. Ke testified that she saw Xin Wang perhaps three times during her approximately two-and-a-half years of employment. *See id.* at 3, 19–20. Those times were occasions when Xin Wang came in to help her parents adjust the prices for the restaurant—an errand that took her no more than two hours. *Id.* at 20.

In the face of the Moving Defendants' considerable evidence to the contrary, Judge Moses found Ke's argument—consisting of "one entirely fanciful conclusion," "one misleading statement," and "one wholly irrelevant fact"—to fall well short of creating a genuine dispute of

material fact. *Id.* First, although Ke claimed that Xin Wang was a manager, she did not cite any record evidence supporting that claim. *Id.* Second, although Ke asserted that Xin Wang had the authority to change the prices of menu items, she ignored that Xin Wang had done so only when directed by her parents. *Id.* Finally, although Ke asserted that Xin Wang had been a full-time worker at JR Sushi in the past, that statement—supported by Ke's hearsay testimony citing an unnamed source—failed to show that Xin Wang was such at any time relevant here. *Id.*

Failing to find any record evidence on which a reasonable juror could return a verdict in Ke's favor and against Zi and Xin Wang, Judge Moses recommended granting the Moving Defendants' summary judgment motion and dismissing the claims against them with prejudice, and denying Ke's cross-motion to drop them as parties without prejudice as moot. *Id.*

### 2.   Sanctions

Judge Moses recommended awarding sanctions against Troy Law for the firm's conduct after Ke's deposition, but not against Ke, or for Troy Law's pre-deposition conduct. Although she noted that she "share[d] the Moving Defendants' suspicion that Troy Law over-pled this case from the outset, with no colorable basis and no client authorization to sue" either Moving Defendant, she found the evidence as to Troy Law's bad faith prior to Ke's deposition to be "troubling" but "insufficiently clear" to merit sanctions. Report at 22–23 (internal quotation marks omitted).[3] She also noted that she had already sanctioned Troy Law for its discovery delays. *Id.* at 24. On the other hand, she found that "the firm's stubborn refusal" to dismiss the claims against the Moving Defendants, even after Ke's testimony, which had plainly shown that

---

[3] Judge Moses suggested as an alternative to sanctioning Troy Law only for its conduct after the Ke deposition that the Court or she conduct an evidentiary hearing at which Ke and her attorneys would be required to testify as to these matters. *Id.* at 23–24 n.15.

neither Moving Defendant had ever been her employer and that Ke did not even know that she had sued them, was sanctionable. *Id.*

Judge Moses found unavailing each of Troy Law's explanations for its obdurateness. First, despite Troy Law's assertion to the contrary, the Moving Defendants were not seeking sanctions for Troy Law's failure to settle. Rather, they were seeking fees for being forced to defend against meritless claims. *Id.* at 25. Second, although Troy Law argued that *Cheeks* would prevent the dismissal of the Moving Defendants with prejudice, the Moving Defendants' counsel had offered to prepare a *Cheeks* submission, and Judge Moses indicated she would be open to approving such a submission. As a result, such a claim was "entirely unconvincing." *Id.* at 26. Third, Judge Moses noted "Troy Law's pious insistence" that it was protecting Ke from further litigation by either Moving Defendant. She termed that argument "plainly pretextual," because the Moving Defendants "consistently stated . . . that, if required to move for summary judgment, they would seek sanctions only against plaintiff's counsel[.]" *Id.* Moreover, the stipulation drafted by the Moving Defendants' counsel provided for each party to bear their own costs and fees. *Id.* at 26–27.[4]

In sum, as Judge Moses found, "Troy Law's stubborn refusal" to dismiss Ke's meritless claims "harmed those defendants . . .[,] harmed [Troy Law's] client . . .[,] and failed to protect the firm itself from further litigation by the moving Defendants," and "succeeded only in further multiplying the proceedings, thereby increasing its exposure to the accompanying sanctions

---

[4] Judge Moses also observed that after a voluntary dismissal, whether it is with or without prejudice, the Court retains discretion to impose sanctions. *Id.* at 27.

motion." *Id.* at 28 (cleaned up).  Moving Defendants were therefore entitled to sanctions under

28 U.S.C. § 1927.[5]

## II.    Discussion

The Court first reviews the standards governing review of a report and recommendation;

summary judgment; and sanctions under 28 U.S.C. § 1927.  It then reviews Ke and Troy Law's

objections.  Finding them unavailing, the Court adopts the Report in full.

### A.    Applicable Legal Standards

#### 1.    Report and Recommendation

In reviewing a Report and Recommendation, a district court "may accept, reject, or

modify, in whole or in part, the findings or recommendations made by the magistrate judge."

28 U.S.C. § 636(b)(1)(C).  When specific objections are made, "[t]he district judge must

determine de novo any part of the magistrate judge's disposition that has been properly objected

to." Fed. R. Civ. P. 72(b)(3); *see United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997).

To accept those portions of the report to which no timely objection has been made, "a district

court need only satisfy itself that there is no clear error on the face of the record." *King v.*

*Greiner*, No. 02 Civ. 5810 (DLC), 2009 WL 2001439, at *4 (S.D.N.Y. July 8, 2009) (citing

*Wilds v. U.P.S.*, 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003)); *see also Edwards v. Fischer*, 414

F. Supp. 2d 342, 346–47 (S.D.N.Y. 2006).  To the extent that the objecting party makes only

conclusory or general objections, or simply reiterates the original arguments, the court will

review the Report and Recommendation strictly for clear error.  *See Dickerson v. Conway*, No.

08 Civ. 8024 (PAE), 2013 WL 3199094, at *1 (S.D.N.Y. June 25, 2013); *Kozlowski v.*

---

[5] Because Judge Moses recommended the award of sanctions under 28 U.S.C. § 1927, she found
no need to rely on the Court's inherent power.  *Id.* at 29 n.21.

*Hulihan*, Nos. 09 Civ. 7583, 10 Civ. 0812 (RJH), 2012 WL 383667, at *3 (S.D.N.Y. Feb. 7, 2012).

### 2.   Summary Judgment

To prevail on a motion for summary judgment, the movant must "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant bears the burden of demonstrating the absence of a question of material fact. In making this determination, the Court must view all facts "in the light most favorable" to the non-moving party. *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008). "Only disputes over facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### 3.   28 U.S.C. § 1927

Section 1927 authorizes courts to require an attorney "who so multiplies the proceedings in any case unreasonable and vexatiously . . . to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." "To impose sanctions under [§ 1927], 'a court must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith—that is, motivated by improper purposes such as harassment or delay.'" *Kim v. Kimm*, 884 F.3d 98, 106 (2d Cir. 2018) (quoting *Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000)). "A court may infer bad faith when a party undertakes frivolous actions that are 'completely without merit.'" *Huebner v. Midland Credit Mgmt., Inc.*, 897 F.3d 42, 55 (2d Cir. 2018) (quoting *In re 60 E. 80th St. Equities, Inc.*, 218 F.3d 109, 116 (2d Cir. 2000)).

### B.     Analysis

Ke and Troy Law object to the Report's recommendations that the Moving Defendants be granted summary judgment and that Troy Law be sanctioned under 28 U.S.C. § 1927. Although the objections are largely conclusory or raise arguments already considered, in an excess of caution, the Court reviews the objections *de novo*.

#### 1.     Summary Judgment

Ke argues that there is a genuine issue of material fact as to the employer status of both Zi and Xin Wang, precluding summary judgment.

##### a.     *Employer status under the FLSA and NYLL*

The FLSA extends liability to any "employer" that violates its terms. *See* 29 U.S.C. § 216(b). It defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." *Id.* § 203(d). "An entity 'employs' an individual under the FLSA if it 'suffer[s] or permit[s]' that individual to work." *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 66 (2d Cir. 2003) (quoting 29 U.S.C. § 203(g)) (alterations in *Zheng*). In turn, "[a]n entity 'suffers or permits' an individual to work if, as a matter of 'economic reality,' the entity functions as the individual's employer." *Id.* (citing *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961)).

The Second Circuit treats employment under the FLSA "as a flexible concept to be determined on a case-by-case basis" by looking to the "'economic reality' of a particular employment situation." *Barfield v. N.Y.C. Health and Hosps. Corp.*, 537 F.3d 132, 141–42 (2d Cir. 2008). It has developed multiple tests to determine an employee's relationship to a putative employer.

The test set out in *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8 (2d Cir. 1984), "looks to whether a putative employer exercises 'formal control' over a worker." *Greenawalt v. AT & T*

*Mobility LLC*, 642 F. App'x 36, 37 (2d Cir. 2016) (summary order) (citing *Zheng*, 355 F.3d at 72). The *Carter* test defines employment more narrowly than the FLSA requires, such that satisfying the test is sufficient, but not necessary, to show joint employment. *Id. Carter*'s four-factor inquiry into formal control examines "whether the alleged employer (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." 735 F.2d at 12 (citation omitted).

In *Zheng*, the Second Circuit considered "whether an entity that lacked formal control over workers—as defined by the four *Carter* factors—could nevertheless be considered their employer based on its exercise of functional control." *Barfield*, 537 F.3d at 143. *Zheng* identified these six factors as governing whether plaintiffs (garment industry workers) were employees:

> (1) whether [the garment manufacturer]'s premises and equipment were used for the plaintiffs' work; (2) whether the Contractor Corporations had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line-job that was integral to [the garment manufacturer]'s process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which the [garment manufacturer] or [its] agents supervised plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominantly for [the garment manufacturer].

*Id.* (quoting *Zheng*, 355 F.3d at 72) (alterations in *Barfield*).

Importantly, "[n]one of the factors used in any of these cases" create a "rigid rule for the identification of a FLSA employer." *Irizarry v. Catsimatidis*, 722 F.3d 99, 105 (2d Cir. 2013) (internal quotation marks omitted). Rather, "they provide a nonexclusive and overlapping set of factors to ensure that the economic realities test . . . is sufficiently comprehensive and flexible to give proper effect to the broad language of the FLSA." *Id.* (cleaned up).

As for the NYLL, it defines "employer" as "any person . . . employing any individual in any occupation, industry, trade, business or service" or "any individual . . . acting as employer." N.Y. Lab. Law §§ 190(3), 651(6). The New York Court of Appeals has not resolved whether the tests for "employer" status are the same under the FLSA and NYLL. *See Irizarry*, 722 F.3d at 117. However, district courts in this Circuit "have interpreted the definition of 'employer' under the [NYLL] coextensively with the definition used by the FLSA." *Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 335 n.13 (S.D.N.Y. 2010) (quoting *Jiao v. Shi Ya Chen*, No. 03 Civ. 165 (DF), 2007 WL 4944767, at *9 n.12 (S.D.N.Y. Mar. 30, 2007)); *see also Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 940 (S.D.N.Y. 2013) ("The statutory standard for employer status under the NYLL is nearly identical to that of the FLSA."); *Sethi v. Narod*, 974 F. Supp. 2d 162, 188–89 (E.D.N.Y. 2013) (collecting cases). For purposes of this decision, and with no party having suggested otherwise, the Court treats the FLSA and NYLL definitions of "employer" as co-extensive.

      *b.*   ·  *Analysis*

Ke argues that genuine issues of material fact preclude summary judgment as to the employer status of both Zi and Xin Wang. She also makes two general objections relevant to this issue.

      i.    Zi Wang

As to Zi Wang, Ke cites her testimony that "the boss would tell [Zi Wang] to come to work if there's no one else on a Saturday"; that over the weekend, Zi Wang "would be one of the two persons coming to work"; and if something was not working in the restaurant Ke "would tell Zi Wang to tell his father." Objections at 3. Ke argues that the evidence that Zi Wang worked in

the restaurant "raise[s] a crucial issue[] regarding whether [he] ever enjoyed or exercised . . . 'functional control'" over the restaurant's employees. *Id.*

That argument is quite unpersuasive, as Judge Moses rightly recognized. The evidence to which Ke points to shows that Zi Wang was an occasional co-worker of Ke's. But it is utterly insufficient to support that Zi Wang was in a supervisory relationship to Ke. Indeed, Ke testified that Kai Tuan Wang, who *was* Ke's boss, similarly directed Zi Wang to come to work some weekends. And Ke routed her complaints to Zi Wang's father, rather than seeking resolution through Zi Wang himself. *See* Report at 18 n.9. Ke has not pointed to any evidence that Zi Wang ever had the power to hire or fire employees; supervised or controlled the schedules or conditions of employment; determined the rate and method of payment; or maintained any employment records. *See Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) (explaining that "the overarching concern is whether the alleged employer possessed the power to control the workers in question" and noting the economic reality test). Zi Wang attests, without contradiction, that he was never her employer or had any of the responsibilities of one. *See* Dkt. 136, ¶¶ 4–7. Nor is there any other evidence of an employer-employee relationship between Zi Wang and Ke. Ke's own testimony is to the contrary. *See* Report at 2. Overall, Ke does not point to any record evidence showing Zi Wang to have had any managerial authority or input, any supervisory power, or any involvement in Ke's employment. The evidence shows Zi Wang to have been nothing more than an occasional colleague.

     ii.  Xin Wang

Opposing entry of summary judgment, Ke relies on three aspects of her testimony: that (1) Xin Wang would come once every several months to the restaurant to adjust prices at the restaurant; (2) Xin Wang did not give Ke assignments, and (3) Ke would on occasion be told by

her boss—Xin Wang's father—to make a meal for Xin Wang when she visited the restaurant. These, Ke states, make it "questionable whether Xin Wang enjoyed any authority or discretion to change the prices" on the menu by herself. Objections at 4.

This evidence falls well short of giving rise to a genuine dispute of material fact about whether Xin Wang was an employer. Xin Wang attests, without refutation, that, like her brother, she has never had an ownership interest in the restaurant; she did not employ Ke, determine her rate of pay, work schedule, workload, or employment conditions; she did not maintain Ke's employment records; and she did not have any such responsibility for any JR Sushi employee. Dkt. 137, ¶¶ 6–9. Ke's testimony disturbs none of this. Ke in fact admits that she never received any assignments from Xin Wang. That Xin Wang would come in occasionally to assist her parents in a discrete task does not make her an employer. And that Ke's boss—who was Xin Wang's father—would occasionally direct Ke to make his daughter Xin Wang a meal does not make Xin Wang an employer.

Strikingly, Ke, when deposed, did not know that her counsel had sued Xin Wang, and testified that she did not believe Xin Wang was her employer. Report at 2. Even as to the task of adjusting menu prices, Ke's memorandum of law admits that it is "questionable" whether Xin Wang had "any authority or discretion" to do so as opposed to carrying out her parents' orders; In fact, Ke does not cite any evidence that Xin Wang had such authority or discretion. The assembled evidence thus falls way short of supporting a finding that she was an employer of Ke's.

### iii.    Other objections

Ke makes two general objections to the Report's recommendation that summary judgment be granted as to the Moving Defendants. Neither gains any traction.

First, as to both Moving Defendants, Ke asserts that because the restaurants sued were "family businesses . . . it is rather reasonable to infer that as the son and daughter of the boss and lady boss, Zi and Xin Wang were given some supervisory and administrative authority within the business." Objections at 4. For this proposition, she relies upon *Rosario v. Mis Hijos Deli Corp.*, No. 15 Civ. 6049 (LTS) (DCF), 2018 WL 4636822 (S.D.N.Y. Sept. 27, 2018). But that case is far afield. It involved three individual defendants, two of whom—Jose Palma ("Palma") and Leonida Collado—were the parents of the third, Junior Palma. *Id.* at *1. Palma argued that he was not an employer of the plaintiff because he lived in the Dominican Republic, did not control the individual business, and had given the business to Junior Palma. *Id.* at *9. The evidence, however, showed that Palma "(at least partially) supervised Plaintiff, exercised control over his wages, and prepared and/or distributed paychecks," including during the plaintiff's employment; that Palma got paid more than Junior Palma, who defendants argued was the actual owner and manager; and that a filing with the Division of Alcoholic Beverage Control stated that Palma "was the on-site manager and devoted 50 hours per week to Mis Hijos [the defendant business]." *Id.* That evidence, not the defendants' familial tie, gave rise to a genuine issue of material fact whether Palma was an employer. Critically, nowhere did the Court rely upon the defendants' familial relationship, as Ke misleadingly implies. Here, there is no evidence remotely comparable to that cited in *Rosario*.

Second, Ke faults the Moving Defendants for relying on her deposition testimony and purportedly discounting her earlier written discovery responses and affidavits. Objections at 5. Ke relies upon *Jin Dong Wang v. LW Rest. Inc.*, 81 F. Supp. 3d 241 (E.D.N.Y. 2015), in which the district court, noting allegedly contradictory statements by the plaintiffs, "decline[d] to disregard Plaintiffs' statements in *toto*." *Id.* at 258–60. But Ke does not point the Court to *any*

evidence from any source that would permit a finding in Ke's favor as to whether the Moving

Defendants were her employers. *See* Objections at 5. And to the extent Ke means to refer to her

interrogatories, Judge Moses has persuasively dissected and disposed of that argument. As

Judge Moses explained, Ke's interrogatory answers "fail to raise a genuine issue of disputed

material fact not because they are inconsistent with [Ke's] later deposition testimony but because

they include only conclusory statements, which will not defeat summary judgment." Report at

18 n.8 (cleaned up). Critically, Ke "did not identify a single fact or describe a single

circumstance" about her employment by Zi Wang; instead, "she parroted back the language of

her pleading." *Id.* This objection is thus also a non-starter.

Because no reasonable juror could infer that the Moving Defendants employed Ke, the

Court grants summary judgment to the Moving Defendants.

### 2. Sanctions

Troy Law also argues that it should not be sanctioned.[6] The Court understands the firm

to make four objections. First, it argues that "it is premature to abruptly jump into the conclusion

that . . . Ke's claims against moving defendants are entirely meritless and frivolous," because

there are genuine issues of material fact precluding summary judgment. Objections at 7.

Second, it argues that "information derived from earlier records and documents indicate

ambiguities and controversies regarding the roles of the moving defendants." *Id.* at 8. Third, it

argues that it has not exhibited bad faith, because it suggested dropping the Moving Defendants

under Rule 21, and because its claims were "a mere mistake," and, assertedly, not made for an

---

[6] Judge Moses recognized that Troy Law's brief opposing sanctions "was submitted to advance
the interests of the firm, not its client." Report at 21 n.11. The Court adopts the same approach
here. The sanctionable conduct here was entirely attributable to Troy Law, not to its client, Ke.
The Court accordingly evaluates only the law firm's conduct, and imposes sanctions only on the
law firm. Plaintiff Ke is not, directly or indirectly, to bear these sanctions.

improper purpose. *Id.* at 7–8. Finally, Troy Law argues that the Moving Defendants were the parties responsible for multiplying proceedings where "the parties were already on the verge of reaching agreement except the prejudice issue." *Id.* at 9.

These objections to Judge Moses' thoughtfully considered conclusion that sanctions are merited here all fail.

As to Troy Law's first argument, the Court has found Ke's claims against the Moving Defendants utterly meritless. There are no genuine issues of material fact precluding summary judgment. And there is nothing "premature" about reaching this conclusion with discovery having closed.

As to the second argument, although Judge Moses noted that there are fair questions raised by Troy Law's pre-deposition conduct, in particular regarding certain English-language documents that the firm filed, she ultimately did not recommend, and this Court will not impose, sanctions for such conduct. The documents to which Troy Law's second objection solely relate to the firm's pre-deposition conduct. Troy Law's defense of such conduct does not excuse or mitigate its post-deposition conduct.

Also unavailing is Troy Law's defense to Judge Moses' finding that it engaged in bad faith. Troy Law's defense is that it made a "mistake" in suing the Moving Defendants and thereafter offered to dismiss the Moving Defendants without prejudice. It blames the Moving Defendants for not accepting that offer and for multiplying proceedings. But Judge Moses did not recommend sanctioning Troy Law for its "mistake" in bringing suit, but for its conduct after the point at which it was obvious that the firm's claim against the Moving Defendants lacked any evidentiary support. It should have been obvious to Troy Law, including from the deposition of its own client, Ke, that the Moving Defendants were not proper defendants. Indeed, Ke admitted

19

that she had not meant to sue these defendants and that she did not believe there was a factual basis to sue them. Troy Law rightly agreed that dismissal was in order. But, presumably for litigation leverage over the surviving defendants who included relatives of the Moving Defendants, Troy Law truculently insisted on making the dismissal without prejudice, despite the absence of any basis to reserve the right to reinstate these baseless claims. This was utterly needless. And the firm's obstinacy in this point prolonged the case unnecessarily, as was made clear by multiple overtures from Moving Defendants' counsel seeking a dismissal with prejudice, and from a conference before Judge Moses. Report at 24–26. In light of this history, Troy Law's attempt to shift responsibility to the Moving Defendants—Troy Law describes the parties as "on the verge of reaching agreement" to correct its pleading "mistake," only to be thrown off course by Moving Defendants—is disingenuous, to say the least.

The Moving Defendants are accordingly entitled to sanctions against Troy Law notwithstanding the firm's offer to dismiss its baseless claims without prejudice. *See Baiul v. NBC Sports*, 708 F. App'x 710, 715 (2d Cir. 2017) (summary order) ("[Plaintiff's lawyer] argues that sanctions should not be imposed because he tried repeatedly to dismiss the case without prejudice. [His] attempts to dismiss the action were insufficient to overcome his vexatious conduct.").[7]

Sanctions are particularly apt here, given Troy Law's regrettable and unprofessional behavior throughout this lawsuit. As recounted by Judge Moses, its conduct has included failing to abide by Judge Moses' orders, being dilatory and unresponsive with opposing counsel, and

---

[7] As Judge Moses rightly explains, *see* Report at 27, a dismissal with prejudice is qualitatively different from one without prejudice. For the Moving Defendants, "[a] dismissal with prejudice has the effect of a final adjudication on the merits favorable to defendant[.]" *Samuels v. N. Telecom, Inc.*, 942 F.2d 834, 836 (2d Cir. 1991) (quoting *Nemaizer v. Baker*, 793 F.2d 58, 60 (2d Cir. 1986)).

instigating and perpetuating this needless phase of the litigation in the face of Judge Moses' wise

counsel to simply dismiss the claims against the Moving Defendants with prejudice. Viewed in

context, Troy Law's actions "require the conclusion that they must have been undertaken for

some improper purpose such as delay." *In re 60 E. 80th St. Equities, Inc.*, 218 F.3d at 115

(quoting *United States v. Int'l Bhd. of Teamsters*, 948 F.2d 1338, 1345 (2d Cir. 1991)). Troy

Law "persisted in alleging legally unfounded claims despite ample opportunity in this case to

withdraw them," including repeated warnings from opposing counsel and Judge Moses. That,

"combined with the [firm's] other conduct, satisfies the 'bad faith' requirement in § 1927." *See*

*Gollomp v. Spitzer*, 568 F.3d 355, 370–71 (2d Cir. 2009) (cleaned up) (sanctions under § 1927

warranted where defendants "promptly warned plaintiff's counsel that they intended to file a

Rule 11 motion," a magistrate judge "attempted to explain that" the claims were legally barred,

and plaintiff's counsel filed another complaint asserting them); *Ji Li v. New Ichiro Sushi, Inc.*,

No. 14 Civ. 10242 (AJN), 2020 WL 2094095, at *10–11 (S.D.N.Y. Apr. 30, 2020) (sanctions

warranted where bench trial adduced "ample evidence" that defendants were not employers of

plaintiffs, defense counsel made Rule 50 motion, and judge "implored" counsel to ensure he was

"comfortable proceeding as an officer of the Court with an obligation to be candid," but counsel

"nonetheless continued to press such claims"), *aff'd sub nom.*, No. 20-1783 Civ., 2021 WL

6105491 (2d Cir. Dec. 21, 2021);[8] *Prim v. Peatco Ltd. L.P.*, No. 90 Civ. 7272 (LAP), 1994 WL

570754, at *6 (S.D.N.Y. Oct. 17, 1994) (awarding § 1927 sanctions where "it was absolutely

---

[8] The revelation that there was no basis for a claim against the Moving Defendants became clear here during discovery and not after trial, as in *Ji Li*. But that distinction, which Troy Law emphasizes, *see* Objections at 8, is of no moment. The pertinent question is whether, following the point it which it became unavoidably clear that Ke's FLSA and NYLL claims against the Moving Defendants were unsustainable, the Troy Law firm prolonged the case by persisted in needless refusing to dismiss these claims without prejudice.

clear . . . that the plaintiff's claims had no merit"), *on reconsideration*, No. 90 Civ. 7272 (LAP),
1995 WL 447648 (S.D.N.Y. July 27, 1995); *cf. Accurate Grading Quality Assur., Inc. v. KGK
Jewelry, LLC*, No. 12 Civ. 1343 (KPF) (DCF), 2014 WL 3302303, at *5 (S.D.N.Y. July 7, 2014)
(where deposition testimony was "not as clear-cut as Defendant represents it to be" about the
knowledge of plaintiffs' principal that the claims were devoid of merit, sanctions were not
appropriate).

Accordingly, the Court awards sanctions, in an amount to be determined, as against Troy
Law for its post-deposition conduct.

## CONCLUSION

For the foregoing reasons, the Court grants the Moving Defendants' motion for summary
judgment; denies Ke's cross-motion as moot; and directs counsel for the Moving Defendants to
submit, within two weeks of this order, declarations about their recoverable fees and expenses,
contemporaneous time records, and a memorandum of law supporting the reasonableness of their
rates, for Judge Moses' review, along with any other materials she may specify.

This case remains under the extremely able general pretrial supervision of Judge Moses.
The Court expects Troy Law, henceforth, to be scrupulously compliant with all orders of Judge
Moses, and to aspire to the level of professionalism that courts in this District expect.

The Clerk of Court is respectfully directed to terminate the motions pending at dockets
134 and 139 and to terminate the Moving Defendants Xin Wang and Zi Wang from this action.

SO ORDERED.

_____
Paul A. Engelmayer
United States District Judge

Dated: March 28, 2022
New York, New York