```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```
YI MEI KE,

           Plaintiff,

   -against-

J R SUSHI 2 INC., et al.,

           Defendants.

19-CV-7332 (PAE) (BCM)

**MEMORANDUM AND ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

On March 28, 2022, the Hon. Paul A. Engelmayer, United States District Judge, granted the motion of defendants Zi Wang and Xin Wang (the Moving Defendants) for summary judgment and for monetary sanctions pursuant to 28 U.S.C. § 1927 against plaintiff's counsel, Troy Law PLLC (Troy Law), in an amount to be determined at a later date. *Ke v. J R Sushi 2 Inc.*, 2022 WL 912231 (S.D.N.Y. Mar. 28, 2022), *adopting Ke v. J R Sushi 2 Inc.*, 2022 WL 1496576, at *1 (S.D.N.Y. Feb. 7, 2022). The Moving Defendants have requested awards of fees and costs in the aggregate amount of $29,382.75. For the reasons that follow, Zi Wang, who was represented by Xue & Associates, P.C. (X&A), will be awarded $16,095.00, and Xin Wang, who was represented by the Law Office of Yi Lin (LOYL), will be awarded $10,057.50, for an aggregate award of $26,152.50.

**I.    BACKGROUND**

Plaintiff Yi Mei Ke worked as a kitchen helper and cook at the JR Sushi 2 restaurant (JR Sushi) in Manhattan. Am. Compl. (Dkt. 31) ¶ 65. She filed this action on August 6, 2019, alleging violations of the minimum wage, overtime, spread-of-hours, wage notice, and wage statement provisions of the Fair Labor Standards Act (FLSA) and the New York Labor Law (NYLL). In her Amended Complaint (Am. Compl.) (Dkt. 31), signed by John Troy and Aaron Schweitzer of Troy Law, plaintiff named eight defendants, including four members of the same family: Ruifeng Yang,

who owned JR Sushi; her husband Kai Tuan Wang, the "general on-site manager" of JR Sushi; their son Zi Wang; and their daughter Xin Wang. Am. Compl. ¶¶ 26-43. Plaintiff alleged that all four were "shareholders, directors, officers, and/or managers" of JR Sushi, and that all four were her employers and hence personally liable to her for damages. *Id.* ¶¶ 22, 24-31, 33-37, 39-41, 43-45, 47.

Zi Wang has consistently maintained, throughout this action, that he was never an owner or manager of JR Sushi; rather, during plaintiff's employment, he was a full-time college student. Similarly, Xin Wang has consistently maintained that she was never an owner or manager of the restaurant; rather, throughout plaintiff's employment, Xin Wang worked full-time as a schoolteacher. *See Ke*, 2022 WL 912231, at *1.

At her deposition on March 31, 2021, plaintiff Ke confirmed that neither of the Moving Defendants hired her, supervised her, paid her wages, kept her employment records, or otherwise engaged in conduct that might render them liable to her under the FLSA or the NYLL. *Ke*, 2022 WL 912231, at *2. "Ke saw Zi Wang occasionally when he came in, at his father's direction, to work a weekend shift. And she saw Xin Wang perhaps three times, in total, between January 6, 2017, and August 10, 2019, when her parents wanted to adjust the restaurant's menu prices and enlisted her for that task." *Id.* Further, Ke testified, clearly and repeatedly, "that she did not know that she had sued the Moving Defendants; that she thought she was only suing [their parents]; [and] that she had 'no right to sue Zi Wang' and 'no reason whatsoever to sue Xin Wang.'" *Id.* (citations omitted). During her deposition, Ke repeated – seven times – that as far as she knew she was only suing Ruifeng Yang and Kai Tuan Wang. *Id.*

Three days after the Ke deposition, the Moving Defendants asked Troy Law to dismiss the action as against them, *Ke*, 2022 WL 912231, at *2. The firm repeatedly refused to dismiss the

2

claims against them with prejudice, offering only to "drop the Moving Defendants without prejudice," which would have left them at risk of being sued again. *Id.* at *2-3. Consequently, I authorized the Moving Defendants to file a motion for summary judgment, which they did on May 27, 2021. *Id.* at *3. In the same papers, the Moving Defendants sought sanctions against Troy Law pursuant to § 1927, for "unreasonably and vexatiously" multiplying the proceedings, or, alternatively, pursuant to the Court's inherent authority. *Id.* On June 10, 2021, plaintiff filed a cross-motion, pursuant to Fed. R. Civ. P. 21, asking the Court to "drop" Zi Wang and Xin Wang as defendants "without prejudice and with each party to bear its own costs[.]" (Dkt. 139.)

Acting on my recommendation,[1] the District Judge granted summary judgment to the Moving Defendants, *Ke*, 2022 WL 912231, at *7-9, denied plaintiff's cross-motion, *id.*, and sanctioned Troy Law pursuant to § 1927, for its conduct after the Ke deposition. *Id*. at *9-11. By then, the Court explained, it "was obvious that the firm's claim against the Moving Defendants lacked any evidentiary support," and "should have been obvious to Troy Law, including from the deposition of its own client, Ke, that the Moving Defendants were not proper defendants." *Id.* at *9. The District Judge directed the Moving Defendants to submit "declarations about their recoverable fees and expenses," with supporting materials, for my review. *Id*. at *11.

On April 11, 2022, Zi Wang submitted the declaration of attorney Benjamin B. Xue (Xue Decl.) (Dkt. 150), together with an invoice reflecting the services for which fees are sought, Xue Decl. Ex. A (X&A Invoice), the firm's underlying contemporaneous time records, *id*. Exs. B-C, and a memorandum of law (Z. Wang Mem.) (Dkt. 151). Zi Wang seeks $18,490 in fees and $67.75 in printing and mailing costs for X&A's work in this action on and after April 23, 2021. Xue Decl.

---

[1] On August 7, 2019, the case was referred to me for general pretrial management, including determination of non-dispositive pretrial motions (Dkt. 5), and on May 3, 2021, my reference was expanded to include report and recommendation on the motion for summary judgment. (Dkt. 127.)

3

¶ 6; X&A Invoice at 3.² That same day, Xin Wang submitted the declaration of Yi Lin (Lin Decl.) (Dkt. 152), together with two LOYL "invoices billed to Defendant Xin Wang" and a "billing statement" for time not yet billed as of the date of the declaration, Lin Decl. Ex. A (collectively, the LOYL Statements), and a memorandum of law (X. Wang Mem.) (Dkt. 153). Xin Wang seeks $10,825 in fees for LOYL's work in this action since April 2, 2021. Lin Decl. ¶ 11.³

Troy Law filed an opposition brief (Troy Opp.) (Dkt. 154) on April 25, 2022. Zin Wang filed her reply brief on April 29, 2022 (Dkt. 155), and Xi Wang filed his reply brief on May 1, 2022 (Dkt. 156).

## II.  LEGAL STANDARDS

When determining the fees reasonably incurred by a party as a result of sanctionable conduct by another party or attorney, courts in our Circuit "multipl[y] the relevant attorneys' reasonable hours spent on compensable tasks by a reasonable hourly rate for the services performed, so as to determine a 'presumptively reasonable fee.'" *Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*, 2021 WL 1549916, at *2 (S.D.N.Y. Apr. 20, 2021) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2008)); *see also, e.g.*, *Seaman v. Nat'l Collegiate Student Loan Tr. 2007-2*, 2023 WL 2631937, at *5 (S.D.N.Y. Mar. 24, 2023) (calculating sanctions pursuant to § 1927). After performing this calculation, a district court may, in "extraordinary circumstances," adjust the lodestar when it "does not adequately take into account a factor that may properly be considered in determining a

---

² X&A's invoice include entries beginning on April 1, 2021, "to give the Court the background information," but notes that the entries prior to April 23, 2021 are marked "NC" (no charge) and are not included in the total award sought. Xue Decl. ¶ 5; *see also* X&A Invoice at 1.

³ The LOYL Statements, which are "redacted to include only entries relevant to Troy Law's bad-faith post-deposition conduct," Lin Decl. ¶ 7, also reflect $80 in printing and photocopying charges. *See* LOYL Statements at ECF pp. 4-5. However, these charges are not included in the total award sought.

4

reasonable fee." *Lilly v. City of New York*, 934 F.3d 222, 230 (2d Cir. 2019) (quoting *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 167 (2d Cir. 2011)). "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

### A. Reasonable Hourly Rate

A reasonable hourly rate is the "rate a paying client would be willing to pay," bearing in mind that "a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 190. The rate awarded must be "in line with . . . prevailing [rates] in the community for similar services by lawyers of reasonably comparable skill, expertise and reputation." *McDonald ex rel Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 96 (2d Cir. 2006) (alterations in original) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). Evidence that the client actually paid – or agreed to pay – the requested rates "is a significant factor in determining what fee is reasonable," but is "'not necessarily controlling,'" and does not "displace the initial application of the forum rule." *Kyros L. P.C. v. World Wrestling Ent., Inc.*, 78 F.4th 532, 549 (2d Cir. 2023) (quoting *Crescent Publ'g Grp., Inc. v. Playboy Enterprises, Inc.*, 246 F.3d 142, 151 (2d Cir. 2001), *cert. denied*, 144 S. Ct. 822 (2024).

"Courts in this District have determined that a fee ranging from $250 to $450 [per hour] is appropriate for experienced litigators in wage-and-hour cases." *Chen v. Shanghai Café Deluxe, Inc.*, 2023 WL 2401376, at *15 (S.D.N.Y. Mar. 8, 2023) (citation and internal quotation marks omitted); *see also Cuba v. Shadwick Inc.*, 2023 WL 8373009, at *2 (S.D.N.Y. Dec. 4, 2023) ($400 per hour for the head of a small firm in an FLSA action "is commensurate with similarly experienced senior attorneys in the field"); *Gao v. Umi Sushi*, 2023 WL 2118203, at *12 (S.D.N.Y. Jan. 31, 2023) ("[A] reasonable rate for senior attorneys handling wage-and-hour cases, in this market, typically ranges from $300 to $400 per hour.") (citation omitted); *De La Cruz v. Trejo*

5

*Liquors, Inc.*, 2019 WL 9573763, at *18 (S.D.N.Y. Sept. 10, 2019) ("For partners or heads of small law firms practicing in this area, the Court has usually approved hourly rates in the $300 to $450 range.") (citation omitted), *report and recommendation adopted*, 2020 WL 4432298 (S.D.N.Y. July 30, 2020).

In determining the reasonableness of an hourly rate, the Court considers not just the seniority of the lawyer, but also the length of time he or she has practiced in the specific area of law for which fees are sought. *See, e.g.*, *Lee v. Mani & Pedi Inc.*, 2022 WL 3645118, at *5 (S.D.N.Y. Aug. 24, 2022) (reducing hourly rate from $375 to $300 for senior associate who "focused on unspecified 'other subject areas'" in addition to employment law); *Arroyo v. J & M Realty Servs. Corp.*, 2022 WL 595936, at *2 (S.D.N.Y. Feb. 28, 2022) (reducing rate from $350 to $250 for senior associate who spent 7 of his 9 years of practice working in "other areas" besides FLSA litigation). Associates with at least four years of FLSA experience "are typically awarded fees of about $200 to $275 per hour." *De La Cruz*, 2019 WL 9573763, at *18 (citing *Siegel v. Bloomberg L.P.*, 2016 WL 1211849 (S.D.N.Y. Mar. 22, 2016)). For junior associates, or those with little wage-and-hour experience, $100 to $200 per hour remains the norm in this Circuit. *Hong v. Mito Asian Fusion, Inc.*, 2023 WL 3092722, at *4 (E.D.N.Y. Apr. 26, 2023) (collecting cases); *see also Li v. Ichiro Sushi, Inc.*, 2022 WL 1137094, at *2 (S.D.N.Y. Apr. 16, 2022) (finding $225 per hour reasonable for third-year associates and $200 per hour for first- and second-year associates in FLSA action).

The reasonableness of paralegal fees is also determined by reference to the prevailing rates in the relevant community. *De La Cruz*, 2019 WL 9573763, at *10. In this District, rates for paralegals and other non-attorney timekeepers in FLSA cases generally range from $75 to $150 per hour, depending on the experience of the individual timekeeper. *See De La Cruz Rosas v. Just*

6

*Salad 60 Third LLC*, 2023 WL 5423982, at *14 (S.D.N.Y. Aug. 4, 2023) (reducing Troy Law rates for "managing clerk" and unadmitted law school graduate to $75 per hour), *report and recommendation adopted sub nom. Rosas v. Just Salad 600 Third LLC*, 2023 WL 5390985 (S.D.N.Y. Aug. 22, 2023); *Yuan v. & Hair Lounge Inc.*, 2023 WL 4534872, at *9 (S.D.N.Y. June 28, 2023) (same), *report and recommendation adopted*, 2023 WL 4535085 (S.D.N.Y. July 13, 2023); *but see Li*, 2022 WL 1137094, at *2 (sanctioning Troy Law under § 1927 for continuing to press meritless claims and awarding fees at the rate of $125 per hour for X&A paralegal).

### B. Hours Reasonably Expended

"In determining the number of hours reasonably expended for purposes of calculating the lodestar, the district court should exclude excessive, redundant, or otherwise unnecessary hours[.]" *Shanghai Café Deluxe*, 2023 WL 2401376, at *16 (quoting *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999)). The court may also reduce hours "where the attorney's proffered time records are vague or otherwise inadequate to enable the court to determine the reasonableness of the work performed or the time expended." *Wen v. Hair Party 24 Hours Inc.*, 2021 WL 3375615, at *14 (S.D.N.Y. May 17, 2021) (citing *Hensley*, 461 U.S. at 433), *report and recommendation adopted*, 2021 WL 2767152 (S.D.N.Y. July 2, 2021). However, courts "need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection." *Hines v. City of Albany*, 613 F. App'x 52, 54 (2d Cir. 2015) (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)). Thus, in dealing with items that are "excessive, redundant, or otherwise unnecessary, . . . the [district] court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *Id.* at 54-55 (quoting *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998)); *accord Green v. City of New York*, 403 F. App'x 626, 630 (2d Cir. 2010).

7

### C.     Costs

"An award of costs 'normally include[s] those reasonable out-of-pocket expenses incurred by the attorney,'" but "[t]he fee applicant must submit adequate documentation supporting the requested . . . costs." *Fisher v. SD Protection, Inc.*, 948 F.3d 593, 600 (2d Cir. 2020) (quoting *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987)). A party who fails to submit documentation substantiating the costs reflected in attorney billing records has not adequately documented those costs. *See, e.g.*, *Burns v. Scott*, 635 F. Supp. 3d 258, 285 (S.D.N.Y. 2022) (declining to award costs evidenced only by line items in the firm's billing records), *reconsideration denied*, 2022 WL 18858909 (S.D.N.Y. Nov. 9, 2022); *Just Salad 60 Third*, 2023 WL 5423982, at *14 (denying costs to Troy Law for lack of adequate documentation).

## III.    DISCUSSION

### A.     Reasonableness of Hourly Rates Sought

Defendant Zi Wang seeks fees for work performed by X&A's managing attorney Benjamin Xue (at $400 per hour), and its associate Michael Romero (at $300 per hour). Xue Decl. ¶ 6. Defendant Xin Wang seeks fees for work performed LOYL's managing attorney Yi Lin (at $375 per hour), and its paralegal Olicar Yin (at $100 per hour). Lin Decl. ¶ 8. I conclude that Xue's requested hourly rate is reasonable, but that reductions are required for Romero, Lin, and Yin.

#### 1.     Benjamin Xue

Xue is the principal attorney of X&A and was counsel of record for defendant Zi Wang. Xue Decl. ¶ 1. He graduated from law school in 2001 and was admitted to practice in both New York and New Jersey the following year. *Id.* ¶ 7. Xue has fifteen years of experience in FLSA and NYLL matters. *Id.* He asserts that his regular hourly rate is between $450 and $500 per hour, depending on the complexity of the case, but he "did not increase the billable rates for Zi Wang

8

since we took on this case." *Id.* Consequently, Xue requests fees at the rate of $400 per hour for his time spent on this matter since April 23, 2021. *Id.*[4]

Plaintiff argues that Xue's hourly rate should be reduced from $400 to $350 because in two previous cases he was awarded hourly rates of $350 and $275 in this District and in the Eastern District of New York, respectively. Troy Opp. at 2. Xue was indeed awarded fees at the hourly rate of $350, in this District, in 2022. But that award was for work done from 2016 through 2020. *Li*, 2022 WL 1137094, at *2. The case in which he was awarded fees the rate of $275 was even older: it was decided in 2013, and covered work performed in 2011 and 2012. *See Man Wei Shiu v. New Peking Taste Inc.*, 2013 WL 4046382, at *6 (E.D.N.Y. Mar. 14, 2013), *report and recommendation adopted as modified*, 2013 WL 2351370 (E.D.N.Y. May 28, 2013), *aff'd sub nom. Man Wei Shiu v. Jung & Assocs. L. Off. P.C.*, 559 F. App'x 105 (2d Cir. 2014) The fees at issue here are for work performed in and after April 2021. For this time period, as noted above, the $400 per hour rate sought by Xue is within the range of rates that courts in this District have approved for experienced wage-and-hour practitioners in FLSA cases – including, on occasion, John Troy himself. *See, e.g.*, *Cuba*, 2023 WL 8373009, at *2 (finding $400 per hour reasonable for "experienced senior attorneys in the [FLSA] field"); *Wang v. XBB, Inc.*, 2023 WL 2614143, at *8 (E.D.N.Y. Mar. 23, 2023) ("an hourly rate of $400 is warranted for Mr. Troy"), *reconsideration denied*, 2024 WL 184263 (E.D.N.Y. Jan. 17, 2024). For this reason, as well, I conclude that Xue's requested rate of $400 is appropriate.

---

[4] Although Xue implies that Zi Wang agreed to pay him at the rate of $400 per hour, no retainer agreement was submitted, nor any evidence of actual payment by the client. Consequently, I do not rely on the firm's "billable rates" as evidence of the reasonableness of the rates sought.

### 2. Michael Romero

Michael Romero, an associate at X&A, graduated from law school in 2014, and was admitted to practice in New York the following year. Xue Decl. ¶ 8. As of 2022, he had seven years of legal experience, including "nearly 4 years of labor and employment law experience," and had assisted Xue in "numerous" FLSA/NYLL litigations. *Id.* Attorney Romero's requested hourly rate in this case is $300. *Id.*

Plaintiff argues that Romero's hourly rate should be reduced to $200 because that is the rate he was awarded in *Li*, 2022 WL 1137094, at *2, and because he is "not appreciably more experienced now than he was when he was working on" that case. Troy Opp. at 2. As noted above, however, the *Li* award was for work performed earlier than the work at issue here – when Romero was a first or second-year associate – and the *Li* court expressly described him as such. *Li*, 2022 WL 1137094, at *1-2. That said, I agree that some reduction is appropriate to Romero's rate, because his experience does not "exclusively encapsulate" labor and employment litigation. *Lee*, 2022 WL 3645118, at *5 (reducing hourly rate from $375 to $300 for litigator whose nine years of experience did not "exclusively encapsulate labor and employment litigation"); *see also Arroyo*, 2022 WL 595936, at *2 (reducing hourly rate from $350 to $250 for associate with 9 years of litigation experience but only 2 years of FLSA experience). On balance, I conclude that $250 per hour is a reasonable rate for Romero in this case. *See De La Cruz*, 2019 WL 9573763, at *18 ("Mid-level associates, meaning those with at least four years of experience, are typically awarded fees of about $200 to $275 per hour in wage-and-hour cases.") (internal quotation marks and citation omitted).

3.  **Yi Lin**

Yi Lin was admitted to practice in New York in 1993. Lin Decl. ¶ 9. He attests that his usual hourly rate for representation in federal court matters is $400 per hour, but in this particular case, he charged Xin Wang $375 per hour, a "reduced rate for long term clients." *Id.* ¶ 10.[5]

Troy Law argues that Lin's hourly rate should be reduced to $350 because he has litigated only two cases in this District (the most recent in 2015), and is also "less experienced than Mr. Xue with . . . litigating these types of cases" Troy Opp. at 5. I agree. Although Lin is the principal of his law office, neither his moving declaration nor his reply letter-brief states what portion of his practice is devoted to wage-and-hour matters, or how many years he has practiced in that area. The record therefore does not warrant an award of fees to Mr. Lin at the higher end of the typical range for partners or heads of small law firms who are experienced in FLSA litigation. Under the circumstances, a rate of $350 per hour is reasonable.

4.  **Olicar Yin**

Olicar Yin, a paralegal at the LOYL, performed a range of clerical and paraprofessional services in this case, for which defendant Xin Wang seeks fees at the rate of $100 per hour. Lin Decl. ¶ 8. A reduction in this rate is also warranted, because there is no information whatsoever in the record as to Yin's background or experience. "[C]ourts are generally more skeptical of requested hourly rates when the applicant fails to provide information about the backgrounds of the relevant attorneys and paralegals." *Gonzalez v. Scalinatella, Inc.*, 112 F. Supp. 3d 5, 29 (S.D.N.Y. 2015). Absent such information, a rate of $75 for Yin – towards the lower end of the paralegal scale – is appropriate.

---

[5] Lin, like Xue, implies that his client actually paid him at the "reduced rate" set forth in the LOYL Statements, but submits no admissible evidence of such payment. Consequently, I do not rely on the hourly rates set forth on the firm's Statements as evidence that those rates are reasonable.

B.     **Reasonableness of Hours Expended**

X&A documents 58.2 hours of work on behalf of Zi Wang between April 2021 and April 2022. *See* Z. Wang Mem. at 8. Xue billed a total of 10.30 hours, and Romero billed a total of 47.90 hours. *See* Xue Decl. ¶ 6; *id.* Exs. A-C. LOYL documents 30.7 hours of work – 28.2 hours by attorney Lin and 2.5 hours by paralegal Yin – on behalf of Xin Wang, also between April 2021 and April 2022. *See* Lin Decl. ¶ 8; LOYL Statements at ECF pp. 2-7. I conclude that these hours were expended reasonably.

1.     **Xue & Associates**

Troy Law argues that the time that X&A billed for drafting motion papers is "beyond what is reasonable considering the documents that were drafted." Troy Opp. at 3. For instance, Troy Law argues that it should not have taken X&A a total of 1.2 hours on April 23, 2021 (0.7 hours billed by Romero and 0.5 hours billed by Xue) to draft and review a proposed stipulation of dismissal (with prejudice). *Id.*; *see also id*. Ex. 3 (Proposed Stipulation of Dismissal). In fact, that 1.2 hours was not solely devoted to the stipulation. Xue's entry states, "Review draft stipulation *and phone conference with co-defendants' counsel, and phone conference with client*." X&A Invoice at 1 (emphasis added). Given the tasks performed, I do not find the April 23, 2021 time entries excessive.

Plaintiff also contends that Romero unreasonably billed 17.8 hours for, "among other things," drafting the Moving Defendants' motion for summary judgment, and another 11.5 hours drafting their reply. Troy Opp. at 3. One again, I do not find these entries unreasonable. Romero was the primary author of the motion for summary judgment and sanctions, which included a nine-page Local Civil Rule 56.1 statement (Dkt. 134-1), declarations from both Zi Wang and Xin Wang (Dkts. 136, 137), and a 26-page memorandum of law (Dkt. 138), and required close coordination between X&A and LOYL. The 20-page reply brief was also substantial, necessarily addressing

12

both the Moving Defendants' summary judgment motion and plaintiff's Rule 21 cross-motion. Although a more experienced attorney likely would have been able to draft these papers in fewer hours, he or she would also have charged more per hour. Given Romero's experience level, the hours billed are not unreasonable.

Troy Law also accuses X&A of "obscurantist block billing" that "combines attorney-appropriate tasks with tasks, that could have been done by support staff and should be billed at staff rates." Troy Opp. at 3-4. Although block billing is "generally disfavored," it "is by no means prohibited in this Circuit because block billing will not always result in inadequate documentation of an attorney's hours." *Raja v. Burns*, 43 F.4th 80, 87 (2d Cir. 2022). "[A]s long as the district court is still able 'to conduct a meaningful review of the hours' for which counsel seeks reimbursement," block billing is permissible. *Id.* (quoting *Restivo v. Hessemann*, 846 F.3d 547, 591 (2d Cir. 2017)). "Courts in this circuit have generally limited percentage reductions to 'where there was evidence that the hours billed were independently unreasonable or that the block-billing was mixing together tasks that were not all compensable, or not all compensable at the same rate.'" *Gym Door Repairs, Inc. v. Total Gym Repairs*, 2023 WL 6519626, at *14 (S.D.N.Y. Mar. 31, 2023) (quoting *Adusumelli v. Steiner*, 2013 WL 1285260, at *4 (S.D.N.Y. Mar. 28, 2013)).

Here, the billing entries are specific enough to permit meaningful judicial review of the tasks performed. For example, attorney Romero's May 4, 2021 time entry for 1.6 hours reads: "Draft letter to Judge Moses re: MSJ. Finalize and file letter to Judge Moses re: MSJ. Email copy to Yi Lin. Review co-defense letter requesting pre-motion conference." X&A Invoice at 1. Attorney Xue's June 17, 2021 time entry for 1.9 hours reads: "Review and mark up draft opposition and reply memorandum of law and conference with MR and co-defendants' counsel, finalize memo and efile same." *Id.* at 2. The amount of arguably clerical work contained in these entries – such

as Xue's time spent e-filing on June 17, 2021, or Romero's 0.1 hours spent on May 12, 2021 to review a court order *and* calendar a scheduled conference, *see id.* at 2 – is *de minimis*, and does not warrant an across-the-board reduction. *See Lilly*, 934 F.3d at 234 (holding that "while district courts have the legal authority and discretion to either reduce an attorney's hourly rate for time spent on clerical tasks or apply an across-the-board reduction to the hours billed or total fee award . . . , a district court is not required to make such reductions" and is afforded "broad discretion" to "determine what is reasonable and appropriate in the fee calculus for the particular case").

Lastly, Troy Law argues that Xue and Romero "double-billed" when they entered 0.8 and 0.9 hours (respectively) on June 11, 2021, to review plaintiff's opposition to defendants' motion for summary judgment. Troy Opp. at 3. However, where (as here) a team is leanly staffed, it is not unreasonable for both of the attorneys responsible for responding to a brief to read it. This is not the kind of duplicative work for which courts reduce fee awards (and plaintiff cites no authority to the contrary). *See, e.g.*, *New York Ass'n for Retarded Child. v. Cuomo*, 2019 WL 3288898, at *7 (E.D.N.Y. July 22, 2019) (declining to reduce hours billed for internal communications where the matter was "staffed leanly, with only two attorneys . . . , reducing the incidence of duplicative billing"). Thus, the hours requested by X&A are reasonable.

        2.     **Law Office of Yi Lin**

Troy Law argues that "Yi Lin's hours billed should be reduced across the board by 50% to take into account the free-riding off Xue & Associates' work," pointing out that "Xue & Associates did the heavy lifting" while Lin made "at most minor changes to the motion papers, with the most substantive work being the insertion of Xin Wang's facts into the [Rule] 56.1 statement." Troy Opp. at 5. Plaintiff's counsel adds, "Yi Lin's billing records back this up: compared to Xue & Associates billed hours, . . . Yi Lin billed only 3 . . . hours for work on the summary judgment

14

motion," "only 1.2 hours for work on the reply in support of summary judgment," and "only 1.5 hours" for "drafting reply in support of Report & Recommendation." *Id.*

The argument defeats itself. The fact that LOYL did not perform work already performed by X&A, and that its billing records "back this up" by reflecting far fewer hours billed, demonstrates efficient billing practices. It is the opposite scenario – where attorneys fail to coordinate efficiently, as a result replicating work previously performed – that leads courts to slash hours billed. *See, e.g.*, *Ortiz v. Chop't Creative Salad Co. LLC*, 89 F. Supp. 3d 573, 593 (S.D.N.Y. 2015) (reducing hours billed where counsel neglected to reuse prior work product and instead performed "drafting, editing, and revising" that was "excessive, duplicative and unnecessary"). In this case, it was wholly appropriate for LOYL to piggyback on X&A's work, since their "collaboration likely led to lower legal fees than [they] would have incurred if they each filed a separate motion for summary judgment." *Kaufman v. Equifax Info. Servs., LLC*, 2019 WL 3997461, at *5 (E.D.N.Y. Aug. 22, 2019).

Troy Law makes no other arguments as to the unreasonableness of the hours billed by the Moving Defendants' counsel, and the Court's own review of their billing records did not uncover any entries that were unreasonably vague, appeared inflated, or reflected work that is not properly compensable under § 1927. I therefore conclude that the hours for which fees are sought by both Moving Defendants are reasonable.

**C.     Costs**

X&A lists $67.75 in costs for printing and mailing. *See* X&A Invoice at 3. These types of expenses are unremarkable. However, the Moving Defendants have not submitted any invoices, receipts, or other extrinsic proof to document the expenditures, as required; these costs are merely reflected on X&A internal billing records. Consequently, none of these expenses should be reimbursed. *See Burns*, 635 F. Supp. 3d at 285; *Just Salad 60 Third*, 2023 WL 5423982, at *14.

IV. **CONCLUSION**

For the reasons set forth above, defendant Zi Wang is awarded $16,095.00 in fees, for the work of X&A, and Xin Wang is awarded $10,057.50 in fees, for the work of LOYL, for an aggregate award of $26,152.50, as shown below.[6] Payment shall be made within 30 days of the date of this Memorandum and Order.

| Xue and Associates | Hours | Rate | Total |
|---|---|---|---|
| Benjamin B. Xue | 10.3 | $400.00 | $4,120.00 |
| Michael Romero | 47.9 | $250.00 | $11,975.00 |
| | | **X&A Total:** | **$16,095.00** |
| **Law Office of Yi Lin** | Hours | Rate | Total |
| Yi Lin | 28.2 | $350.00 | $9,870.00 |
| Olicar Yin | 2.5 | $75.00 | $187.50 |
| | | **LOYL Total:** | **$10,057.50** |
| | | **TOTAL AWARD** | **$26,152.50** |

Dated: New York, New York
April 30, 2024

SO ORDERED.

_____
**BARBARA MOSES**
**United States Magistrate Judge**

---

[6] Monetary sanctions issued pursuant to 28 U.S.C. § 1927 (like sanctions issued pursuant to Fed. R. Civ. P. 16 and 37) "are generally considered non-dispositive and are reviewable under the clearly erroneous standard." *Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*, 2022 WL 162583, at *3 (S.D.N.Y. Jan. 18, 2022); *see also Seaman*, 2023 WL 2631937, at *1 (Moses, M.J.) (determining amount of § 1927 sanction in a Memorandum and Order); *Fashion Exch. LLC v. Hybrid Promotions, LLC*, 2021 WL 1172265, at *1, 5 (S.D.N.Y. Mar. 29, 2021) (overruling objections to magistrate judge's order imposing sanctions pursuant to § 1927 under the "clearly erroneous" standard set forth in Fed. R. Civ. P. 72(a)). However, the Second Circuit has not specifically addressed the issue. Consequently, if and to the extent this Memorandum and Order could be considered a dispositive ruling, I respectfully recommend, for the reasons stated above, that the Moving Defendants be awarded sanctions in the amounts set forth herein.