USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __5/16/2025__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

YI MEI KE,

           Plaintiff,

-against-

J R SUSHI 2 INC., et al.,

           Defendants.

19-CV-7332 (PAE) (BCM)

**MEMORANDUM AND ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

For more than two years – from March 28, 2022 to May 2, 2024 – plaintiff Yi Mei Ke, represented by Troy Law, PLLC (Troy Law), failed to take any steps to pursue her claims in this Fair Labor Standards Act case. However, the record now before me does not support a finding of willfulness, bad faith, or reasonably serious fault on the part of plaintiff herself. Rather, the delay was caused by the dilatory conduct of her counsel. I therefore cannot recommend that this action be dismissed pursuant to Fed. R. Civ. P. 41(b). Instead, I will require Troy Law to reimburse defendants for their reasonable expenses, including attorneys' fees, caused by the delay.

## Background

On March 28, 2022, the Hon. Paul A. Engelmayer, United States District Judge, granted summary judgment in favor of two of the six defendants in this action, Zi Wang and Xin Wang (the Moving Defendants). *See Ke v. J R Sushi 2 Inc.*, 2022 WL 912231, at *7-9 (S.D.N.Y. Mar. 28, 2022). Additionally, Judge Engelmayer granted the Moving Defendants' motion for monetary sanctions against Troy Law, pursuant to 28 U.S.C. § 1927, because the firm stubbornly refused to dismiss plaintiff's "utterly meritless" claims against them, even after Ms. Ke disavowed those claims at deposition. *Id.* at *9-11. Judge Engelmayer then directed the Moving Defendants to submit their "recoverable fees and expenses" to me, for determination of the appropriate amount of the sanction. *Id.* at *11.

For the next 25 months, although Troy Law litigated the amount of the § 1927 sanction against the firm, it did nothing on plaintiff's behalf to advance her claims against Ruifeng Yang, Kai Tuan Wang, J R Sushi 2 Inc. and Famous Sichuan New York Inc. (the Remaining Defendants). Among other things, Troy Law failed to prepare or submit a joint proposed pretrial order (JPTO), which was due 30 days after the disposition of the summary judgment motion. (*See* Dkt. 64 ¶ 13.) Accordingly, on May 2, 2024, I issued an Order to Show Cause (OSC) (Dkt. 158), directing plaintiff to show cause why the case should not be dismissed pursuant to Rule 41(b), and setting a schedule for the Remaining Defendants to respond. Thereafter, on September 24, 2024, I recommended that this action be dismissed, in its entirety, without prejudice. *See Ke v. J R Sushi 2 Inc.*, 2024 WL 5119125 (S.D.N.Y. Sept. 24, 2024) (*Ke R&R*).

On October 31, 2024, the Second Circuit held that where – as here – a dismissal without prejudice "would operate in effect as a dismissal with prejudice," due to the expiration of the statute of limitations on the plaintiff's core claims, "the district court was required to make a finding of 'willfulness, bad faith, or reasonably serious fault'" before dismissing the case. *Romano v. Laskowski*, 2024 WL 4635227, at *4-5 (2d Cir. Oct. 31, 2024) (summary order). I made no such finding in the *Ke R&R*. Consequently, on March 25, 2025, Judge Engelmayer declined to adopt my recommendation as to dismissal and returned the case to me to address: "(1) whether, in connection with plaintiff's delays, disregard of deadlines, and other misconduct, there exists 'willfulness, bad faith, or reasonably serious fault' on the part of Ke, as opposed to Troy Law, such that dismissal would be warranted under *Romano;* and (2) whether sanctions should be imposed directly on Troy Law[.]" *Ke v. JR Sushi 2 Inc.*, 2025 WL 901842, at *5 (S.D.N.Y. Mar. 24, 2025).

On March 26, 2025, I directed the parties to submit supplemental briefs on these two questions, and directed plaintiff to provide a declaration "listing each contact between Troy Law

2

and plaintiff Yi Mei Ke" during the period of the delay. (Dkt. 168.) Plaintiff's submission was due on April 30, 2025. (Dkt. 170.) Defendants' submission was due on May 7, 2025. (*Id*.)

### Plaintiff's Showing

The Declaration of John Troy, Esq. (Troy Decl.) (Dkt. 171-1) reveals that there were no communications between plaintiff Ke and Troy Law between March 28, 2022 (the date of Judge Engelmayer's summary judgment decision) and the end of June 2022. Troy Decl. at 1. On July 1, 2022, Ms. Ke sent a text message to Troy Law, but the firm did not get back to her until July 31, 2022. *Id*. On March 1, 2023 (that is, after a gap of approximately seven months), Ms. Ke again reached out to Troy Law. *Id*. at 2. During March and April 2023, she contacted Troy Law eight times – either by text (using what Mr. Troy describes as the "Line application" or, in one instance, using WeChat) or by voice call (using WeChat) – and the firm responded twice. *Id*. at 2-3. The last communication in this series is a group text that plaintiff sent to Troy Law using the Line application on April 30, 2023. *Id*. at 3. Thereafter, a full year elapsed with no communication in either direction. Then, at 8:02 p.m. on May 2, 2024 – the day I issued the OSC – Troy Law sent "[m]ultiple text messages" to Ms. Ke, followed by additional messages on May 4 and 6, 2024. *Id*. at 3-4. Ms. Ke did not respond. *Id*.

Most recently, on April 30, 2025 (the same day plaintiff's supplemental brief and supporting declaration were due), Mr. Troy reached Ms. Ke via a WeChat voice call, after which she visited the firm's offices and – according to Mr. Troy – confirmed that "she had never intended to abandon, and still wanted to proceed with, this case." Troy Decl. at 3-5. During the same visit, Troy attests, he and another Troy Law attorney, Aaron Schweitzer, Esq., examined two cellphones possessed by Ms. Ke, determined that "only her old phone had the Line application installed," and

concluded that she did not receive the messages sent to her via that application on May 2-6, 2024. *Id*. at 3-4. Troy Law did not submit any declaration from Ms. Ke herself.

In her brief – also signed by Mr. Troy – plaintiff highlights her significant efforts to keep in touch with her counsel in 2022 and early 2023 and argues that she is "entirely blameless in the non-filing of the [proposed JPTO]." Pl. Mem. (Dkt. 171) at 3. She further contends that no additional sanction should be imposed on her attorneys, because they were "responsive to [her] queries," *id*., and because they had "a good faith (if, as is now apparent, mistaken and incorrect) belief," *id*. at 4, that she was not required to prepare a proposed JPTO until this Court fixed the amount of the § 1927 sanction owed by Troy Law to the Moving Defendants, which it did on April 30, 2024. *See Ke v. J R Sushi 2 Inc.*, 2024 WL 1891195 (S.D.N.Y. Apr. 30, 2024).

### Defendants' Position

In response, the Remaining Defendants argue that the gaps in communication between client and counsel (particularly the one-year gap after April 30, 2023) demonstrate "reasonably serious fault" on the part of Ms. Ke herself, sufficient to warrant dismissal of this action under the *Romano* standard. Def. Mem. (Dkt. 172) at 4. Alternatively, the Remaining Defendants contend that Troy Law – which failed to respond to most of Ms. Ke's communications during the period of delay, and did not proactively reach out to her until this Court issued its OSC on May 2, 2024 – should be required to reimburse them for their costs incurred in responding to the OSC "and drafting the instant supplemental brief." *Id*. at 4-6.

### The May 14 Hearing

On May 14, 2025, I held a hearing at which counsel for plaintiff and for the Remaining Defendants largely reiterated the points made in their briefs. At the conclusion of the hearing, I advised the parties that I would not recommend that this action be dismissed pursuant to Fed. R.

4

Civ. P. 41(b), but would require, as a lesser sanction, that Troy Law reimburse the Remaining Defendants for their reasonable expenses, including attorneys' fees, incurred in responding to the OSC. I explained the reasons for my conclusion on the record, and summarize them here.

### **Willfulness, Bad Faith, or Reasonably Serious Fault**

It is apparent from the record of communications between Ms. Ke and Troy Law that plaintiff made reasonable efforts to keep in touch with her attorneys, but that they nonetheless failed to advance her case in a timely manner. I note at the outset that the firm made no effort to contact its client when Judge Engelmayer decided the summary judgment motion on March 28, 2022 – or for the next four months. Troy Decl. at 1. Indeed, although Ms. Ke texted her lawyers on July 1, 2022, they did not respond until July 31, 2022. *Id*. Thus, Ms. Ke can hardly be blamed for failing to file the JPTO 30 days after the summary judgment decision was issued.

Even assuming, *arguendo*, that Troy Law did tell Ms. Ke about the summary judgment decision on July 31, 2022 (or at some point thereafter), it is difficult to ascribe "willfulness, bad faith, or reasonably serious fault," *Romano*, 2024 WL 4635227, at *5, to a client who is uneducated in the law, cannot read English, and was likely unaware of this Court's 30-day deadline for filing the proposed JPTO,[1] but was obviously interested in pursuing the case, as evidenced by her eight messages and voice calls to her counsel in March and April 2023. *See* Troy Decl. at 2-3. It is true, as defendants point out, that after plaintiff's eighth message (on April 30, 2023) went unreturned, there was a gap of one year during which there were no attempts to communicate on either side. Even a sophisticated client, however, cannot be expected to continue hounding her lawyers

---

[1] Ms. Ke testified at deposition, through a Mandarin interpreter, that she received a secondary school education in China before she came to the United States, where she worked 12-hour days at defendants' restaurant, making dumplings. *See* Ke Dep. Tr. (Dkt. 135-6) at 7:20-8:3, 34:8-37:13, 46:18-25. She cannot read English, *id*. at 51:24, and referred questions about English-language documents to her attorneys. *Id*. at 52:3-6, 52:17-19.

indefinitely. Moreover, there is no evidence that Ms. Ke failed to return calls from her lawyers, refused to cooperate with them, or otherwise prevented them from pursuing her claims in a timely manner at any point during the 25 months of inaction preceding this Court's OSC.[2] I therefore cannot – and do not – find that the delay in pursuing Ms. Ke's claims was due to willfulness, bad faith, or reasonably serious fault on her part.

## **Lesser Sanctions**

Before dismissing a case for failure to prosecute pursuant to Rule 41(b), the court must "consider whether sanctions 'less drastic than dismissal' would be effective," *Romano*, 2024 WL 4635227, at *5 (quoting *Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996)). "In deciding on the suitability of lesser sanctions, and whether the sanctions should be aimed primarily against the party or the attorney, it can be important for the district court to assess the relative roles of attorney and client in causing the delay[.]" *Dodson v. Runyon*, 86 F.3d 37, 40 (2d Cir. 1996). "[T]he more the delay was occasioned by the lawyer's disregard of his obligation toward his client, the more this factor argues in favor of a less drastic sanction imposed directly on the lawyer." *Id*. The record now before this Court makes it clear that the 25-month delay preceding the OSC was in fact "occasioned by the lawyer's disregard of his obligation toward his client," making monetary sanctions imposed directly on counsel an appropriate alternative to dismissal under Rule 41(b).

First, as noted above, it is now clear that Troy Law did not tell its client about Judge Engelmayer's summary judgment decision – the event which triggered her 30-day deadline to

---

[2] The question for this Court, put simply, is: Who was at fault for the delay between Judge Engelmayer's summary judgment decision on March 28, 2022 and this Court's OSC on May 2, 2024? As defendants point out, Troy Law's efforts to reach Ms. Ke *after* the OSC was issued are largely irrelevant to that question. *See* Def. Mem. at 5 ("What sprung Troy Law to action was . . . the [May 2, 2024] threat of dismissal.") In any event, I accept Mr. Troy's representation that Ms. Ke did not respond to Troy Law's texts in May 2024 because she did not receive them, *see* Troy Decl. at 3-4, not because she ignored them.

6

submit the proposed JPTO – until, at the earliest, July 31, 2022, some four months after the fact. Second, despite outreach from its client, Troy Law continued to do nothing until prompted into action by the May 2, 2024 OSC – at which point it argued vigorously that "the summary judgment motion was not 'fully adjudicated' until April 30, 2024, when the 'second branch' of the motion, relating to the amount of the sanctions award, was decided," *Ke R&R*, 2024 WL 5119125, at *2 (quoting Dkt. 159 at 2), and therefore that the proposed JPTO was not due until May 30, 2024. *Id*.

Although the firm now concedes that its analysis was "mistaken and incorrect," Pl. Mem. at 4, it contends that it should not be sanctioned because it operated in "good faith." *Id*. I disagree. As explained in the *Ke R&R*, Troy Law's contorted analysis was "untenable." 2024 WL 5119125, at *1. Moreover, "[a] plaintiff has a general obligation to prosecute its case diligently," *DuFour Grp., Inc. v. Thyssenkrupp Safway, Inc.*, 2011 WL 812053, at *1 (S.D.N.Y. Mar. 3, 2011), whether or not she is facing a hard deadline for any one step on the path to trial. *See Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37, 42 (2d Cir. 1982) (noting that "failure to prosecute," which is "not defined in Rule 41(b)," can "evidence itself . . . in an action lying dormant with no significant activity to move it"). Thus, in order to avoid sanctions, Troy Law must explain not only why it failed to submit a proposed JPTO 30 days after Judge Engelmayer's summary judgment decision, but also why it failed to do anything at all – for the next two years – to "move" Ms. Ke's case. It has never done so.

When I initially considered the question of lesser sanctions, I reasoned that a monetary award against Troy Law would not fully redress the presumed prejudice to the Remaining Defendants, "whose memories of the details of an employment relationship that ended in 2019 likely faded further during the extended period of inactivity following the grant of summary judgment to the Moving Defendants." *Ke R&R*, 2024 WL 5119125, at *5. That remains true.

7

However, such an award can at least reimburse defendants for their actual expenses, including attorneys' fees, incurred as a result of the delay, and may deter Troy Law from engaging in similar dilatory conduct in other cases. On the present record, therefore, I conclude that a monetary sanction against plaintiff's counsel is an appropriate alternative to the dismissal of this action.

## Conclusion

For the reasons discussed on the record during the May 14, 2025 hearing and summarized above, Troy Law must reimburse the Remaining Defendants for their expenses, including reasonable attorneys' fees, incurred as a result of plaintiff's delay, including their fees incurred in preparing their OSC responses (Dkts. 160-163). It is hereby ORDERED that the parties promptly meet and confer in a good-faith effort to reach agreement on the amount of the award. If they are unable to come to agreement, defendants must submit an application, no later than **May 23, 2025**, documenting their recoverable fees and expenses. Plaintiff's opposition, if any, must be submitted no later than **May 30, 2025.** There will be no reply.

It is further ORDERED that the parties must submit their proposed JPTO to the district judge, in compliance with his individual practices, no later than **June 13, 2025.**

Dated: New York, New York
       May 16, 2025

SO ORDERED.

_____

**BARBARA MOSES**
**United States Magistrate Judge**