UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

YI MEI KE,
    *a/k/a* YIMEI KE,

                Plaintiff,

        -v-

JR SUSHI 2 INC,
    *d/b/a* JR SUSHI 2,
FAMOUS SICHUAN NEW YORK INC,
    *d/b/a* FAMOUS SICHUAN,
KAI TUAN WANG, *and*
RUI YANG,
    *a/k/a* RUIFENG YANG,
    *a/k/a* RUI FENG YANG,

                Defendants.

19-CV-7332 (PAE)

---

PAUL A. ENGELMAYER, District Judge:

    Attached to this Order are the following Court Exhibits and Jury Notes:

- Exhibit A: The draft jury charge, dated October 28, 2025.

- Exhibit B: The draft verdict form.

- Exhibit C: The jury charge, read into the record on October 29, 2025.

- Exhibit D: The final verdict form.

- Jury Note 1.

- Jury Note 2.

    SO ORDERED.

Dated: October 30, 2025
       New York, New York

                                *Paul A. Engelmayer*
                                PAUL A. ENGELMAYER
                                United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

YI MEI KE,
    *a/k/a* YIMEI KE,

                       Plaintiff,

             -v-

JR SUSHI 2 INC,
    *d/b/a* JR SUSHI 2,
FAMOUS SICHUAN NEW YORK INC,
    *d/b/a* FAMOUS SICHUAN,
KAI TUAN WANG, *and*
RUI YANG,
    *a/k/a* RUIFENG YANG,
    *a/k/a* RUI FENG YANG,

                   Defendants.

19 Civ. 7332 (PAE)

---

**Jury Charge**
**October 29, 2025**

**DRAFT for Charge Conference on October 28, 2025**

TABLE OF CONTENTS

I.   GENERAL INSTRUCTIONS ....................................................................................... 1

   A.   Introductory Remarks .................................................................................... 1

   B.   Role of the Court ........................................................................................... 1

   C.   Role of the Jury ............................................................................................. 2

   D.   Role of Counsel / Objections and Sidebars ................................................. 2

   E.   Sympathy or Bias .......................................................................................... 3

   F.   Burden of Proof ............................................................................................. 4

   G.   What Is and Is Not Evidence ........................................................................ 5

   H.   Direct and Circumstantial Evidence ............................................................. 6

   I.   Witness Credibility ........................................................................................ 7

   J.   Interested Witnesses ...................................................................................... 9

   K.   Preparation of Witnesses [IF APPLICABLE] ............................................ 10

   L.   Stipulated Facts [IF APPLICABLE] ........................................................... 10

   M.   Multiple Parties ............................................................................................. 10

   M.   All Available Evidence Need Not Be Produced ........................................... 10

   O.   Foreign Language Testimony ........................................................................ 11

II.   SUBSTANTIVE CHARGES .................................................................................... 11

   A.   Overview of Statutes and Claims ................................................................. 11

   B.   Employer Status ............................................................................................ 13

   C.   Duration of Employment .............................................................................. 15

   D.   Minimum Wage Claims ................................................................................ 17

   E.   Overtime Claims ........................................................................................... 22

   F.   Spread of Hours Claims ................................................................................ 24

   G.   Wage Notice Claims ..................................................................................... 25

   H.   Wage Statement Claims ................................................................................ 26

   I.   Good Faith Defense ....................................................................................... 27

III.   DELIBERATIONS OF THE JURY .......................................................................... 28

   A.   Right to See Exhibits and Hear Testimony .................................................. 28

   B.   Communication with the Court ..................................................................... 28

   C.   Notes .............................................................................................................. 29

**D. Duty to Deliberate; Unanimous Verdict** ........................................................................... **29**

**E. Verdict Form** ........................................................................................................................ **30**

**F. Duties of Foreperson** ........................................................................................................... **30**

**G. Return of Verdict** ............................................................................................................... **30**

**IV. CONCLUSION** ....................................................................................................................... **31**

# I.    GENERAL INSTRUCTIONS

## A.    Introductory Remarks

Members of the jury, you have now heard all of the evidence in the case, and you will soon hear the final arguments of the parties.  You have paid careful attention to the evidence, and I am confident that you will act together with fairness and impartiality to reach a just verdict.

Now it is time for me to instruct you as to the law that governs the case.  There are three parts to these instructions.  First, I'm going to give you some general instructions about your role, and about how you are to decide the facts of the case.  These instructions really would apply to just about any trial.  Second, I'll give you some specific instructions about the legal rules applicable to this particular case.  Third, after counsel's closing arguments, I'll give you some final instructions about procedure.

Listening to these instructions may not be easy.  It is important, however, that you listen carefully and concentrate.  I ask you for patient cooperation and attention.  You'll notice that I'm reading these instructions from a prepared text.  It would be more lively, no doubt, if I just improvised.  But it's important that I not do that.  The law is made up of words, and those words are very carefully chosen.  So when I tell you the law, it's critical that I use exactly the right words.

You'll have copies of what I'm reading in the jury room to consult, so don't worry if you miss a word or two.  But for now, listen carefully and try to concentrate on what I'm saying.  I will be distributing to you a verdict form, on which to record your verdict.  It will list the questions that you must consider, in the order that you should consider them.

## B.    Role of the Court

My duty at this point is to instruct you as to the law.  It is your duty to accept these instructions of law and to apply them to the facts as you determine them.  With respect to legal

matters, you must take the law as I give it to you.  If any attorney has stated, or states, a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.  You must not substitute your own notions or opinions of what the law is or ought to be.

### C.    Role of the Jury

As members of the jury, you are the sole and exclusive judges of the facts.  You pass judgment upon the evidence.  You determine the credibility of the witnesses.  You resolve such conflicts as there may be in the testimony.  You draw whatever reasonable inferences you decide to draw from the facts as you have determined them, and you determine the weight of the evidence.

Although you are encouraged to use all of your life experiences in analyzing testimony and reaching a fair verdict, you may not communicate any personal or professional expertise you might have or other facts not in evidence to the other jurors during deliberations.  You must base your discussions and decisions solely on the evidence presented to you during the trial and that evidence alone.  You may not consider or speculate on matters not in evidence or matters outside the case.

### D.    Role of Counsel / Objections and Sidebars

It is the duty of the attorneys to object when the other side offers testimony or other evidence that the attorney believes is not properly admissible.  It is my job to rule on those objections.  Therefore, why an objection was made or why I ruled on it the way I did is not your concern.  You should draw no inference from the fact that an attorney objected to any evidence.  Nor should you draw any inference from the fact that I might have sustained or overruled an

objection.  Simply because I have permitted certain evidence to be introduced does not mean that I have decided on its significance.  That is for you to decide.

From time to time, the lawyers and I had conferences out of your hearing.  These conferences involved procedural and other matters, and none of the events relating to these conferences should enter into your deliberations at all.

Similarly, the personalities and the conduct of counsel in the courtroom are not in any way at issue.  If you formed reactions of any kind to any of the lawyers in the case, favorable or unfavorable, whether you approved or disapproved of their behavior as advocates, those reactions should not enter into your deliberations.

### E.    Sympathy or Bias

You are to evaluate the evidence calmly and objectively, without prejudice or sympathy. You are to be completely fair and impartial.  Your verdict must be based solely on the evidence developed at this trial, or the lack of evidence.  The parties in this case are entitled to a trial free from prejudice and bias.  Our judicial system cannot work unless you reach your verdict through a fair and impartial consideration of the evidence.

It would be improper for you to consider, in deciding the facts of the case, any personal feelings you may have about the race, national origin, sex, or age of any party or any witness, or any other such irrelevant factor.  This case should be decided by you as an action between parties of equal standing in the community, and of equal worth.  All parties are entitled to the same fair trial at your hands.  All parties stand equal before the law, and are to be dealt with as equals in this Court.

### F.      Burden of Proof

The plaintiff, Yi Mei Ke, has the burden of proving all the elements of her claims by a preponderance of the evidence.

What does a "preponderance of the evidence" mean?  To establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not.  A preponderance of the evidence means the greater weight of the evidence.  It refers to the quality and persuasiveness of the evidence, not the number of witnesses or documents.  In determining whether a claim has been proven by a preponderance of the evidence, you may consider the relevant testimony of all witnesses, regardless of who may have called them, and all the relevant exhibits received in evidence, regardless of who may have produced them.

If, after considering all of the testimony, you are satisfied that the plaintiff, the party with the burden of proof, has carried her burden on each essential point of a claim, then you must find in the plaintiff's favor.  If, after such consideration, you find that the evidence produced by the plaintiff is outweighed by the evidence against the plaintiff's position, or that the credible evidence on a given issue is evenly divided between the parties—that it is as equally probable that one side is right as it is that the other side is right—then you must decide that issue against the plaintiff.  That is because the plaintiff, because she bears the burden of proof, must prove more than simple equality of evidence—she must prove the element by a preponderance of the evidence.  On the other hand, the plaintiff need prove no more than a preponderance.  So long as you find that the scales tip, however slightly, in favor of the plaintiff—that what she claims is more likely true than not—then that element will have been proven by a preponderance of the evidence.

Some of you may have heard of proof beyond a reasonable doubt, which is the proper standard of proof only in a *criminal* trial. That requirement does not apply to a civil case such as this, and you should put it out of your mind.

### G.    What Is and Is Not Evidence

I want to take a moment to describe to you what is and is not evidence in this case. As I have said, you may rely only on the evidence in your deliberations. The evidence in this case is the sworn testimony of the witnesses, and the exhibits received in evidence. On the other hand, certain things are not evidence.

First, I will describe a list of examples of things that are not evidence:

1.    A question by a lawyer is not to be considered by you as evidence. It is the witnesses' answers that are evidence, not the questions. At times, a lawyer may have incorporated into a question a statement which assumed certain facts to be true, and asked the witness if the statement was true. If the witness denied the truth of a statement, and if there is no direct evidence in the record proving that assumed fact to be true, then you may not consider it to be true simply because it was contained in the lawyer's question.

2.    Similarly, arguments by lawyers are not evidence, because the lawyers are not witnesses. What they have said in their opening statements was intended, and what they will say to you in their closing statements will be intended, to help you understand the evidence and to reach your verdict. However, if your recollection of the facts differs from the lawyers' statements, it is your recollection that controls.

3.    Statements that I may have made concerning the evidence do not constitute evidence. Similarly, at times, I may have admonished a witness or directed a witness to be responsive to questions or to keep his or her voice up. At times, I may have asked a question myself. Any questions that I asked, or instructions that I gave, were intended only to clarify the presentation of evidence and to bring out something that I thought might be unclear. You should draw no inference or conclusion of any kind, favorable or unfavorable, with respect to any witness or any party in the case, by reason of any comment, question, or instruction of mine. Nor should you infer that I have any views as to the credibility of any witness, as to the weight of the evidence, or as to how you should decide any issue that is before you. That is entirely your role.

5

4.    Testimony that has been stricken or excluded is not evidence, and it may not be considered by you in rendering your verdict.

5.    Anything you may have seen or heard outside the courtroom is not evidence.

Now, I will provide you with some things that you may consider as evidence.  As I have said, evidence may come in several forms:

1.    The sworn testimony of witnesses, regardless of who called them, is evidence.  This is true of the witnesses' answers on both direct and cross examination.  However, if certain testimony was received for a limited purpose, you must follow the limiting instructions I have given.

2.    The exhibits that were admitted during the trial are evidence.  Exhibits marked for identification but not admitted are not evidence, nor are materials brought forth only to refresh a witness's recollection.

3.    Prior testimony is evidence.  Such testimony, known as depositions, is produced through a procedure where, prior to trial, the attorneys for one side may question a witness or an adversary under oath.  This is part of what is called pretrial discovery, and each side is entitled to take depositions.  To the extent I admitted excerpts of prior testimony at trial, you may consider the prior testimony of a witness according to the same standards you would use to evaluate the testimony of a witness given at trial.

**H.    Direct and Circumstantial Evidence**

Generally, as I told you in my initial instructions, there are two types of evidence that you may consider in reaching your verdict.  One type of evidence is direct evidence.  Direct evidence is testimony by a witness about something she knows by virtue of her own senses—something she has seen, felt, touched, or heard.  For example, if a witness testified that when she left her house this morning, it was raining, that would be direct evidence about the weather.

Circumstantial evidence is evidence from which you may infer the existence of certain facts.  To use the same example I gave you at the start of trial:  Assume that when you came into the courthouse this morning, the sun was shining and it was a nice day.  Assume that the

6

courtroom blinds were drawn and you could not look outside.  As you were sitting here, someone walked in with an umbrella, which was dripping wet.  Then a few minutes later another person entered with a wet raincoat.  Now, you cannot look outside of the courtroom and you cannot see whether or not it is raining, and no one has testified that it is raining.  So you have no direct evidence of that fact.  But on the combination of facts that I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining.

That is all there is to circumstantial evidence.  You infer on the basis of reason and experience and common sense from one established fact the existence or non-existence of some other fact.  Many facts, such as a person's state of mind or intentions, are rarely susceptible of proof by direct evidence.  Usually, such facts are established by circumstantial evidence.  Where circumstantial evidence is presented, it is of no less value than direct evidence, for it is a general rule that the law makes no distinction between direct evidence and circumstantial evidence.

I.        **Witness Credibility**

You have had the opportunity to observe the witnesses.  It is now your job to decide how believable each witness was in his or her testimony.  You are the sole judge of the credibility of each witness and of the importance of his or her testimony.

In making these judgments, you should carefully scrutinize the testimony of each witness, the circumstances under which each witness testified, the impression the witness made when testifying, and any other matter in evidence which may help you decide the truth and the importance of each witness's testimony.

How do you determine where the truth lies?  You watched each witness testify.  Everything a witness said or did on the witness stand counts in your determination.  How did the witness impress you?  Did he or she appear to be frank, forthright, and candid?  Or was the

7

witness evasive and edgy, as if hiding something?  How did the witness appear?  What was his or her demeanor—that is, his or her carriage, behavior, bearing, manner, and appearance while testifying?  Often it is not what a person says but how he or she says it that moves us.

You should use all the tests for truthfulness that you would use in determining matters of importance to you in your everyday life.  You should consider any bias or hostility the witness may have shown for or against any party, as well as any interest the witness has in the outcome of the case.  You should consider the opportunity the witness had to see, hear, and know the things about which he or she testified, the accuracy of his or her memory, his or her candor or lack of candor, his or her intelligence, the reasonableness and probability of his or her testimony and its consistency or lack of consistency and its corroboration or lack of corroboration with other credible testimony.

In other words, what you must try to do in deciding credibility is to size a witness up in light of his or her demeanor, the explanations given, and all of the other evidence in the case.  Always remember that you should use your common sense, your good judgment, and your everyday experiences in life to make your credibility determinations.

If you find that any witness has willfully testified falsely as to any material fact—that is, as to an important matter—the law permits you to disregard the entire testimony of that witness upon the principle that one who testifies falsely about one material fact is likely to testify falsely about everything.  However, you are not required to consider such a witness as totally "unbelievable."  You may accept so much of the witness's testimony as you deem true and disregard what you feel is false.  By the processes which I have just described, you, as the sole judges of the facts, decide which of the witnesses you will believe, what portion of each witness's testimony you accept, and what weight you will give to it.

On some occasions during this trial, witnesses were asked to explain an apparent inconsistency between testimony offered at this trial and previous statements made by the witness. It is for you to determine whether a prior statement was inconsistent, and if so, how much (if any) weight to give to an inconsistent statement in assessing the witness's credibility at trial.

### J.     Interested Witnesses

In deciding whether to believe a witness, you should take into account any evidence that shows that a witness may benefit in some way from the outcome of the case, such as a financial interest. Likewise, you should specifically note any evidence of hostility or affection that the witness may have towards one of the parties. You should also consider any other interest or motive that the witness may have in cooperating with a particular party.

In this case, the plaintiff, Yi Mei Ke, and two of the defendants, Kai Tuan Wang and Rui Yang, testified before you. As parties to this action, they are, by definition, interested witnesses.

It is your duty to consider whether the witness has permitted any such bias or interest to color his or her testimony. In short, if you find that a witness is biased, you should view his or her testimony with caution, weigh it with care, and subject it to close and searching scrutiny.

An interested witness is not necessarily less believable than a disinterested witness. The mere fact that a witness is interested in the outcome of the case does not mean he or she has not told the truth. It is for you to decide from your observations and applying your common sense and experience and all the other considerations mentioned, whether the possible interest of any witness, or of any party, has intentionally or otherwise colored or distorted his or her testimony. You are not required to believe an interested witness; you may accept as much of his or her testimony as you deem reliable and reject as much as you deem unworthy of acceptance.

### K.    Preparation of Witnesses [IF APPLICABLE]

You have heard evidence during the trial that witnesses had discussed the facts of the case and their testimony with the lawyers before the witnesses appeared in court. Although you may consider that fact when you are evaluating a witness's credibility, I should tell you that there is nothing either unusual or improper about a witness meeting with lawyers before testifying, so that the witness can be made aware of the subjects that he or she will be questioned about, focus on those subjects, and have the opportunity to review relevant exhibits before being questioned about them. In fact, it would be unusual for a lawyer to call a witness without such consultation. Again, the weight you give to the fact or the nature of the witness's preparation for his or her testimony and what inferences you draw from such preparation are matters completely within your discretion.

### L.    Stipulated Facts [IF APPLICABLE]

The attorneys in this case entered into a stipulation agreeing to certain facts. This means that there is no dispute as to these facts and these facts are established for the purposes of this case. You must consider the agreed facts along with all of the other evidence presented, and give the agreed facts such weight as you find appropriate.

### M.    Multiple Parties

In reaching a verdict, you must bear in mind that each defendant is to be considered separately based solely on the evidence, or lack of evidence, presented against that defendant without regard to the liability of the other defendants.

### M.    All Available Evidence Need Not Be Produced

The law does not require any party to call as witnesses all persons who may have been present at any time or place involved in the case, or who may appear to have some knowledge of

the matters in issue at this trial.  Nor does the law require any party to produce as exhibits all papers and things mentioned in the evidence in this case.

Each party has had an equal opportunity or lack of opportunity to call any witnesses. Therefore, you should not draw any inferences or reach any conclusions as to what any uncalled witnesses would have testified to had they been called.  The absence of any witnesses should not affect your judgment in any way.

### O.  Foreign Language Testimony

During the trial, the three witnesses testified in Chinese.  The evidence you are to consider is only that provided through the official court translator.  That is, you must base your decision on the evidence presented in the English translation of the witnesses' testimony, as stated in open court and memorialized in the trial transcript.  You must disregard any different meaning.

## II.    SUBSTANTIVE CHARGES

I am now going to instruct you on the substantive law to be applied to Ms. Ke's claims in this lawsuit, which she brings against JR Sushi, Famous Sichuan, Kai Tuan Wang, and Rui Yang.

### A.      Overview of Statutes and Claims

Plaintiff brings this action under the federal Fair Labor Standards Act, which I will refer to as the "FLSA," and the New York State Labor Law, which I will refer to as the "NYLL." These statutes provide for minimum wages and overtime pay, among other things.  The parties agree that both the FLSA and the NYLL apply to this case.  The FLSA and the NYLL are similar in many respects, so I will discuss these laws separately only when the differences between them are relevant to the findings you must make.

Plaintiff has brought five categories of claims arising from her work at JR Sushi.  I will now briefly summarize each category.  Later, I will explain the law as to each claim in depth.

First, plaintiff contends that the defendants violated the FLSA and the NYLL by failing to pay her the applicable minimum wage for each hour she worked for the first 40 hours of work per week.  I will refer to these claims as the "Minimum Wage" claims.

Second, plaintiff contends that the defendants violated the FLSA and the NYLL by failing to pay her overtime at one and one-half (1.5) times her regular hourly pay for hours worked in excess of 40 in a single week.  I will refer to those claims as the "Overtime" claims.

Third, plaintiff contends that the defendants violated the NYLL by failing to pay her the so-called "spread of hours," which is an extra hour of pay at the minimum wage rate for days that a plaintiff's work spanned more than 10 hours.  I will refer to that claim as the "Spread of Hours" claim.

Fourth, plaintiff contends that the defendants did not provide her with an accurate wage notice as required by the NYLL.  I will refer to that claim as the "Wage Notice" claim.

Fifth, plaintiff contends that the defendants failed to provide her with accurate wage statements as required by the NYLL.  I will refer to that claim as the "Wage Statements" claim.

You will each be given a verdict form with the questions you must answer regarding plaintiff's claims.  I will review these questions with you as I read this charge to you.  Mr. Smallman will distribute them now to help you follow along.  You may also need to do a little arithmetic in connection with some of these questions.  I will send a calculator into the jury room with you to help.

12

### B.    Employer Status

The first issue for you to determine involves whether each defendant was an employer of the plaintiff.  To determine whether a defendant is liable to the plaintiff on any of the claims in this case, you must first determine whether he, she, or it employed the plaintiff.  If a defendant you are considering was not plaintiff's employer, that defendant cannot be liable to the plaintiff on any claim.

The parties agree that JR Sushi employed the plaintiff.  And so as to Question 1 listed under Issue I on the verdict form, relating to whether JR Sushi was an employer of the plaintiff, you must check the "Yes" answer.

However, the other three defendants—Kai Tuan Wang, Rui Yang, and Famous Sichuan—contend that they were not employers of the plaintiff.  It is possible that a worker can have more than one employer at the same job.  If the plaintiff is found to have more than one employer at the same job, she is "jointly employed."  And note that although I will sometimes refer to "the defendants," that is not intended to indicate a view that all defendants are employers.

Under the FLSA and NYLL, an individual is an "employer" if he, she, or it possesses the power to control, in whole or in part, a company's operations in a manner that relates to the employment of the company's employees.  In making this determination as to Kai Tuan Wang, Rui Yang, and Famous Sichuan, you should consider the totality of the circumstances that constitute the economic reality of the employee/employer relationship.  Ownership, or a stake in the company, is insufficient to establish that an individual or entity is an employer unless the owner also has some involvement in the company's relationship with its employees.  Whether a defendant was an employer depends on whether that individual or entity possessed the power to

control the plaintiff's work.  The focus is on the economic reality of the situation rather than technical concepts or job titles.  Factors that bear on the economic realities of the employer/employee relationship include, but are not limited to, whether the individual or entity has the authority to:

- hire and fire employees;

- supervise and control employees' work schedules or conditions of employment;

- determine the rate and method of payment for employees; and/or

- maintain employment records for employees.

No one of these factors standing alone is dispositive.  You may consider these factors and any others that you find pertinent to the economic reality of the employer/employee relationship in deciding whether a plaintiff has proven by a preponderance of the evidence that Kai Tuan Wang, Rui Yang, and/or Famous Sichuan were employers of the plaintiff.

If after consideration of all the evidence you determine that the plaintiff has proven, by a preponderance of the evidence, that Kai Tuan Wang was plaintiff's employer, then you must answer "Yes" to Question 2 in Issue I.  Otherwise, answer "No."

If after consideration of all the evidence you determine that the plaintiff has proven, by a preponderance of the evidence, that Rui Yang was plaintiff's employer, then you must answer "Yes" to Question 3 in Issue I.  Otherwise, answer "No."

As to Famous Sichuan, the plaintiff also claims that JR Sushi and Famous Sichuan operated effectively as a single employer under the FLSA and the NYLL.

Two nominally separate entities may constitute a single employer where they operated as part of a single integrated enterprise.  Examples of a single enterprise include, but are not limited to, parent and wholly-owned subsidiary corporations, or separate corporations that are under

common ownership and management. To determine whether JR Sushi and Famous Sichuan were a single integrated enterprise, you should consider whether the corporations had:

- interrelated operations;

- common management;

- centralized control of labor relations; and/or

- common ownership or financial control.

No single factor is determinative. You should consider the totality of the circumstances and the economic reality of the relationship between the two corporations.

If after consideration of all the evidence you determine that plaintiff has proven, by a preponderance of the evidence, that Famous Sichuan was plaintiff's employer—or that Famous Sichuan and JR Sushi were a single integrated enterprise, so as to warrant treating Famous Sichuan as plaintiff's employer—then you must answer "Yes" to Question 4 of Issue I. Otherwise, answer "No."

### C.    Duration of Employment

Turning next to Issue II of the verdict form, you will need to determine the time period that plaintiff was employed by JR Sushi. And, if you determined that Kai Tuan Wang, Rui Yang, and/or Famous Sichuan also employed plaintiff, you will need to determine the time period that she was employed by those employers. As I stated earlier, a plaintiff may be "jointly employed" by multiple employers.

The parties have agreed that plaintiff was employed at some time as a kitchen helper and cook at JR Sushi. However, the parties dispute when she began and ended her employment. It is the plaintiff's burden to prove by a preponderance of the evidence when she was employed, and it is up to you to decide this factual issue.

15

To meet that burden, the plaintiff may rely on all of the evidence received at trial, regardless of which side presented it. However, if you find that JR Sushi did not keep or maintain accurate employment records, the plaintiff can meet her burden as to this issue by presenting sufficient evidence to show her dates of employment as a matter of just and reasonable inference. She may meet her burden by relying on her recollection alone. The law does not require her to recall exact dates. You should find that she met her burden of proof as to the period of her employment if you find her testimony is credible and provides a basis for a reasonable approximation of the period during which she was employed.

If you find that plaintiff has met that burden, then the defendants have the burden to show either the precise period that she worked or that her approximation of the period she worked is unreasonable. If you find the defendants met their burden of proving that plaintiff's approximation is unreasonable, then you may find she worked the period the defendants claim. If, however, you find the defendants did not meet their burden, then you should approximate the period of time based on plaintiff's testimony alone. Ultimately, it is up to you to draw a reasonable conclusion as to the period during which plaintiff was employed.

Question 5 of Issue II of the verdict form asks you to state the dates of plaintiff's employment at JR Sushi.

You should only answer the next question—Question 6 of Issue II of the verdict form—if you answered "Yes" to Question 2 of Issue I (whether Kai Tuan Wang was an employer). If you answered "Yes" to that question, you should state the dates of plaintiff's employment by Kai Tuan Wang. If you answered "No," you should skip to the next question.

Similarly, you should only answer the next question—Question 7 of Issue II of the verdict form—if you answered "Yes" to Question 3 of Issue I (whether Rui Yang was an

employer).  If you answered "Yes" to that question, you should state the dates of plaintiff's employment by Rui Yang.  If you answered "No," you should skip to the next question.

And you should only answer the next question—Question 8 of Issue II of the verdict form—if you answered "Yes" to Question 4 of Issue I (whether Famous Sichuan was an employer).  If you answered "Yes" to that question, you should state the dates of plaintiff's employment by Famous Sichuan.  If you answered "No," you should skip to the next question.

### D.    Minimum Wage Claims

I will next turn to the Minimum Wage claims, which on the verdict form is Issue III. Plaintiff claims that she was not paid the minimum wage for each hour of work, as required under the FLSA and the NYLL.  To sustain her burden of proof with respect to these claims, plaintiff must prove by a preponderance of the evidence that the defendants paid her less than the required minimum wage for hours that she worked.

The applicable minimum wage rates under the FLSA and the NYLL at the time are not the same.  However, because the applicable minimum wage under the NYLL is higher than the federal minimum wage, and because a plaintiff cannot recover twice for the same minimum wage violations under both federal and state law, I will address, and you will be applying, the applicable minimum wage rate under the NYLL only.

I will instruct you now on how to determine whether the plaintiff was paid less than she was legally due in minimum wages.

### 1.  Number of Hours Worked by Plaintiff

You must first determine how many hours the plaintiff worked.  An employee is considered to be working for purposes of these claims whenever she exerts herself, mentally or physically, for tasks controlled or required by the employer and performs these tasks primarily for the benefit of the employer.

17

You must decide how many hours plaintiff worked each day, how many days she worked each week, and the number of hours she worked each week. The number of hours an employee works in a day is determined under what is called the "continuous workday" rule. Under that rule, the workday begins when the employee begins to engage in work and continues until the completion of her work. It includes all of the time within that period, whether or not the employee is engaged in work throughout the entire period.

There is, however, an exception to this rule for meal periods and for periods longer than thirty minutes if the employee is completely relieved from duty. I will refer to those periods as "non-compensable breaks" because those periods are not compensable work time. It is defendants' burden to prove that a break was a non-compensable break. Defendants must do so by a preponderance of the evidence. A non-compensable break must last at least 30 minutes. In contrast, short periods away from work, commonly known as break periods or coffee breaks, are compensable work time. To qualify as a non-compensable break, the employee must be relieved from duty. An employee is relieved from duty when the employee's time is not spent predominantly for the benefit of the employer. Whether the time was spent predominantly for the employer's or employee's benefit depends on all the facts and circumstances of the case. In order to determine the number of hours worked, you must determine whether defendants have demonstrated that plaintiff took non-compensable breaks. If the plaintiff did take non-compensable breaks, then the length of those breaks must be taken into account when determining the number of hours the plaintiff worked.

With respect to this issue, plaintiff may rely on all the evidence received at trial, regardless of which side presented it. However, if you find that defendants did not keep and maintain required employment records, then the plaintiff can meet her burden by presenting

sufficient evidence to show the hours she worked as a matter of just and reasonable inference. She may meet her burden by relying on her recollection alone. The law does not require her to recall exact dates or exact hours. You should find that she met her burden of proof as to the length of shifts if you find her testimony to be credible and that it provides a basis for a reasonable approximation of the total number of hours she worked.

If you find that the plaintiff has met that burden, then defendants have the burden to show either the precise hours that plaintiff worked or that her approximation of hours worked is unreasonable. If you find defendants have met their burden of proving the plaintiff's approximation is unreasonable, then you may find that she worked the period the defendants claim. If, however, you find defendants did not meet their burden, then you should approximate the period of time based on the plaintiff's testimony alone.

Ultimately, it is up to you to draw a reasonable conclusion as to the number of compensable hours plaintiff worked per workday, how many days a week she worked, and how many compensable hours per week she worked. You should record these figures in response to Questions 9 through 11, respectively, of Issue III in the verdict form.

### 2. Wages Paid Per Hour Worked

After determining how many hours plaintiff worked, the next issue you must determine is how much she was paid per hour for "straight time"—that is, for each hour worked under forty hours in a week. The plaintiff's "regular rate of pay" is calculated by dividing her total pay per workweek by the lesser of (1) 40 hours or (2) the number of hours the plaintiff actually worked per week.

Again, as with hours worked, you may consider all of the evidence received at trial when you determine plaintiff's regular rate of pay. I have already instructed you as to the change in

the burden of proof if you find that defendants did not keep and maintain required employment records.  That applies in this context as well.

Before you determine plaintiff's regular rate of pay, you must first decide whether she was paid on an hourly basis, or if she was paid a salary or flat rate for an agreed-upon period of time.  You should record your finding in response to Question 12 of Issue III.

If you find that plaintiff was paid at an hourly rate, then you don't have to do any math to determine her regular rate of pay.  The rate at which plaintiff was paid per hour is her regular rate of pay.  In that event, you can skip Question 13 of Issue III, and record plaintiff's regular rate of pay in response to Question 14.

However, if you determine that plaintiff was paid at another rate—for example, on a salary, flat rate, commission, or some other basis—you have to do a bit of math to find her regular rate of pay.  First, you must identify her total compensation per workweek.  A workweek is defined as any period of 168 consecutive hours or seven consecutive days.  You should record this figure in response to Question 13 of Issue III.

After you identify the total amount that plaintiff was paid per workweek, you should divide this weekly rate by the lesser of (1) 40 hours or (2) the actual number of hours she worked per week to determine her regular rate of pay, rounding to the nearest cent.  You should record these figures in response to Question 14 of Issue III.

### 3.  Minimum Wage Rates Applicable to Plaintiff

You now have almost all the information you need to determine whether plaintiff was paid the required minimum wage.  The last piece of information consists of the applicable minimum wage rates.  As you know, plaintiff has brought claims both under the FLSA and the NYLL.  As I stated earlier, because the relevant rates are higher under the NYLL than under the

federal statute, to keep things simple, I am only telling you the minimum wage under the NYLL.
Under that statute, the applicable minimum wage rates that cover the period that plaintiff alleges
she was employed by the defendants are as follows:

| Period | Minimum Wage |
|---|---|
| December 31, 2016 through December 30, 2017 | $11.00 per hour |
| December 31, 2017 through December 30, 2018 | $13.00 per hour |
| December 31, 2018 through December 30, 2019 | $15.00 per hour |

You are not to infer from this instruction, or the table of minimum wages included in it,
anything about whether plaintiff was employed by any defendant, or if she was, anything about
plaintiff's term or duration of employment. You should find facts as to which defendants, if any,
employed plaintiff, and if so, the duration of plaintiff's employment by those defendants,
according to the instructions I have already given you.

### 4. Conclusion

You now have all the information you need to determine whether plaintiff was paid the
required minimum wage. The final step is simply to compare (1) the hourly minimum wage that
JR Sushi was required to pay the plaintiff for the time period in question, with (2) the regular rate
of pay, per hour, that you have found JR Sushi paid her during that period.

If plaintiff's regular rate of pay was greater than or equal to the applicable minimum
wage rate for a given year, she was paid at least minimum wage, and you must check "Yes" in
response to Question 15 of Issue III as to that year. If her regular rate of pay was less than the
applicable minimum wage rate for that year, she was not paid at least minimum wage, and you
must check "No" in response to that question.

### E.    Overtime Claims

I will next turn to plaintiff's Overtime claims.

To prevail on her overtime claims, the plaintiff must prove by a preponderance of the evidence that the defendants failed to pay her overtime pay as required.

A plaintiff is entitled to overtime pay for any hours she worked in excess of 40 in any given workweek. These are called "overtime hours."

### 1. Calculating Plaintiff's Hours Worked and Whether Plaintiff Ever Worked Overtime Hours

At this point, you will have already determined how many compensable hours plaintiff worked per week, which you will have recorded in response to Question 11 of Issue III.

Question 16 of Issue IV asks whether plaintiff ever worked overtime hours while employed by JR Sushi. If you found, in response to Question 11 of Issue III, that plaintiff worked 40 or fewer hours per week, you must answer "No," and then skip to Question 19 of Issue V. If you found that plaintiff worked more than 40 hours per week, you must answer "Yes," and then answer Questions 17 and 18 of Issue IV.

### 2. Calculating Whether Plaintiff Was Properly Compensated for Overtime Work

As I mentioned, a plaintiff is entitled to overtime pay for the hours she worked in excess of 40 in any given workweek. A workweek is defined as any period of 168 consecutive hours.

An employee must be paid at a rate of at least one and one-half (1.5) times either the statutory minimum wage or—if the employee's regular rate of pay was higher than the statutory minimum wage—the employee's regular rate of pay. I instructed you on how to calculate plaintiff's regular rate of pay earlier, and you will have recorded that information in response to Question 14 of Issue III on the verdict form. If you find that plaintiff's regular rate of pay is

greater than the applicable minimum wage, then you would determine her overtime rate by multiplying her regular rate of pay by 1.5, which increases it by 50%.

However, if you find that plaintiff's regular rate of pay is less than or equal to the applicable minimum wage, then her overtime rate is determined by the applicable minimum wage rate, not by her regular rate of pay. In that event, the applicable minimum wages for overtime hours under the NYLL are as follows:

| Period | Minimum Wage for Overtime Hours |
|---|---|
| December 31, 2016, through December 30, 2017 | $16.50 per hour |
| December 31, 2017, through December 30, 2018 | $19.50 per hour |
| December 31, 2018, through December 30, 2019 | $22.50 per hour |

Question 18 of Issue IV asks you to determine, for each year that plaintiff alleged that she worked at JR Sushi, whether there was at least one week in which she worked overtime hours but was not properly compensated for those hours.

I also want to direct your attention to a chart, after Issue V, on your verdict form. It is entitled "Calculations for Issues III, IV, and V." It instructs you to determine, for any year in which you have found that plaintiff was not paid either the required minimum wages or overtime wages, the number of regular and overtime hours that you find the plaintiff worked that year. It also instructs you to determine the total wages that the plaintiff received from JR Sushi that year.

You are not responsible for calculating the amount of damages, if any, for these claims. Rather, if you find the defendants failed to pay required minimum wages or overtime, I will calculate these damages based on these calculations you have recorded in the verdict form.

23

F.      **Spread of Hours Claims**

Turning back to Issue V before the chart, the next set of issues concerns the Spread of Hours claims.  Under the NYLL, an employee is entitled to an additional hour of pay, at the minimum hourly rate, on any day in which her "spread of hours" exceeds 10 hours.

To prevail on her "spread of hours" claim, the plaintiff must prove by a preponderance of the evidence each of the following elements:

*First*, that her spread of hours on a given day was greater than 10 hours, and

*Second*, that she was not paid an additional hour's wages at the minimum wage rate for that day's work.

The NYLL defines the spread of hours as follows: "The spread of hours is the length of the interval between the beginning and end of an employee's workday."

To give an example, imagine an employee begins work at 7:00 a.m. and works for three hours until 10:00 a.m.  Then the employee is off work until 7:00 p.m. that evening, and then works another three hours until 10:00 p.m.  The employee worked a total of six hours, but her spread of hours is 15, the number of hours between 7:00 a.m and 10:00 p.m.  In this scenario, the employee would be paid for seven hours: the six hours she actually worked, plus an additional hour—paid at the minimum wage rate—because she worked a "spread of hours" greater than 10.

The additional hour paid to an employee for spread of hours is not counted towards the total hours an employee works in a given week for purposes of computing overtime pay.

In Question 19 of Issue V on the verdict form, you must indicate whether plaintiff's spread of hours ever exceeded 10 hours.  If you find that it did exceed 10 hours, then you must answer Question 20 of Issue V, which asks whether for each year in which she alleged that she worked at JR Sushi, plaintiff was properly compensated for her spread of hours.

In the chart that follows Issue V, entitled "Calculations for Issues III, IV, and V," for any year for which you answered "Yes" in response to Question 20 of Issue V, you must also indicate in section (4) of the chart the number of days that the plaintiff's spread of hours exceeded 10 hours, but as to which she did not receive spread of hours pay.

### G.    Wage Notice Claims

Plaintiff's remaining claims are the Wage Notice and Wage Statements Claims.  You should only answer the questions related to these claims, which are on the verdict form under Issues VI and VII, if you have provided any "No" answers to Question 15, any "Yes" answers to Question 18, or any "No" answers to Question 20.  Otherwise, you should leave the questions under Issues VI and VII blank.

With that, I will now turn to plaintiff's Wage Notice claim.  Plaintiff contends that the defendants failed to provide her with certain employment information required by New York law.  Under the NYLL at the time of plaintiff's employment, every employer was required to provide their employees with a written wage notice within 10 business days of their first day of employment.  The wage notice was required to include the following information:

- "the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other";

- "allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances";

- the regular pay day designated by the employer;

- the name of the employer;

- any "doing business as" names used by the employer;

- the physical address of the employer's main office or principal place of business,

and a mailing address if different; and

- the telephone number of the employer.

Notice must be given to the employee in both English and in the language identified by each employee as her primary language.

The employer bears the burden of proving compliance with the wage notice requirements. You should find in favor of the plaintiff unless the defendants prove by a preponderance of the evidence that the plaintiff was provided with the wage notice information required by the NYLL.

Questions 23 through 25 under Issue VI relate to this claim.

### H.    Wage Statement Claims

Plaintiff next contends that the defendants failed to provide her with wage statements, or pay stubs, as required by the NYLL.

The NYLL requires that "[e]very employer shall provide to each employee a statement, commonly referred to as a pay stub, with every payment of wages."

Every such statement must list:

- The dates of work covered by that payment of wages;

- The name of the employee;

- The name, address, and phone number of the employer;

- The rate and frequency of pay;

- Gross wages;

- The numbers of regular and overtime hours worked;

- Any deductions or allowances claimed; and

- Net wages.

You must determine whether the plaintiff was provided with an adequate pay stub, as I have described it, with each payment of wages. As with the Wage Notice claim, it is the defendants' burden to establish that the plaintiff was provided with adequate pay stubs. Therefore, the defendants must prove by preponderance of the evidence that plaintiff was provided with an adequate pay stub, as I have described it, with each payment of wages. The question for you to determine is whether the plaintiff was provided full and accurate pay stubs as I have described them, and if not, for how many weeks plaintiff was not provided with an adequate pay stub.

Questions 26 and 27 under Issue VII relate to this claim.

## I.    Good Faith Defense

If you found that the defendants did not pay the plaintiff the applicable minimum wage, the applicable overtime pay, or the applicable spread of hours pay, according to the law as I have already instructed you, then you will need to determine whether the defendants acted in good faith. That is because the law may lessen the defendants' liability if they acted in good faith. I will now instruct you on how to determine if the defendants acted in good faith.

To act in good faith is to act with objectively reasonable grounds for believing that the acts or omissions at issue did not violate the law. It is the defendants' burden to establish good faith. It is not enough for the defendants to claim that they did not know that their acts or omissions violated the law. To establish good faith, the defendants must prove that they took active steps to ascertain the dictates of the law, and that they then took action to comply with the law, as they understood it.

Questions 28 through 32 of Issue VIII relate to whether defendants acted in good faith. You should only answer these questions if they are applicable. For example, if you previously

determined that a defendant *did not* pay plaintiff minimum wages, then you would check either "Yes" or "No" as to whether that defendant failed to pay the plaintiff minimum wages in good faith. But, if you previously found that a defendant *did* pay plaintiff minimum wages, then you would not answer this question as to the defendant's good faith. You should complete this section only for defendant(s) whom you have found to have been an employer of the plaintiff.

## III.    DELIBERATIONS OF THE JURY

### A.    Right to See Exhibits and Hear Testimony

Members of the jury, now that you have heard the closing arguments of the parties, you are about to go into the jury room to begin your deliberations. Before you do that, I will give you a few final instructions.

The exhibits received in evidence will be accessible to you upon request. If during those deliberations you want to see a hard copy of any of the exhibits, you may request that they be brought into the jury room. If you want any of the testimony read back to you, you may also request that. Please remember that it is not always easy to locate what you might want, so be as specific as you possibly can in requesting exhibits or portions of the testimony. And please be patient—with respect to requests for testimony, it can sometimes take counsel and the Court some time to identify the portions that are responsive to your request. If you want any further explanation of the law as I have explained it to you, you may also request that.

To assist you in your deliberations, I am providing you a list of the exhibits; a verdict form; and a copy of these instructions. There is one of each of these for each juror.

### B.    Communication with the Court

Your requests for exhibits or testimony—in fact any communications with the Court— should be made to me in writing, signed by your foreperson, and given to one of the marshals. In

any event, do not tell me or anyone else how the jury stands on any issue until after a unanimous verdict is reached.

###    C.    Notes

Some of you have taken notes periodically throughout this trial.  I want to emphasize to you, as you are about to begin your deliberations, that notes are simply an aid to memory.  Notes that any of you may have made may not be given any greater weight or influence than the recollections or impressions of other jurors, whether from notes or memory, with respect to the evidence presented or what conclusions, if any, should be drawn from such evidence.  All jurors' recollections are equal.  If you can't agree on what you remember the testimony was, you can ask to have the transcript read back.

###    D.    Duty to Deliberate; Unanimous Verdict

You will shortly retire to decide the questions I have described to you.  For the plaintiff to prevail on the questions that you must answer, she must sustain her burden of proof as I have explained to you with respect to the questions you are considering.  Your verdict on each question must be unanimous.  Each juror is entitled to his or her opinion, but you are required to exchange views with your fellow jurors.  This is the very essence of jury deliberation.  It is your duty to discuss the evidence.  If you have a point of view and after reasoning with other jurors it appears that your own judgment is open to question, then of course you should not hesitate in yielding your original point of view if you are convinced that the opposite point of view is really one that satisfies your judgment and conscience.  You are not to give up a point of view, however, that you conscientiously believe in simply because you are outnumbered or outweighed.  You should vote with the others only if you are convinced on the evidence, the facts, and the law that it is the correct way to decide the case.

You are not to discuss the case until all jurors are present. Five or six jurors together is only a gathering of individuals. Only when eight jurors are present do you constitute a jury, and only then may you deliberate.

### E.    Verdict Form

I have prepared a verdict form for you to use in recording your decision as to plaintiff's claims. Please use that form to report your verdict.

### F.    Duties of Foreperson

Finally, I referred a moment ago to a foreperson. The first thing you should do when you retire to deliberate is take a vote to select one of you to sit as your foreperson, and then send out a note indicating whom you have chosen.

The foreperson doesn't have any more power or authority than any other juror, and his or her vote or opinion doesn't count for any more than any other juror's vote or opinion. The foreperson is merely your spokesperson to the Court. He or she will send out any notes, and when the jury has reached a verdict, he or she will notify the marshal that the jury has reached a verdict, and you will come into open court and give the verdict.

### G.    Return of Verdict

After you have reached a verdict, your foreperson will fill in and date the form that has been given to you. All jurors must sign the form reflecting each juror's agreement with the verdict. The foreperson should then advise the marshal outside your door that you are ready to return to the courtroom.

I will stress that each of you must be in agreement with the verdict which is announced in court. Once your verdict is announced by your foreperson in open court and officially recorded, it cannot ordinarily be revoked.

In conclusion, members of the jury, I am sure that if you listen to the views of your fellow jurors and if you apply your own common sense, you will reach a fair verdict here.

**IV.    CONCLUSION**

Members of the jury, that concludes my instructions to you.  I will ask you to remain seated while I confer with the attorneys to see if there are any additional instructions that they would like me to give to you or anything I may not have covered in my previous statement.

* * * * *

Members of the jury, you may now retire.  The marshal will be sworn before we retire.

(Marshal sworn)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

YI MEI KE,
    *a/k/a* YIMEI KE,

                Plaintiff,

           -v-

JR SUSHI 2 INC,
    *d/b/a* JR SUSHI 2,
FAMOUS SICHUAN NEW YORK INC,
    *d/b/a* FAMOUS SICHUAN,
KAI TUAN WANG, *and*
RUI YANG,
    *a/k/a* RUIFENG YANG,
    *a/k/a* RUI FENG YANG,

              Defendants.

19 Civ. 7332 (PAE)

VERDICT FORM

## ISSUE I:  EMPLOYER STATUS

1.  Was defendant JR Sushi an employer of plaintiff?

    YES _____        NO _____

2.  Was defendant Kai Tuan Wang an employer of plaintiff?

    YES _____        NO _____

3.  Was defendant Rui Yang an employer of plaintiff?

    YES _____        NO _____

4.  Was defendant Famous Sichuan an employer of plaintiff?

    YES _____        NO _____

## <u>ISSUE II:  DURATION OF EMPLOYMENT</u>

5.  On which dates was plaintiff employed by JR Sushi?

FROM _____ TO _____

6.  **If you answered "Yes" to whether Kai Tuan Wang was an employer of plaintiff, answer the following question.  If you answered "No," skip this question.**

On which dates was plaintiff employed by Kai Tuan Wang?

FROM _____ TO _____

7.  **If you answered "Yes" to whether Rui Yang was an employer of plaintiff, answer the following question.  If you answered "No," skip this question.**

On which dates was plaintiff employed by Rui Yang?

FROM _____ TO _____

8.  **If you answered "Yes" to whether Famous Sichuan was an employer of plaintiff, answer the following question.  If you answered "No," skip this question.**

On which dates was plaintiff employed by Famous Sichuan?

FROM _____ TO _____

## <u>ISSUE III:  MINIMUM WAGES</u>

9.  How many compensable hours did plaintiff work <u>per workday</u>?

December 31, 2016 through December 30, 2017:  _____

December 31, 2017 through December 30, 2018:  _____

December 31, 2018 through December 30, 2019:  _____

10. How many <u>days per week</u> did plaintiff work?

December 31, 2016 through December 30, 2017:  _____

December 31, 2017 through December 30, 2018:  _____

December 31, 2018 through December 30, 2019:  _____

11. How many compensable hours did plaintiff work <u>per week</u>?

   December 31, 2016 through December 30, 2017: _____

   December 31, 2017 through December 30, 2018: _____

   December 31, 2018 through December 30, 2019: _____

12. Was plaintiff paid on an hourly basis <u>**or**</u> a salary or flat rate for an agreed-upon period of time?  Check only <u>one</u> of the following options.

   Hourly Basis: _____        Salary or Flat Rate: _____

13. **If you answered that plaintiff was paid a salary or flat rate, answer the following question.  If you answered that plaintiff was paid on an hourly basis, skip this question.**

   If plaintiff was paid a salary or flat rate, indicate the dollar amount <u>per workweek</u>.

   December 31, 2016 through December 30, 2017: $ _____ per workweek

   December 31, 2017 through December 30, 2018: $ _____ per workweek

   December 31, 2018 through December 30, 2019: $ _____ per workweek

14. What was plaintiff's regular rate of pay?

   December 31, 2016 through December 30, 2017: $ _____ per hour

   December 31, 2017 through December 30, 2018: $ _____ per hour

   December 31, 2018 through December 30, 2019: $ _____ per hour

15. Was plaintiff paid at least minimum wage during each of the following time periods?

   December 31, 2016 through December 30, 2017:  YES _____ NO _____

   December 31, 2017 through December 30, 2018:  YES _____ NO _____

   December 31, 2018 through December 30, 2019:  YES _____ NO _____

## ISSUE IV:  OVERTIME WAGES

16. During the term of plaintiff's employment with JR Sushi, did plaintiff ever work overtime hours?

    YES _____          NO _____

17. **If you answered "Yes" to the previous question, answer Questions 17 and 18.  If you answered "No," skip to Question 19 of Issue V.**

    How many overtime hours (i.e., total compensable hours per week minus 40) did plaintiff work each week, for each of the following time periods?

    December 31, 2016 through December 30, 2017:  _____

    December 31, 2017 through December 30, 2018:  _____

    December 31, 2018 through December 30, 2019:  _____

18. For each of the following time periods, was there at least one week in which plaintiff worked overtime hours, but was not properly compensated for her overtime hours?

    December 31, 2016 through December 30, 2017:  YES _____   NO _____

    December 31, 2017 through December 30, 2018:  YES _____   NO _____

    December 31, 2018 through December 30, 2019:  YES _____   NO _____

## ISSUE V:  SPREAD OF HOURS

19. Did plaintiff's "spread of hours" exceed 10 hours on any given day at any time during her employment at JR Sushi?

    YES _____          NO _____

20. **If you answered "Yes" to the previous question, please answer this question.  If you answered "No," skip to the chart on the following page.**

    Was plaintiff properly compensated for her "spread of hours" by JR Sushi, for each of the following time periods?

    December 31, 2016 through December 30, 2017:  YES _____   NO _____

    December 31, 2017 through December 30, 2018:  YES _____   NO _____

    December 31, 2018 through December 30, 2019:  YES _____   NO _____

4

## CALCULATIONS FOR ISSUES III, IV, AND V

21. Please fill in the below chart according to the instructions.

22. You must fill in sections (1), (2), and (3) for any year in which <u>either</u> you answered "No" to Question 15, <u>or</u> you answered "Yes" to Question 18.

- In the section marked "(1)", please indicate the number of compensable regular hours that you find the plaintiff worked for that year.

- In the section marked "(2)", please indicate the number of compensable overtime hours that you find plaintiff worked for that year.

- In the section marked "(3)", please indicate the total amount of money plaintiff was paid by JR Sushi for that year.

You must fill in section (4) for any year in which you answered "No" to Question 20.

- In that section, please indicate the number of days, if any, that you find plaintiff worked more than 10 hours without receiving payment for an extra hour for spread of hours pay during the year listed.

| Year | (1) Number of regular hours worked by plaintiff | (2) Number of overtime hours worked by plaintiff | (3) Total wages paid to plaintiff in this year | (4) Number of days in which plaintiff worked more than 10 hours without receiving spread of hours pay |
|---|---|---|---|---|
| Dec. 31, 2016 through Dec. 30, 2017 | | | | |
| Dec. 31, 2017 through Dec. 30, 2018 | | | | |
| Dec. 31, 2018 through Dec. 30, 2019 | | | | |

## **ISSUE VI:  WAGE NOTICE**

23. Was plaintiff provided with an adequate wage notice within 10 days of her first day of employment by JR Sushi?

    YES _____          NO _____

24. **If you answered "No" to the previous question, answer Questions 24 and 25.  If you answered "Yes," skip to Question 26 of Issue VII.**

    Was plaintiff ever provided an adequate wage notice?

    YES _____          NO _____

25. On what date or date(s) was she provided an adequate wage notice?

    _____

## **ISSUE VII:  WAGE STATEMENTS**

26. Was plaintiff provided with a full and accurate wage statement each payday during her employment at JR Sushi?

    YES _____          NO _____

27. **If you answered "No" to the previous question, answer this question.  If you answered "Yes," skip to Question 28 of Issue VIII.**

    For how many weeks did JR Sushi not provide plaintiff with full and accurate wage statements?

    _____ weeks

## **ISSUE VIII:  GOOD FAITH**

28. To the extent defendant(s) did not pay plaintiff any applicable <u>minimum wages</u>, did they nonetheless act in good faith?

    JR Sushi:          YES _____   NO _____

    Famous Sichuan:    YES _____   NO _____

    Kai Tuan Wang:     YES _____   NO _____

    Rui Yang:          YES _____   NO _____

6

29. To the extent defendant(s) did not pay plaintiff any applicable <u>overtime wages</u>, did they nonetheless act in good faith?

JR Sushi:          YES _____    NO _____

Famous Sichuan:    YES _____    NO _____

Kai Tuan Wang:     YES _____    NO _____

Rui Yang:          YES _____    NO _____

30. To the extent defendant(s) did not pay plaintiff any applicable <u>spread of hours wages</u>, did they nonetheless act in good faith?

JR Sushi:          YES _____    NO _____

Famous Sichuan:    YES _____    NO _____

Kai Tuan Wang:     YES _____    NO _____

Rui Yang:          YES _____    NO _____

31. To the extent defendant(s) did not provide plaintiff with applicable <u>wage notice</u>, did they nonetheless act in good faith?

JR Sushi:          YES _____    NO _____

Famous Sichuan:    YES _____    NO _____

Kai Tuan Wang:     YES _____    NO _____

Rui Yang:          YES _____    NO _____

32. To the extent defendant(s) did not provide plaintiff with applicable <u>wage statements</u>, did they nonetheless act in good faith?

JR Sushi:          YES _____    NO _____

Famous Sichuan:    YES _____    NO _____

Kai Tuan Wang:     YES _____    NO _____

Rui Yang:          YES _____    NO _____

## VERDICT CERTIFICATION

**PRINTED NAME**                                    **SIGNATURE**

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

Dated:       _____


BY PRINTING AND SIGNING YOUR NAME ABOVE, EACH JUROR IS INDICATING
THAT HE OR SHE AGREES WITH EACH AND EVERY ANSWER REPORTED ON THIS
VERDICT FORM.  AFTER EACH MEMBER OF THE JURY HAS PRINTED AND SIGNED
THE VERIFICATION, THE FOREPERSON SHOULD SUMMON THE MARSHAL AND
ADVISE HIM OR HER THAT YOU ARE READY TO REPORT YOUR ANSWERS TO THE
COURT.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

YI MEI KE,
   *a/k/a* YIMEI KE,

                         Plaintiff,

           -v-

JR SUSHI 2 INC,
   *d/b/a* JR SUSHI 2,
FAMOUS SICHUAN NEW YORK INC,
   *d/b/a* FAMOUS SICHUAN,
KAI TUAN WANG, *and*
RUI YANG,
   *a/k/a* RUIFENG YANG,
   *a/k/a* RUI FENG YANG,

                    Defendants.

19 Civ. 7332 (PAE)

---

**Jury Charge**
**October 29, 2025**

TABLE OF CONTENTS

I.   GENERAL INSTRUCTIONS ........................................................................ 1

   A.   Introductory Remarks ................................................................... 1

   B.   Role of the Court .......................................................................... 1

   C.   Role of the Jury ............................................................................ 2

   D.   Role of Counsel / Objections and Sidebars .............................. 2

   E.   Sympathy or Bias ......................................................................... 3

   F.   Burden of Proof ............................................................................ 4

   G.   What Is and Is Not Evidence ..................................................... 5

   H.   Direct and Circumstantial Evidence ........................................ 6

   I.   Witness Credibility ...................................................................... 7

   J.   Interested Witnesses ................................................................... 9

   K.   Preparation of Witnesses .......................................................... 10

   L.   Stipulated Facts ........................................................................... 10

   M.   Multiple Parties ........................................................................... 10

   N.   All Available Evidence Need Not Be Produced ...................... 10

   O.   Foreign Language Testimony .................................................... 11

II.   SUBSTANTIVE CHARGES .................................................................... 11

   A.   Overview of Statutes and Claims ............................................. 11

   B.   Employer Status ........................................................................... 13

   C.   Duration of Employment ........................................................... 15

   D.   Minimum Wage Claims .............................................................. 16

   E.   Overtime Claims ........................................................................... 21

   F.   Spread of Hours Claims .............................................................. 23

   G.   Wage Notice Claims ..................................................................... 24

   H.   Wage Statement Claims .............................................................. 26

   I.   Good Faith Defense ...................................................................... 27

III.   DELIBERATIONS OF THE JURY ......................................................... 28

   A.   Right to See Exhibits and Hear Testimony ............................ 28

   B.   Communication with the Court ................................................ 28

   C.   Notes ............................................................................................... 28

i

**D.**    **Duty to Deliberate; Unanimous Verdict** ........................................................................ **29**

**E.**    **Verdict Form** ............................................................................................................ **30**

**F.**    **Duties of Foreperson** ............................................................................................. **30**

**G.**    **Return of Verdict** ................................................................................................... **30**

**IV.**    **CONCLUSION** ......................................................................................................... **31**

# I.    GENERAL INSTRUCTIONS

## A.    Introductory Remarks

Members of the jury, you have now heard all of the evidence in the case, and you will soon hear the final arguments of the parties.  You have paid careful attention to the evidence, and I am confident that you will act together with fairness and impartiality to reach a just verdict.

Now it is time for me to instruct you as to the law that governs the case.  There are three parts to these instructions.  First, I'm going to give you some general instructions about your role, and about how you are to decide the facts of the case.  These instructions really would apply to just about any trial.  Second, I'll give you some specific instructions about the legal rules applicable to this particular case.  Third, after counsel's closing arguments, I'll give you some final instructions about procedure.

Listening to these instructions may not be easy.  It is important, however, that you listen carefully and concentrate.  I ask you for patient cooperation and attention.  You'll notice that I'm reading these instructions from a prepared text.  It would be more lively, no doubt, if I just improvised.  But it's important that I not do that.  The law is made up of words, and those words are very carefully chosen.  So when I tell you the law, it's critical that I use exactly the right words.

You'll have copies of what I'm reading in the jury room to consult, so don't worry if you miss a word or two.  But for now, listen carefully and try to concentrate on what I'm saying.  I will be distributing to you a verdict form, on which to record your verdict.  It will list the questions that you must consider, in the order that you should consider them.

## B.    Role of the Court

My duty at this point is to instruct you as to the law.  It is your duty to accept these instructions of law and to apply them to the facts as you determine them.  With respect to legal

1

matters, you must take the law as I give it to you. If any attorney has stated, or states, a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow. You must not substitute your own notions or opinions of what the law is or ought to be.

### C.    Role of the Jury

As members of the jury, you are the sole and exclusive judges of the facts. You pass judgment upon the evidence. You determine the credibility of the witnesses. You resolve such conflicts as there may be in the testimony. You draw whatever reasonable inferences you decide to draw from the facts as you have determined them, and you determine the weight of the evidence.

Although you are encouraged to use all of your life experiences in analyzing testimony and reaching a fair verdict, you may not communicate any personal or professional expertise you might have or other facts not in evidence to the other jurors during deliberations. You must base your discussions and decisions solely on the evidence presented to you during the trial and that evidence alone. You may not consider or speculate on matters not in evidence or matters outside the case.

### D.    Role of Counsel / Objections and Sidebars

It is the duty of the attorneys to object when the other side offers testimony or other evidence that the attorney believes is not properly admissible. It is my job to rule on those objections. Therefore, why an objection was made or why I ruled on it the way I did is not your concern. You should draw no inference from the fact that an attorney objected to any evidence. Nor should you draw any inference from the fact that I might have sustained or overruled an

objection.  Simply because I have permitted certain evidence to be introduced does not mean that I have decided on its significance.  That is for you to decide.

From time to time, the lawyers and I had conferences out of your hearing.  These conferences involved procedural and other matters, and none of the events relating to these conferences should enter into your deliberations at all.

Similarly, the personalities and the conduct of counsel in the courtroom are not in any way at issue.  If you formed reactions of any kind to any of the lawyers in the case, favorable or unfavorable, whether you approved or disapproved of their behavior as advocates, those reactions should not enter into your deliberations.

### E.    Sympathy or Bias

You are to evaluate the evidence calmly and objectively, without prejudice or sympathy.  You are to be completely fair and impartial.  Your verdict must be based solely on the evidence developed at this trial, or the lack of evidence.  The parties in this case are entitled to a trial free from prejudice and bias.  Our judicial system cannot work unless you reach your verdict through a fair and impartial consideration of the evidence.

It would be improper for you to consider, in deciding the facts of the case, any personal feelings you may have about the race, national origin, sex, or age of any party or any witness, or any other such irrelevant factor.  This case should be decided by you as an action between parties of equal standing in the community, and of equal worth.  All parties are entitled to the same fair trial at your hands.  All parties stand equal before the law, and are to be dealt with as equals in this Court.

### F.     Burden of Proof

The plaintiff, Yi Mei Ke, has the burden of proving all the elements of her claims by a preponderance of the evidence.

What does a "preponderance of the evidence" mean?  To establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not.  A preponderance of the evidence means the greater weight of the evidence.  It refers to the quality and persuasiveness of the evidence, not the number of witnesses or documents.  In determining whether a claim has been proven by a preponderance of the evidence, you may consider the relevant testimony of all witnesses, regardless of who may have called them, and all the relevant exhibits received in evidence, regardless of who may have produced them.

If, after considering all of the testimony, you are satisfied that the plaintiff, the party with the burden of proof, has carried her burden on each essential point of a claim, then you must find in the plaintiff's favor.  If, after such consideration, you find that the evidence produced by the plaintiff is outweighed by the evidence against the plaintiff's position, or that the credible evidence on a given issue is evenly divided between the parties—that it is as equally probable that one side is right as it is that the other side is right—then you must decide that issue against the plaintiff.  That is because the plaintiff, because she bears the burden of proof, must prove more than simple equality of evidence—she must prove the element by a preponderance of the evidence.  On the other hand, the plaintiff need prove no more than a preponderance.  So long as you find that the scales tip, however slightly, in favor of the plaintiff—that what she claims is more likely true than not—then that element will have been proven by a preponderance of the evidence.

Some of you may have heard of proof beyond a reasonable doubt, which is the proper standard of proof only in a *criminal* trial. That requirement does not apply to a civil case such as this, and you should put it out of your mind.

### G.    What Is and Is Not Evidence

I want to take a moment to describe to you what is and is not evidence in this case.  As I have said, you may rely only on the evidence in your deliberations.  The evidence in this case is the sworn testimony of the witnesses, and the exhibits received in evidence.  On the other hand, certain things are not evidence.

First, I will describe a list of examples of things that are not evidence:

1.    A question by a lawyer is not to be considered by you as evidence.  It is the witnesses' answers that are evidence, not the questions.  At times, a lawyer may have incorporated into a question a statement which assumed certain facts to be true, and asked the witness if the statement was true.  If the witness denied the truth of a statement, and if there is no direct evidence in the record proving that assumed fact to be true, then you may not consider it to be true simply because it was contained in the lawyer's question.

2.    Similarly, arguments by lawyers are not evidence, because the lawyers are not witnesses.  What they have said in their opening statements was intended, and what they will say to you in their closing statements will be intended, to help you understand the evidence and to reach your verdict. However, if your recollection of the facts differs from the lawyers' statements, it is your recollection that controls.

3.    Statements that I may have made concerning the evidence do not constitute evidence.  Similarly, at times, I may have admonished a witness or directed a witness to be responsive to questions or to keep his or her voice up.  At times, I may have asked a question myself.  Any questions that I asked, or instructions that I gave, were intended only to clarify the presentation of evidence and to bring out something that I thought might be unclear.  You should draw no inference or conclusion of any kind, favorable or unfavorable, with respect to any witness or any party in the case, by reason of any comment, question, or instruction of mine.  Nor should you infer that I have any views as to the credibility of any witness, as to the weight of the evidence, or as to how you should decide any issue that is before you.  That is entirely your role.

4. Testimony that has been stricken or excluded is not evidence, and it may not be considered by you in rendering your verdict.

5. Anything you may have seen or heard outside the courtroom is not evidence.

Now, I will provide you with some things that you may consider as evidence. As I have said, evidence may come in several forms:

1. The sworn testimony of witnesses, regardless of who called them, is evidence. This is true of the witnesses' answers on both direct and cross examination. However, if certain testimony was received for a limited purpose, you must follow the limiting instructions I have given.

2. The exhibits that were admitted during the trial are evidence. Exhibits marked for identification but not admitted are not evidence, nor are materials brought forth only to refresh a witness's recollection.

3. Prior testimony is evidence. Such testimony, known as depositions, is produced through a procedure where, prior to trial, the attorneys for one side may question a witness or an adversary under oath. This is part of what is called pretrial discovery, and each side is entitled to take depositions. To the extent I admitted excerpts of prior testimony at trial, you may consider the prior testimony of a witness according to the same standards you would use to evaluate the testimony of a witness given at trial.

**H.     Direct and Circumstantial Evidence**

Generally, as I told you in my initial instructions, there are two types of evidence that you may consider in reaching your verdict. One type of evidence is direct evidence. Direct evidence is testimony by a witness about something she knows by virtue of her own senses—something she has seen, felt, touched, or heard. For example, if a witness testified that when she left her house this morning, it was raining, that would be direct evidence about the weather.

Circumstantial evidence is evidence from which you may infer the existence of certain facts. To use the same example I gave you at the start of trial: Assume that when you came into the courthouse this morning, the sun was shining and it was a nice day. Assume that the

courtroom blinds were drawn and you could not look outside. As you were sitting here, someone walked in with an umbrella, which was dripping wet. Then a few minutes later another person entered with a wet raincoat. Now, you cannot look outside of the courtroom and you cannot see whether or not it is raining, and no one has testified that it is raining. So you have no direct evidence of that fact. But on the combination of facts that I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining.

That is all there is to circumstantial evidence. You infer on the basis of reason and experience and common sense from one established fact the existence or non-existence of some other fact. Many facts, such as a person's state of mind or intentions, are rarely susceptible of proof by direct evidence. Usually, such facts are established by circumstantial evidence. Where circumstantial evidence is presented, it is of no less value than direct evidence, for it is a general rule that the law makes no distinction between direct evidence and circumstantial evidence.

I.    **Witness Credibility**

You have had the opportunity to observe the witnesses. It is now your job to decide how believable each witness was in his or her testimony. You are the sole judge of the credibility of each witness and of the importance of his or her testimony.

In making these judgments, you should carefully scrutinize the testimony of each witness, the circumstances under which each witness testified, the impression the witness made when testifying, and any other matter in evidence which may help you decide the truth and the importance of each witness's testimony.

How do you determine where the truth lies? You watched each witness testify. Everything a witness said or did on the witness stand counts in your determination. How did the witness impress you? Did he or she appear to be frank, forthright, and candid? Or was the

7

witness evasive and edgy, as if hiding something?  How did the witness appear?  What was his or her demeanor—that is, his or her carriage, behavior, bearing, manner, and appearance while testifying?  Often it is not what a person says but how he or she says it that moves us.

You should use all the tests for truthfulness that you would use in determining matters of importance to you in your everyday life.  You should consider any bias or hostility the witness may have shown for or against any party, as well as any interest the witness has in the outcome of the case.  You should consider the opportunity the witness had to see, hear, and know the things about which he or she testified, the accuracy of his or her memory, his or her candor or lack of candor, his or her intelligence, the reasonableness and probability of his or her testimony and its consistency or lack of consistency and its corroboration or lack of corroboration with other credible testimony.

In other words, what you must try to do in deciding credibility is to size a witness up in light of his or her demeanor, the explanations given, and all of the other evidence in the case.  Always remember that you should use your common sense, your good judgment, and your everyday experiences in life to make your credibility determinations.

If you find that any witness has willfully testified falsely as to any material fact—that is, as to an important matter—the law permits you to disregard the entire testimony of that witness upon the principle that one who testifies falsely about one material fact is likely to testify falsely about everything.  However, you are not required to consider such a witness as totally "unbelievable."  You may accept so much of the witness's testimony as you deem true and disregard what you feel is false.  By the processes which I have just described, you, as the sole judges of the facts, decide which of the witnesses you will believe, what portion of each witness's testimony you accept, and what weight you will give to it.

8

On some occasions during this trial, witnesses were asked to explain an apparent inconsistency between testimony offered at this trial and previous statements made by the witness. It is for you to determine whether a prior statement was inconsistent, and if so, how much (if any) weight to give to an inconsistent statement in assessing the witness's credibility at trial.

### J. Interested Witnesses

In deciding whether to believe a witness, you should take into account any evidence that shows that a witness may benefit in some way from the outcome of the case, such as a financial interest. Likewise, you should specifically note any evidence of hostility or affection that the witness may have towards one of the parties. You should also consider any other interest or motive that the witness may have in cooperating with a particular party.

In this case, the plaintiff, Yi Mei Ke, and two of the defendants, Kai Tuan Wang and Rui Yang, testified before you. As parties to this action, they are, by definition, interested witnesses.

It is your duty to consider whether the witness has permitted any such bias or interest to color his or her testimony. In short, if you find that a witness is biased, you should view his or her testimony with caution, weigh it with care, and subject it to close and searching scrutiny.

An interested witness is not necessarily less believable than a disinterested witness. The mere fact that a witness is interested in the outcome of the case does not mean he or she has not told the truth. It is for you to decide from your observations and applying your common sense and experience and all the other considerations mentioned, whether the possible interest of any witness, or of any party, has intentionally or otherwise colored or distorted his or her testimony. You are not required to believe an interested witness; you may accept as much of his or her testimony as you deem reliable and reject as much as you deem unworthy of acceptance.

9

### K.    Preparation of Witnesses

You have heard evidence during the trial that witnesses had discussed the facts of the case and their testimony with the lawyers before the witnesses appeared in court. Although you may consider that fact when you are evaluating a witness's credibility, I should tell you that there is nothing either unusual or improper about a witness meeting with lawyers before testifying, so that the witness can be made aware of the subjects that he or she will be questioned about, focus on those subjects, and have the opportunity to review relevant exhibits before being questioned about them. In fact, it would be unusual for a lawyer to call a witness without such consultation. Again, the weight you give to the fact or the nature of the witness's preparation for his or her testimony and what inferences you draw from such preparation are matters completely within your discretion.

### L.    Stipulated Facts

The attorneys in this case entered into a stipulation agreeing to certain facts. This means that there is no dispute as to these facts and these facts are established for the purposes of this case. You must consider the agreed facts along with all of the other evidence presented, and give the agreed facts such weight as you find appropriate.

### M.    Multiple Parties

In reaching a verdict, you must bear in mind that each defendant is to be considered separately based solely on the evidence, or lack of evidence, presented against that defendant without regard to the liability of the other defendants.

### N.    All Available Evidence Need Not Be Produced

The law does not require any party to call as witnesses all persons who may have been present at any time or place involved in the case, or who may appear to have some knowledge of

the matters in issue at this trial.  Nor does the law require any party to produce as exhibits all papers and things mentioned in the evidence in this case.

Each party has had an equal opportunity or lack of opportunity to call any witnesses. Therefore, you should not draw any inferences or reach any conclusions as to what any uncalled witnesses would have testified to had they been called.  The absence of any witnesses should not affect your judgment in any way.

### O.  Foreign Language Testimony

During the trial, the three witnesses testified in Chinese.  The evidence you are to consider is only that provided through the official court translator.  That is, you must base your decision on the evidence presented in the English translation of the witnesses' testimony, as stated in open court and memorialized in the trial transcript.  You must disregard any different meaning.

## II.    SUBSTANTIVE CHARGES

I am now going to instruct you on the substantive law to be applied to Ms. Ke's claims in this lawsuit, which she brings against JR Sushi, Famous Sichuan, Kai Tuan Wang, and Rui Yang.

### A.    Overview of Statutes and Claims

Plaintiff brings this action under the federal Fair Labor Standards Act, which I will refer to as the "FLSA," and the New York State Labor Law, which I will refer to as the "NYLL." These statutes provide for minimum wages and overtime pay, among other things.  The parties agree that both the FLSA and the NYLL apply to this case.  The FLSA and the NYLL are similar in many respects, so I will discuss these laws separately only when the differences between them are relevant to the findings you must make.

Plaintiff has brought five categories of claims arising from her work at JR Sushi.  I will now briefly summarize each category.  Later, I will explain the law as to each claim in depth.

First, plaintiff contends that the defendants violated the FLSA and the NYLL by failing to pay her the applicable minimum wage for each hour she worked for the first 40 hours of work per week.  I will refer to these claims as the "Minimum Wage" claims.

Second, plaintiff contends that the defendants violated the FLSA and the NYLL by failing to pay her overtime at one and one-half (1.5) times her regular hourly pay for hours worked in excess of 40 in a single week.  I will refer to those claims as the "Overtime" claims.

Third, plaintiff contends that the defendants violated the NYLL by failing to pay her the so-called "spread of hours," which is an extra hour of pay at the minimum wage rate for days that a plaintiff's work spanned more than 10 hours.  I will refer to that claim as the "Spread of Hours" claim.

Fourth, plaintiff contends that the defendants did not provide her with an accurate wage notice as required by the NYLL.  I will refer to that claim as the "Wage Notice" claim.

Fifth, plaintiff contends that the defendants failed to provide her with accurate wage statements as required by the NYLL.  I will refer to that claim as the "Wage Statements" claim.

You will each be given a verdict form with the questions you must answer regarding plaintiff's claims.  I will review these questions with you as I read this charge to you.  Mr. Smallman will distribute them now to help you follow along.  You may also need to do a little arithmetic in connection with some of these questions.  I will send a calculator into the jury room with you to help.

12

### B.    Employer Status

The first issue for you to determine involves whether each defendant was an employer of the plaintiff.  To determine whether a defendant is liable to the plaintiff on any of the claims in this case, you must first determine whether he, she, or it employed the plaintiff.  If a defendant you are considering was not plaintiff's employer, that defendant cannot be liable to the plaintiff on any claim.

The parties agree that JR Sushi and Kai Tuan Wang employed the plaintiff.  And so as to Questions 1 and 2 listed under Issue I on the verdict form, relating to whether JR Sushi and Kai Tuan Wang were employers of the plaintiff, you must check the "Yes" answer.

However, the other two defendants—Rui Yang and Famous Sichuan—contend that they were not employers of the plaintiff.  It is possible that a worker can have more than one employer at the same job.  If the plaintiff is found to have more than one employer at the same job, she is "jointly employed."  And note that although I will sometimes refer to "the defendants," that is not intended to indicate a view that all defendants are employers.

Under the FLSA and NYLL, an individual is an "employer" if he, she, or it possesses the power to control, in whole or in part, a company's operations in a manner that relates to the employment of the company's employees.  In making this determination as to Rui Yang and Famous Sichuan, you should consider the totality of the circumstances that constitute the economic reality of the employee/employer relationship.  Ownership, or a stake in the company, is insufficient to establish that an individual or entity is an employer unless the owner also has some involvement in the company's relationship with its employees.  Whether a defendant was an employer depends on whether that individual or entity possessed the power to control the plaintiff's work.  The focus is on the economic reality of the situation rather than technical

13

concepts or job titles.  Factors that bear on the economic realities of the employer/employee relationship include, but are not limited to, whether the individual or entity has the authority to:

- hire and fire employees;

- supervise and control employees' work schedules or conditions of employment;

- determine the rate and method of payment for employees; and/or

- maintain employment records for employees.

No one of these factors standing alone is dispositive.  You may consider these factors and any others that you find pertinent to the economic reality of the employer/employee relationship in deciding whether the plaintiff has proven by a preponderance of the evidence that Rui Yang and/or Famous Sichuan were employers of the plaintiff.

If after consideration of all the evidence you determine that the plaintiff has proven, by a preponderance of the evidence, that Rui Yang was plaintiff's employer, then you must answer "Yes" to Question 3 in Issue I.  Otherwise, answer "No."

As to Famous Sichuan, the plaintiff also claims that JR Sushi and Famous Sichuan operated effectively as a single employer under the FLSA and the NYLL.

Two nominally separate entities may constitute a single employer where they operated as part of a single integrated enterprise.  Examples of a single enterprise include, but are not limited to, parent and wholly-owned subsidiary corporations, or separate corporations that are under common ownership and management.  To determine whether JR Sushi and Famous Sichuan were a single integrated enterprise, you should consider whether the corporations had:

- interrelated operations;

- common management;

- centralized control of labor relations; and/or

14

- common ownership or financial control.

No single factor is determinative. You should consider the totality of the circumstances and the economic reality of the relationship between the two corporations.

If after consideration of all the evidence you determine that plaintiff has proven, by a preponderance of the evidence, that Famous Sichuan was plaintiff's employer—or that Famous Sichuan and JR Sushi were a single integrated enterprise, so as to warrant treating Famous Sichuan as plaintiff's employer—then you must answer "Yes" to Question 4 of Issue I. Otherwise, answer "No."

### C.    Duration of Employment

Turning next to Issue II of the verdict form, you will need to determine the time period that plaintiff was employed by JR Sushi and Kai Tuan Wang. And, if you determined that Rui Yang and/or Famous Sichuan also employed plaintiff, you will need to determine the time period that she was employed by those employers. As I stated earlier, a plaintiff may be "jointly employed" by multiple employers.

The parties have agreed that plaintiff was employed at some time as a kitchen helper and cook at JR Sushi. However, the parties dispute when she began and ended her employment. It is the plaintiff's burden to prove by a preponderance of the evidence when she was employed, and it is up to you to decide this factual issue.

To meet that burden, the plaintiff may rely on all of the evidence received at trial, regardless of which side presented it. However, if you find that JR Sushi did not keep or maintain accurate employment records, the plaintiff can meet her burden as to this issue by presenting sufficient evidence to show her dates of employment as a matter of just and reasonable inference. She may meet her burden by relying on her recollection alone. The law

15

does not require her to recall exact dates. You should find that she met her burden of proof as to the period of her employment if you find her testimony is credible and provides a basis for a reasonable approximation of the period during which she was employed.

If you find that plaintiff has met that burden, then the defendants have the burden to show the period that she worked. If you find the defendants have met their burden, then you may find she worked the period the defendants claim. If, however, you find the defendants did not meet their burden, then you should approximate the period of time based on plaintiff's testimony alone. Ultimately, it is up to you to draw a reasonable conclusion as to the period during which plaintiff was employed.

Questions 5 and 6 of Issue II of the verdict form ask you to state the dates of plaintiff's employment by JR Sushi and Kai Tuan Wang.

You should only answer the next question—Question 7 of Issue II of the verdict form—if you answered "Yes" to Question 3 of Issue I (whether Rui Yang was an employer). If you answered "Yes" to that question, you should state the dates of plaintiff's employment by Rui Yang. If you answered "No," you should skip to the next question.

And you should only answer the next question—Question 8 of Issue II of the verdict form—if you answered "Yes" to Question 4 of Issue I (whether Famous Sichuan was an employer). If you answered "Yes" to that question, you should state the dates of plaintiff's employment by Famous Sichuan. If you answered "No," you should skip to the next question.

### D.    Minimum Wage Claims

I will next turn to the Minimum Wage claims, which on the verdict form is Issue III. Plaintiff claims that she was not paid the minimum wage for each hour of work, as required under the FLSA and the NYLL. To sustain her burden of proof with respect to these claims,

plaintiff must prove by a preponderance of the evidence that the defendants paid her less than the required minimum wage for hours that she worked.

The applicable minimum wage rates under the FLSA and the NYLL at the time are not the same.  However, because the applicable minimum wage under the NYLL is higher than the federal minimum wage, and because a plaintiff cannot recover twice for the same minimum wage violations under both federal and state law, I will address, and you will be applying, the applicable minimum wage rate under the NYLL only.

I will instruct you now on how to determine whether the plaintiff was paid less than she was legally due in minimum wages.

### 1.  Number of Hours Worked by Plaintiff

You must first determine how many hours the plaintiff worked.  An employee is considered to be working for purposes of these claims whenever she exerts herself, mentally or physically, for tasks controlled or required by the employer and performs these tasks primarily for the benefit of the employer.

You must decide how many hours plaintiff worked each day, how many days she worked each week, and the number of hours she worked each week.  The number of hours an employee works in a day is determined under what is called the "continuous workday" rule.  Under that rule, the workday begins when the employee begins to engage in work and continues until the completion of her work.  It includes all of the time within that period, whether or not the employee is engaged in work throughout the entire period.

There is, however, an exception to this rule for meal periods and for periods longer than thirty minutes if the employee is completely relieved from duty.  I will refer to those periods as "non-compensable breaks" because those periods are not compensable work time.  It is defendants' burden to prove that a break was a non-compensable break.  Defendants must do so

by a preponderance of the evidence. A non-compensable break must last at least 30 minutes. In contrast, short periods away from work, commonly known as break periods or coffee breaks, are compensable work time. To qualify as a non-compensable break, the employee must be relieved from duty. An employee is relieved from duty when the employee's time is not spent predominantly for the benefit of the employer. Whether the time was spent predominantly for the employer's or employee's benefit depends on all the facts and circumstances of the case. In order to determine the number of hours worked, you must determine whether defendants have demonstrated that plaintiff took non-compensable breaks. If the plaintiff did take non-compensable breaks, then the length of those breaks must be taken into account when determining the number of hours the plaintiff worked.

With respect to this issue, plaintiff may rely on all the evidence received at trial, regardless of which side presented it. However, if you find that defendants did not keep and maintain required employment records, then the plaintiff can meet her burden by presenting sufficient evidence to show the hours she worked as a matter of just and reasonable inference. She may meet her burden by relying on her recollection alone. The law does not require her to recall exact dates or exact hours. You should find that she met her burden of proof as to the length of shifts if you find her testimony to be credible and that it provides a basis for a reasonable approximation of the total number of hours she worked.

If you find that the plaintiff has met that burden, then defendants have the burden to show the hours that plaintiff worked. If you find defendants have met their burden, then you may find that she worked the period the defendants claim. If, however, you find defendants did not meet their burden, then you should approximate the period of time based on the plaintiff's testimony alone.

Ultimately, it is up to you to draw a reasonable conclusion as to the number of compensable hours plaintiff worked per workday, how many days a week she worked, and how many compensable hours per week she worked. You should record these figures in response to Questions 9 through 11, respectively, of Issue III in the verdict form.

### 2. Wages Paid Per Hour Worked

After determining how many hours plaintiff worked, the next issue you must determine is how much she was paid per hour for "straight time"—that is, for each hour worked under 40 hours in a week. The plaintiff's "regular rate of pay" is calculated by dividing her total pay per workweek by the lesser of (1) 40 hours or (2) the number of hours the plaintiff actually worked per week.

Again, as with hours worked, you may consider all of the evidence received at trial when you determine plaintiff's regular rate of pay. I have already instructed you as to the change in the burden of proof if you find that defendants did not keep and maintain required employment records. That applies in this context as well.

Before you determine plaintiff's regular rate of pay, you must first decide whether she was paid on an hourly basis, or if she was paid a salary or flat rate for an agreed-upon period of time. You should record your finding in response to Question 12 of Issue III.

If you find that plaintiff was paid at an hourly rate, then you don't have to do any math to determine her regular rate of pay. The rate at which plaintiff was paid per hour is her regular rate of pay. In that event, you can skip Question 13 of Issue III, and record plaintiff's regular rate of pay in response to Question 14.

However, if you determine that plaintiff was paid at another rate—and the witnesses in this case testified that the plaintiff was paid at a monthly rate—you have to do a bit of math to find her regular rate of pay. First, you must identify her total compensation per workweek. A

19

workweek is defined as any period of 168 consecutive hours or seven consecutive days. To calculate the weekly rate of pay for an employee who is paid on a monthly basis, you should first multiply the monthly rate of pay by 12, because there are 12 months in a year. That yields the employee's annual pay. You should then divide the employee's annual pay by 52—the number of weeks in a year. That will yield the amount the employee was paid per workweek. You should record this figure as to each year in response to Question 13 of Issue III.

After you identify the total amount that plaintiff was paid per workweek, you should divide this weekly rate by the lesser of (1) 40 hours or (2) the actual number of hours she worked per week to determine her regular rate of pay, rounding to the nearest cent. You should record these figures in response to Question 14 of Issue III.

### 3. Minimum Wage Rates Applicable to Plaintiff

You now have almost all the information you need to determine whether plaintiff was paid the required minimum wage. The last piece of information consists of the applicable minimum wage rates. As you know, plaintiff has brought claims both under the FLSA and the NYLL. As I stated earlier, because the relevant rates are higher under the NYLL than under the federal statute, to keep things simple, I am only telling you the minimum wage under the NYLL. Under that statute, the applicable minimum wage rates that cover the period that plaintiff alleges she was employed by the defendants are as follows:

| **Period** | **Minimum Wage** |
|---|---|
| December 31, 2016 through December 30, 2017 | $11.00 per hour |
| December 31, 2017 through December 30, 2018 | $13.00 per hour |
| December 31, 2018 through December 30, 2019 | $15.00 per hour |

You are not to infer from this instruction, or the table of minimum wages included in it, anything about whether plaintiff was employed by any defendant, or if she was, anything about plaintiff's term or duration of employment. You should find facts as to which defendants, if any, employed plaintiff, and if so, the duration of plaintiff's employment by those defendants, according to the instructions I have already given you.

### 4. Conclusion

You now have all the information you need to determine whether plaintiff was paid the required minimum wage. The final step is simply to compare (1) the hourly minimum wage that JR Sushi was required to pay the plaintiff for the time period in question, with (2) the regular rate of pay, per hour, that you have found JR Sushi paid her during that period.

If plaintiff's regular rate of pay was greater than or equal to the applicable minimum wage rate for a given year, she was paid at least minimum wage, and you must check "Yes" in response to Question 15 of Issue III as to that year. If her regular rate of pay was less than the applicable minimum wage rate for that year, she was not paid at least minimum wage, and you must check "No" in response to that question.

### E. Overtime Claims

I will next turn to plaintiff's Overtime claims.

To prevail on her overtime claims, the plaintiff must prove by a preponderance of the evidence that the defendants failed to pay her overtime pay as required.

A plaintiff is entitled to overtime pay for any hours she worked in excess of 40 in any given workweek. These are called "overtime hours."

### 1. Calculating Plaintiff's Hours Worked and Whether Plaintiff Ever Worked Overtime Hours

At this point, you will have already determined how many compensable hours plaintiff worked per week, which you will have recorded in response to Question 11 of Issue III.

Question 16 of Issue IV asks whether plaintiff ever worked overtime hours while employed by JR Sushi. If you found, in response to Question 11 of Issue III, that plaintiff worked 40 or fewer hours per week, you must answer "No," and then skip to Question 19 of Issue V. If you found that plaintiff worked more than 40 hours per week, you must answer "Yes," and then answer Questions 17 and 18 of Issue IV.

### 2. Calculating Whether Plaintiff Was Properly Compensated for Overtime Work

As I mentioned, a plaintiff is entitled to overtime pay for the hours she worked in excess of 40 in any given workweek. A workweek is defined as any period of 168 consecutive hours.

An employee must be paid for overtime hours at a rate of at least one and one-half (1.5) times either the statutory minimum wage or—if the employee's regular rate of pay was higher than the statutory minimum wage—the employee's regular rate of pay. I instructed you on how to calculate plaintiff's regular rate of pay earlier, and you will have recorded that information in response to Question 14 of Issue III on the verdict form. If you find that plaintiff's regular rate of pay is greater than the applicable minimum wage, then you would determine her overtime rate by multiplying her regular rate of pay by 1.5, which increases it by 50%.

However, if you find that plaintiff's regular rate of pay is less than or equal to the applicable minimum wage, then her overtime rate is determined by the applicable minimum wage rate, not by her regular rate of pay. In that event, the applicable minimum wages for overtime hours under the NYLL are as follows:

| Period | Minimum Wage for Overtime Hours |
|---|---|
| December 31, 2016, through December 30, 2017 | $16.50 per hour |
| December 31, 2017, through December 30, 2018 | $19.50 per hour |
| December 31, 2018, through December 30, 2019 | $22.50 per hour |

Question 18 of Issue IV asks you to determine, for each year that plaintiff alleged that she worked at JR Sushi, whether there was at least one week in which she worked overtime hours but was not properly compensated for those hours.

I also want to direct your attention to a chart, after Issue V, on your verdict form. It is entitled "Calculations for Issues III, IV, and V." It instructs you to determine, for any year in which you have found that plaintiff was not paid either the required minimum wages or overtime wages, the number of regular and overtime hours that you find the plaintiff worked that year. It also instructs you to determine the total wages that the plaintiff received from JR Sushi that year.

You are not responsible for calculating the amount of damages, if any, for these claims. Rather, if you find the defendants failed to pay required minimum wages or overtime, I will calculate these damages based on these calculations you have recorded in the verdict form.

### F.    Spread of Hours Claims

Turning back to Issue V before the chart, the next set of issues concerns the Spread of Hours claims. Under the NYLL, an employee is entitled to an additional hour of pay, at the minimum hourly rate, on any day in which her "spread of hours" exceeds 10 hours.

To prevail on her "spread of hours" claim, the plaintiff must prove by a preponderance of the evidence each of the following elements:

*First*, that her spread of hours on a given day was greater than 10 hours, and

23

**Second**, that she was not paid an additional hour's wages at the minimum wage rate for that day's work.

The NYLL defines the spread of hours as follows: "The spread of hours is the length of the interval between the beginning and end of an employee's workday."

To give an example, imagine an employee begins work at 7:00 a.m. and works for three hours until 10:00 a.m. Then the employee is off work until 7:00 p.m. that evening, and then works another three hours until 10:00 p.m. The employee worked a total of six hours, but her spread of hours is 15, the number of hours between 7:00 a.m and 10:00 p.m. In this scenario, the employee would be paid for seven hours: the six hours she actually worked, plus an additional hour—paid at the minimum wage rate—because she worked a "spread of hours" greater than 10.

The additional hour paid to an employee for spread of hours is not counted towards the total hours an employee works in a given week for purposes of computing overtime pay.

In Question 19 of Issue V on the verdict form, you must indicate whether plaintiff's spread of hours ever exceeded 10 hours. If you find that it did exceed 10 hours, then you must answer Question 20 of Issue V, which asks whether for each year in which she alleged that she worked at JR Sushi, plaintiff was properly compensated for her spread of hours.

In the chart that follows Issue V, entitled "Calculations for Issues III, IV, and V," for any year for which you answered "No" in response to Question 20 of Issue V, you must also indicate in section (4) of the chart the number of days that the plaintiff's spread of hours exceeded 10 hours, but as to which she did not receive spread of hours pay.

### G.    Wage Notice Claims

Plaintiff's remaining claims are the Wage Notice and Wage Statements Claims. You should only answer the questions related to these claims, which are on the verdict form under

Issues VI and VII, if you have provided any "No" answers to Question 15, any "Yes" answers to Question 18, or any "No" answers to Question 20. Otherwise, you should leave the questions under Issues VI and VII blank.

With that, I will now turn to plaintiff's Wage Notice claim. Plaintiff contends that the defendants failed to provide her with certain employment information required by New York law. Under the NYLL at the time of plaintiff's employment, every employer was required to provide their employees with a written wage notice within 10 business days of their first day of employment. The wage notice was required to include the following information:

- "the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other";

- "allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances";

- the regular pay day designated by the employer;

- the name of the employer;

- any "doing business as" names used by the employer;

- the physical address of the employer's main office or principal place of business, and a mailing address if different; and

- the telephone number of the employer.

Notice must be given to the employee in both English and in the language identified by each employee as her primary language.

The employer bears the burden of proving compliance with the wage notice requirements. You should find in favor of the plaintiff unless the defendants prove by a

preponderance of the evidence that the plaintiff was provided with the wage notice information required by the NYLL.

Questions 23 through 25 under Issue VI relate to this claim.

**H.    Wage Statement Claims**

Plaintiff next contends that the defendants failed to provide her with wage statements, or pay stubs, as required by the NYLL.

The NYLL requires that "[e]very employer shall provide to each employee a statement, commonly referred to as a pay stub, with every payment of wages."

Every such statement must list:

- The dates of work covered by that payment of wages;

- The name of the employee;

- The name, address, and phone number of the employer;

- The rate and frequency of pay;

- Gross wages;

- The numbers of regular and overtime hours worked;

- Any deductions or allowances claimed; and

- Net wages.

You must determine whether the plaintiff was provided with an adequate pay stub, as I have described it, with each payment of wages. As with the Wage Notice claim, it is the defendants' burden to establish that the plaintiff was provided with adequate pay stubs. Therefore, the defendants must prove by preponderance of the evidence that plaintiff was provided with an adequate pay stub, as I have described it, with each payment of wages. The question for you to determine is whether the plaintiff was provided full and accurate pay stubs as

I have described them, and if not, for how many weeks plaintiff was not provided with an adequate pay stub.

Questions 26 and 27 under Issue VII relate to this claim.

## I.    Good Faith Defense

If you found that the defendants did not pay the plaintiff the applicable minimum wage, the applicable overtime pay, or the applicable spread of hours pay, according to the law as I have already instructed you, then you will need to determine whether the defendants acted in good faith. That is because the law may lessen the defendants' liability if they acted in good faith. I will now instruct you on how to determine if the defendants acted in good faith.

To act in good faith is to act with objectively reasonable grounds for believing that the acts or omissions at issue did not violate the law. It is the defendants' burden to establish good faith. It is not enough for the defendants to claim that they did not know that their acts or omissions violated the law. To establish good faith, the defendants must prove that they took active steps to ascertain the dictates of the law, and that they then took action to comply with the law, as they understood it.

Questions 28 through 32 of Issue VIII relate to whether defendants acted in good faith. You should only answer these questions if they are applicable. For example, if you previously determined that a defendant *did not* pay plaintiff minimum wages, then you would check either "Yes" or "No" as to whether that defendant failed to pay the plaintiff minimum wages in good faith. But, if you previously found that a defendant *did* pay plaintiff minimum wages, then you would not answer this question as to the defendant's good faith. You should complete this section only for defendant(s) whom you have found to have been an employer of the plaintiff.

### III.    DELIBERATIONS OF THE JURY

#### A.    Right to See Exhibits and Hear Testimony

Members of the jury, now that you have heard the closing arguments of the parties, you are about to go into the jury room to begin your deliberations.  Before you do that, I will give you a few final instructions.

The exhibits received in evidence will be accessible to you upon request.  If during those deliberations you want to see a hard copy of any of the exhibits, you may request that they be brought into the jury room.  If you want any of the testimony read back to you, you may also request that.  Please remember that it is not always easy to locate what you might want, so be as specific as you possibly can in requesting exhibits or portions of the testimony.  And please be patient—with respect to requests for testimony, it can sometimes take counsel and the Court some time to identify the portions that are responsive to your request.  If you want any further explanation of the law as I have explained it to you, you may also request that.

To assist you in your deliberations, I am providing you a list of the exhibits; a verdict form; and a copy of these instructions.  There is one of each of these for each juror.

#### B.    Communication with the Court

Your requests for exhibits or testimony—in fact any communications with the Court— should be made to me in writing, signed by your foreperson, and given to one of the marshals.  In any event, do not tell me or anyone else how the jury stands on any issue until after a unanimous verdict is reached.

#### C.    Notes

Some of you have taken notes periodically throughout this trial.  I want to emphasize to you, as you are about to begin your deliberations, that notes are simply an aid to memory.  Notes

28

that any of you may have made may not be given any greater weight or influence than the recollections or impressions of other jurors, whether from notes or memory, with respect to the evidence presented or what conclusions, if any, should be drawn from such evidence. All jurors' recollections are equal. If you can't agree on what you remember the testimony was, you can ask to have the transcript read back.

### D.    Duty to Deliberate; Unanimous Verdict

You will shortly retire to decide the questions I have described to you. For the plaintiff to prevail on the questions that you must answer, she must sustain her burden of proof as I have explained to you with respect to the questions you are considering. Your verdict on each question must be unanimous. Each juror is entitled to his or her opinion, but you are required to exchange views with your fellow jurors. This is the very essence of jury deliberation. It is your duty to discuss the evidence. If you have a point of view and after reasoning with other jurors it appears that your own judgment is open to question, then of course you should not hesitate in yielding your original point of view if you are convinced that the opposite point of view is really one that satisfies your judgment and conscience. You are not to give up a point of view, however, that you conscientiously believe in simply because you are outnumbered or outweighed. You should vote with the others only if you are convinced on the evidence, the facts, and the law that it is the correct way to decide the case.

You are not to discuss the case until all jurors are present. Five or six jurors together is only a gathering of individuals. Only when eight jurors are present do you constitute a jury, and only then may you deliberate.

29

### E.    Verdict Form

I have prepared a verdict form for you to use in recording your decision as to plaintiff's claims.  Please use that form to report your verdict.

### F.    Duties of Foreperson

Finally, I referred a moment ago to a foreperson.  The first thing you should do when you retire to deliberate is take a vote to select one of you to sit as your foreperson, and then send out a note indicating whom you have chosen.

The foreperson doesn't have any more power or authority than any other juror, and his or her vote or opinion doesn't count for any more than any other juror's vote or opinion.  The foreperson is merely your spokesperson to the Court.  He or she will send out any notes, and when the jury has reached a verdict, he or she will notify the marshal that the jury has reached a verdict, and you will come into open court and give the verdict.

### G.    Return of Verdict

After you have reached a verdict, your foreperson will fill in and date the form that has been given to you.  All jurors must sign the form reflecting each juror's agreement with the verdict.  The foreperson should then advise the marshal outside your door that you are ready to return to the courtroom.

I will stress that each of you must be in agreement with the verdict which is announced in court.  Once your verdict is announced by your foreperson in open court and officially recorded, it cannot ordinarily be revoked.

In conclusion, members of the jury, I am sure that if you listen to the views of your fellow jurors and if you apply your own common sense, you will reach a fair verdict here.

**IV.    CONCLUSION**

Members of the jury, that concludes my instructions to you.  I will ask you to remain seated while I confer with the attorneys to see if there are any additional instructions that they would like me to give to you or anything I may not have covered in my previous statement.

* * * * *

Members of the jury, you may now retire.  The marshal will be sworn before we retire.

(Marshal sworn)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

YI MEI KE,
    *a/k/a* YIMEI KE,

                Plaintiff,

          -v-

JR SUSHI 2 INC,
    *d/b/a* JR SUSHI 2,
FAMOUS SICHUAN NEW YORK INC,
    *d/b/a* FAMOUS SICHUAN,
KAI TUAN WANG, *and*
RUI YANG,
    *a/k/a* RUIFENG YANG,
    *a/k/a* RUI FENG YANG,

                Defendants.

19 Civ. 7332 (PAE)

VERDICT FORM

## ISSUE I:  EMPLOYER STATUS

1.  Was defendant JR Sushi an employer of plaintiff?

    YES _____          NO _____

2.  Was defendant Kai Tuan Wang an employer of plaintiff?

    YES _____          NO _____

3.  Was defendant Rui Yang an employer of plaintiff?

    YES _____          NO _____

4.  Was defendant Famous Sichuan an employer of plaintiff?

    YES _____          NO _____

## ISSUE II:  DURATION OF EMPLOYMENT

5.  On which dates was plaintiff employed by JR Sushi?

FROM  _____    TO  _____

6.  On which dates was plaintiff employed by Kai Tuan Wang?

FROM  _____    TO  _____

7.  **If you answered "Yes" to whether Rui Yang was an employer of plaintiff, answer the following question.  If you answered "No," skip this question.**

On which dates was plaintiff employed by Rui Yang?

FROM  _____    TO  _____

8.  **If you answered "Yes" to whether Famous Sichuan was an employer of plaintiff, answer the following question.  If you answered "No," skip this question.**

On which dates was plaintiff employed by Famous Sichuan?

FROM  _____    TO  _____

## ISSUE III:  MINIMUM WAGES

9.  How many compensable hours did plaintiff work per workday?

December 31, 2016 through December 30, 2017:  _____

December 31, 2017 through December 30, 2018:  _____

December 31, 2018 through December 30, 2019:  _____

10. How many days per week did plaintiff work?

December 31, 2016 through December 30, 2017:  _____

December 31, 2017 through December 30, 2018:  _____

December 31, 2018 through December 30, 2019:  _____

11. How many compensable hours did plaintiff work per week?

December 31, 2016 through December 30, 2017:  _____

December 31, 2017 through December 30, 2018:  _____

December 31, 2018 through December 30, 2019:  _____

12. Was plaintiff paid on an hourly basis **or** a salary or flat rate for an agreed-upon period of time?  Check only <u>one</u> of the following options.

Hourly Basis:  _____        Salary or Flat Rate:  _____

13. **If you answered that plaintiff was paid a salary or flat rate, answer the following question.  If you answered that plaintiff was paid on an hourly basis, skip this question.**

If plaintiff was paid a salary or flat rate, indicate the dollar amount <u>per workweek</u>.

December 31, 2016 through December 30, 2017: $ _____ per workweek

December 31, 2017 through December 30, 2018: $ _____ per workweek

December 31, 2018 through December 30, 2019: $ _____ per workweek

14. What was plaintiff's regular rate of pay?

December 31, 2016 through December 30, 2017: $ _____ per hour

December 31, 2017 through December 30, 2018: $ _____ per hour

December 31, 2018 through December 30, 2019: $ _____ per hour

15. Was plaintiff paid at least minimum wage during each of the following time periods?

December 31, 2016 through December 30, 2017:  YES _____  NO _____

December 31, 2017 through December 30, 2018:  YES _____  NO _____

December 31, 2018 through December 30, 2019:  YES _____  NO _____

3

## **ISSUE IV:  OVERTIME WAGES**

16. During the term of plaintiff's employment at JR Sushi, did plaintiff ever work overtime hours?

    YES _____          NO _____

17. **If you answered "Yes" to the previous question, answer Questions 17 and 18.  If you answered "No," skip to Question 19 of Issue V.**

    How many overtime hours (i.e., total compensable hours per week minus 40) did plaintiff work each week, for each of the following time periods?

    December 31, 2016 through December 30, 2017:  _____

    December 31, 2017 through December 30, 2018:  _____

    December 31, 2018 through December 30, 2019:  _____

18. For each of the following time periods, was there at least one week in which plaintiff worked overtime hours, but was not properly compensated for her overtime hours?

    December 31, 2016 through December 30, 2017:  YES _____    NO _____

    December 31, 2017 through December 30, 2018:  YES _____    NO _____

    December 31, 2018 through December 30, 2019:  YES _____    NO _____

## **ISSUE V:  SPREAD OF HOURS**

19. Did plaintiff's "spread of hours" exceed 10 hours on any given day at any time during her employment at JR Sushi?

    YES _____          NO _____

20. **If you answered "Yes" to the previous question, please answer this question.  If you answered "No," skip to the chart on the following page.**

    Was plaintiff properly compensated for her "spread of hours" at JR Sushi, for each of the following time periods?

    December 31, 2016 through December 30, 2017:  YES _____    NO _____

    December 31, 2017 through December 30, 2018:  YES _____    NO _____

    December 31, 2018 through December 30, 2019:  YES _____    NO _____

## CALCULATIONS FOR ISSUES III, IV, AND V

21. Please fill in the below chart according to the instructions.

22. You must fill in sections (1), (2), and (3) for any year in which <u>either</u> you answered "No" to Question 15, <u>or</u> you answered "Yes" to Question 18.

- In the section marked "(1)", please indicate the number of compensable regular hours that you find the plaintiff worked for that year.

- In the section marked "(2)", please indicate the number of compensable overtime hours that you find plaintiff worked for that year.

- In the section marked "(3)", please indicate the total amount of money plaintiff was paid at JR Sushi for that year.

You must fill in section (4) for any year in which you answered "No" to Question 20.

- In that section, please indicate the number of days, if any, that you find plaintiff worked more than 10 hours without receiving payment for an extra hour for spread of hours pay during the year listed.

| Year | (1) Number of regular hours worked by plaintiff | (2) Number of overtime hours worked by plaintiff | (3) Total wages paid to plaintiff in this year | (4) Number of days in which plaintiff worked more than 10 hours without receiving spread of hours pay |
|---|---|---|---|---|
| Dec. 31, 2016 through Dec. 30, 2017 | | | | |
| Dec. 31, 2017 through Dec. 30, 2018 | | | | |
| Dec. 31, 2018 through Dec. 30, 2019 | | | | |

## ISSUE VI:  WAGE NOTICE

23. Was plaintiff provided with an adequate wage notice within 10 days of her first day of employment at JR Sushi?

    YES _____          NO _____

24. **If you answered "No" to the previous question, answer Questions 24 and 25.  If you answered "Yes," skip to Question 26 of Issue VII.**

    Was plaintiff ever provided an adequate wage notice?

    YES _____          NO _____

25. On what date or date(s) was she provided an adequate wage notice?

    _____

## ISSUE VII:  WAGE STATEMENTS

26. Was plaintiff provided with a full and accurate wage statement each payday during her employment at JR Sushi?

    YES _____          NO _____

27. **If you answered "No" to the previous question, answer this question.  If you answered "Yes," skip to Question 28 of Issue VIII.**

    For how many weeks did JR Sushi not provide plaintiff with full and accurate wage statements?

    _____ weeks

## ISSUE VIII:  GOOD FAITH

28. To the extent defendant(s) did not pay plaintiff any applicable <u>minimum wages</u>, did they nonetheless act in good faith?

    JR Sushi:          YES _____    NO _____

    Famous Sichuan:    YES _____    NO _____

    Kai Tuan Wang:     YES _____    NO _____

    Rui Yang:          YES _____    NO _____

29. To the extent defendant(s) did not pay plaintiff any applicable <u>overtime wages</u>, did they nonetheless act in good faith?

    JR Sushi:           YES _____    NO _____

    Famous Sichuan:    YES _____    NO _____

    Kai Tuan Wang:    YES _____    NO _____

    Rui Yang:           YES _____    NO _____

30. To the extent defendant(s) did not pay plaintiff any applicable <u>spread of hours wages</u>, did they nonetheless act in good faith?

    JR Sushi:           YES _____    NO _____

    Famous Sichuan:    YES _____    NO _____

    Kai Tuan Wang:    YES _____    NO _____

    Rui Yang:           YES _____    NO _____

31. To the extent defendant(s) did not provide plaintiff with applicable <u>wage notice</u>, did they nonetheless act in good faith?

    JR Sushi:           YES _____    NO _____

    Famous Sichuan:    YES _____    NO _____

    Kai Tuan Wang:    YES _____    NO _____

    Rui Yang:           YES _____    NO _____

32. To the extent defendant(s) did not provide plaintiff with applicable <u>wage statements</u>, did they nonetheless act in good faith?

    JR Sushi:           YES _____    NO _____

    Famous Sichuan:    YES _____    NO _____

    Kai Tuan Wang:    YES _____    NO _____

    Rui Yang:           YES _____    NO _____

## **VERDICT CERTIFICATION**

**PRINTED NAME**                                **SIGNATURE**

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

Dated: _____

BY PRINTING AND SIGNING YOUR NAME ABOVE, EACH JUROR IS INDICATING THAT HE OR SHE AGREES WITH EACH AND EVERY ANSWER REPORTED ON THIS VERDICT FORM.  AFTER EACH MEMBER OF THE JURY HAS PRINTED AND SIGNED THE VERIFICATION, THE FOREPERSON SHOULD SUMMON THE MARSHAL AND ADVISE HIM OR HER THAT YOU ARE READY TO REPORT YOUR ANSWERS TO THE COURT.

JURY NOTE

The jury has decided that Hannah, juror 8, will be the foreperson.

Date: 10/29/25

Time: 1:44 pm

Foreperson's signature

Judge Engleneyer,

The jury has reached a verdict.

Date: 10/29/25

Time: 3:38 pm

Foreperson's signature